# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:18 CV 96

| | |
|---|---|
| **BRIAN HOGAN**, *on his own behalf and as representative of all unnamed class members who are similarly situated*, **and BRIAN HOGAN**, *as parent and next friend of H.H., both on her own behalf and as representative of all unnamed class members who are similarly situated*, | ) ) ) ) ) ) ) |
| | ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| **CHEROKEE COUNTY, CHEROKEE COUNTY DEPARTMENT OF SOCIAL SERVICES, SCOTT LINDSAY**, in his individual capacity, **CINDY PALMER**, *in her individual capacity,* **SCOTT LINDSAY***, in his official capacity as Attorney for Cherokee County Department of Social Services*, **CINDY PALMER**, *in her official capacity as Director of Cherokee County Department of Social Services*, **DSS SUPERVISOR DOE #1**, *both in his/her individual capacity and his/her capacity as an employee of Cherokee County Department of Social Services*, **and DSS SOCIAL WORKER DOE #1**, *both in his/her individual capacity and his/her official capacity as an employee of Cherokee County Department of Social Services,* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **MEMORANDUM AND RECOMMENDATION** |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

This matter is before the Court upon a "Notice of Partial Motion to Dismiss," filed

pursuant to Rules 12(b)(2) and 12(b)(6) of the Rules of Civil Procedure by Defendants

Cherokee County, Cherokee County Department of Social Services, Scott Lindsay in His

Official Capacity, and Cindy Palmer in Her Official Capacity ("Moving Defendants")

(Doc. 9), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). The issues have been fully briefed, and the motion is now ripe for ruling. Following a careful review of the Complaint, the motion, and applicable law, the undersigned recommends that the Partial Motion to Dismiss be granted in part and denied in part.

## I.     Procedural Background

This case originated on or about March 14, 2018 through the filing of a Complaint in the Superior Court Division of the General Court of Justice for Cherokee County, North Carolina by Brian Hogan ("Hogan"), who appears: 1) on his own behalf, 2) as a putative class representative for similarly-situated parents, and 3) as the parent and next friend of H.H, who is also the putative representative of similarly-situated minor children. See Not. Rem. (Doc. 1) at 2. The 62-page Complaint (exclusive of exhibits) contains 17 separate claims, as reflected by the chart of claims appearing below.

On April 13, 2018, the case was removed to this Court. See Not. Rem. (Doc. 1).

On April 18, 2018, the Partial Motion to Dismiss (Doc. 9) and a Brief in Support (Doc. 10) were filed by the Moving Defendants. Plaintiffs filed a Response in Opposition (Doc. 13) on May 1, 2018, and the Moving Defendants replied on May 8, 2018 (Doc. 14). Plaintiffs filed a Notice of Supplemental Authority on May 16, 2018 (Doc. 15).

## II.     Factual Background

The allegations in Plaintiffs' Complaint, taking all disputed facts and reasonable inferences in favor of Plaintiffs, may be summarized as follows:

H.H. is a minor child born on January 16, 2006 to Hogan and Amanda Edmondson ("Edmondson"), all of whom are residents of Cherokee County, North Carolina. Compl.

(Doc. 1-1) ¶¶ 3, 39-40. Id.

On or about September 14, 2015, Defendant Cherokee County Department of Social Services ("Cherokee DSS") received a report of suspected neglect involving Hogan, H.H., and Edmondson. Id. ¶ 40. Cherokee DSS investigated the report and ultimately filed a juvenile petition that alleged abuse, neglect, and/or dependency of H.H. Id. ¶ 41. The juvenile petition was contained in Cherokee County File Number 15-JA-73 and is referred to as *In re H.H.* Id. Throughout the *In re H.H.* litigation, Hogan was represented by court-appointed counsel Melissa Jackson. Id. ¶ 43a.

On or about April 1, 2016, North Carolina state District Court Judge Tessa Sellers entered an order that placed H.H. in Hogan's custody. Id. ¶¶ 42-43.

Defendant Cindy Palmer ("Director Palmer") was the director of Cherokee DSS during the investigation and litigation of *In re H.H.* Id. ¶ 44. Defendant Scott Lindsay ("Attorney Lindsay") represented Cherokee DSS during the *In re H.H.* proceedings and provided advice and guidance to Cherokee DSS with respect to its investigation and practices relevant to the allegations set forth in Plaintiffs' Complaint. Id. ¶¶ 46-47.

Around November 21, 2016, Cherokee DSS again contacted Hogan with concerns involving Hogan and H.H. Id. ¶ 48. At the request of an "agent" of Cherokee DSS, Hogan attended a meeting at Cherokee DSS's office with Lauren Smith ("Social Worker Smith"), a social worker for Cherokee DSS. Id. ¶ 49. During the meeting, Social Worker Smith asked Hogan to execute a Custody and Visitation Agreement ("Custody Agreement") that purported to take custody of H.H. from Hogan and place physical and legal custody of H.H. with Hogan's father, Warren Hogan. Id. ¶¶ 50-51.

3

Hogan suffers from learning disabilities and is unable to read and write adequately, id. ¶ 52, and Cherokee DSS was aware of these limitations, id. ¶ 53. Further, Plaintiffs allege that Cherokee DSS "agents" made various statements to Hogan when he was presented with the Custody Agreement, including that: (1) the Custody Agreement was entered into in lieu of court involvement; (2) adverse legal proceedings and other consequences would follow if Hogan refused to sign the Custody Agreement; and (3) if Hogan did not agree to the Custody Agreement: (i) H.H. would be adopted, and he would never see her again; (ii) H.H. would be placed in foster care, and he would not see her; and (iii) H.H. would be placed in a location where he would have little or no contact with her. Id. ¶ 54.

At the time of the November 21, 2016 meeting, Hogan was not represented by counsel – the previous representation by appointed counsel Melissa Jackson had concluded – and he was not given an opportunity to contact new counsel. Id. ¶¶ 55-56.

In this context, Hogan agreed to and signed the Custody Agreement, which Plaintiffs allege was directed and approved by Director Palmer and Attorney Lindsay. Id. ¶¶ 59-60.

H.H. was removed from Hogan's care and placed with Warren Hogan. Id. ¶ 61. During this period, Hogan was not allowed to see H.H. and, at best, had *de minimis* contact with her. Id. ¶ 62.

On December 4, 2017, Hogan contacted the Cherokee County Sheriff's Office about the situation but was told that Judge Sellers' Order was not valid. Id. ¶ 63. Similarly, on December 6, 2017, Hogan attempted to pick H.H. up from school, but school officials

4

would not release H.H. to Hogan, notwithstanding that he had a certified copy of Judge Sellers' Order.  Id. ¶¶ 65, 66.  School officials contacted the Andrews Police Department and Warren Hogan, who arrived with a copy of the Custody Agreement, after which Hogan was precluded from retrieving H.H. by threat of arrest.  Id. ¶ 66.

On December 7, 2017, Attorney Jackson filed a motion in *In re H.H* on behalf of Hogan to enforce Judge Sellers' Order. [1]  Id. ¶ 67.

On December 13, 2017, North Carolina state District Court Judge Monica H. Leslie heard the motion.  Id. ¶ 68.  Hogan alleges that, when the Court asked what legal authority Cherokee DSS had for the execution of the Custody Agreement, Attorney Lindsay admitted that there was "none."  Id. ¶ 69.  Attorney Lindsay also informed the Court that he was aware of twenty (20) such agreements that were either drafted by him or at his direction. Id. ¶ 70. Judge Leslie found that the Custody Agreement was not a valid or enforceable legal document and was null and void, that the previous order entered by Judge Sellers was valid, and that full legal custody and control of H.H. was to be returned to Hogan.  Id. ¶ 71.

Judge Leslie also reported Cherokee DSS and Attorney Lindsay to the North Carolina Department of Health and Human Services ("DHHS").  Id. ¶ 72.  In a December 20, 2017 letter to all county directors of social services, DHHS advised that "facilitating such private custody agreements without the oversight of the Court falls outside of both law and policy."  Id. ¶ 74.

---

[1] The Complaint does not allege whether, at this time, Attorney Jackson was appointed or retained. See Compl. (Doc. 1-1).  Attorney Jackson is also counsel of record for Hogan in the instant matter.

Plaintiffs allege that, as a result of Defendants' conduct, Hogan was denied the opportunity to provide care and love to H.H. who was denied the care and protection of Hogan, and that Hogan and H.H. lost the society, companionship, comfort, guidance, kindly offices, and advice of each other. Id. ¶ 75.

## III. Legal Standards

### A. Rule 12(b)(2)

When considering a motion made pursuant to Rule 12(b)(2), the court has "broad discretion" to determine the procedure that it will follow. Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016). The court may consider jurisdictional evidence "in the form of depositions, interrogatory answers, admissions, or other appropriate forms." Id. at 269.

Generally, the plaintiff bears the burden of demonstrating jurisdiction by a preponderance of the evidence, but when the court considers a challenge to personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). Jurisdiction is determined at the time the claim arose. Glynn v. EDO Corp., 536 F. Supp. 2d 595, 606 n.15 (D. Md. 2008).

### B. Rule 12(b)(6)

The central issue in connection with a motion made pursuant to Rule 12(b)(6) is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering the motion, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009);

6

Giacomelli, 588 F.3d at 192. A court is not, however, required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.

Claims need not contain "detailed factual allegations," but must contain enough factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor will mere labels and legal conclusions suffice. Id. Federal Rule of Civil Procedure 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## IV. Discussion

The chart that follows represents an attempt to illustrate, in a succinct form, the various claims asserted in the Complaint, taken in the light most favorable to Plaintiffs.[2]

The Moving Defendants seek dismissal of some, but not all, of the claims pending against them. Specifically, the Moving Defendants seek dismissal of:

- all claims against Cherokee DSS

- all claims against Cherokee County

---

[2] Notwithstanding its great length, the Complaint is lacking in precision in some respects. For example, though the caption indicates that Attorney Lindsay and Director Palmer are sued in their individual and official capacities, the body of the Complaint fails to describe this distinction. Similarly, claims 13-17 do not specify the defendants against whom they are lodged and instead reference "Defendants" as a group.

7

- all claims against Attorney Lindsay in his official capacity, except the Eleventh Claim for relief: "Deprivation of Rights 42 U.S.C. § 1983"; and

- all claims against Director Palmer, in her official capacity, except the Eleventh Claim for relief: "Deprivation of Rights 42 U.S.C. § 1983."

Defs.' Mem. (Doc. 10) at 4. The claims targeted by the Partial Motion to Dismiss are highlighted on the claim chart.

Other Defendants have not sought dismissal. Attorney Lindsay and Director Palmer, in their individual capacities, are represented by separate counsel and have answered the Complaint. <u>See</u> (Docs. 11, 12). Defendant DSS Supervisor Doe #1 and DSS Social Worker Doe #1 have not been identified or responded to the Complaint.

CHART OF CLAIMS

| Claim | Cherokee County | Cherokee DSS | Lindsay Official Capacity | Lindsay Individ. Capacity | Palmer Official Capacity | Palmer Individ. Capacity | DSS Super. #1 | DSS SW #1 |
|---|---|---|---|---|---|---|---|---|
| 1. Negligence | | | X | X | | | | |
| 2. Negligence | | | | | X | X | X | X |
| 3. Gross Negligence | | | X | X | X | X | X | X |
| 4. Negligent Misrepresentation | | | X | X | X | X | X | X |
| 5. Negligent Hiring & Retention | X | | | | | | | |
| 6. Gross Negligent Hiring & Retention | X | | | | | | | |
| 7. Negligent Supervision | | | | | X | X | | |
| 8. Gross Negligent Supervision | | | | | X | X | | |
| 9. Actual Fraud | | | X | X | X | X | X | X |
| 10. Constructive Fraud | | | X | X | X | X | X | X |
| 11. Depr. Rts. § 1983 | | | | X | X | X | X | X |
| 12. Depr. Rts. § 1983—Monell | X | X | | | | | | |
| 13. Equal Protection | X | X | X | X | X | X | X | X |
| 14. Respondeat Superior | X | | | | | | | |

| Claim | Cherokee County | Cherokee DSS | Lindsay Official Capacity | Lindsay Individ. Capacity | Palmer Official Capacity | Palmer Individ. Capacity | DSS Super. #1 | DSS SW #1 |
|---|---|---|---|---|---|---|---|---|
| 15.Civil Obstruction of Justice | X | X | X | X | X | X | X | X |
| 16. N.C. Constitutional Claim | X | X | X | X | X | X | X | X |
| 17. Punitive Damages | X | X | X | X | X | X | X | X |

[This section left blank intentionally]

## A. Sovereign Immunity

The Moving Defendants argue that Plaintiffs' state tort claims against Cherokee County, Director Palmer in her official capacity, and Attorney Lindsay in his official capacity should be dismissed because these Defendants are entitled to sovereign immunity. Defs' Mem. (Doc. 10) at 19-22. This argument is made pursuant to Rule 12(b)(2) of the Rules of Civil Procedure.[3]

"Sovereign immunity" is the immunity enjoyed by the State itself, while "governmental immunity" applies to counties. Meyer v. Walls, 489 S.E.2d 880, 884 (N.C. 1997); see also Craig v. New Hanover Co., 678 S.E.2d 353, 353 (N.C. 2009).

"In North Carolina, governmental immunity serves to protect a municipality, as well as its officers or employees who are sued in their official capacity, from suits arising from torts committed while the officers or employees are performing a governmental function." Fullwood v. Barnes, 792 S.E.2d 545, 550 (N.C. Ct. App. 2016). "Services provided by local Departments of Social Services are governmental functions to which governmental immunity applies." Whitaker v. Clark, 427 S.E.2d 142, 143 (N.C. Ct. App. 1993) (citing Hare v. Butler, 394 S.E.2d 231, 235 (N.C. Ct. App. 1990)); see Estate of Earley ex rel.

---

[3] There are conflicting authorities as to whether sovereign or governmental immunity under North Carolina law should be considered under Rule 12(b)(1), 12(b)(2), or 12(b)(6). See Aliksa v. North Carolina Railroad Co., No. 1:17CV428, 2018 WL 3466948, at *1 (M.D.N.C. July 18, 2018) (citing Green v. Kearney, 690 S.E.2d 755, 760 (N.C. Ct. App. 2010)); Collum v. Charlotte-Mecklenburg Bd. of Educ., No. 3:07CV534-RJC-DSC, 2010 WL 702462, at *6 (W.D.N.C. Feb. 23, 2010) (analyzing immunity under both Rules 12(b)(1) and 12(b)(2)). The distinction, however, is immaterial for present purposes.

11

Earley v. Haywood Cty. Dep't of Social Services, 694 S.E.2d 405, 408-09 (N.C. Ct. App. 2010).

Counties "may waive governmental immunity 'to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function.'" Mosk v. Gaston Cty., No. 317CV00177RJCDSC, 2018 WL 1566339, at *10 (W.D.N.C. Mar. 30, 2018) (quoting N.C. Gen. Stat. § 153A-435 (2017)). However, such a waiver is effective only to the extent that tort liability is actually covered by the applicable insurance policy; "governmental immunity is not waived if the insurance policy has a clear provision excluding claims that would qualify for governmental immunity." Poole v. Cty., No. 315CV00309FDWDCK, 2016 WL 4267792, at *5 (W.D.N.C. Aug. 11, 2016) (citing Wright v. Gaston Cty., 698 S.E.2d 83, 88 (N.C. Ct. App. 2010)).

Under these principles, and as a starting point, Cherokee County, Director Palmer, and Attorney Lindsay would generally be entitled to immunity from Plaintiffs' state tort claims.

Plaintiffs' Complaint includes an affirmative allegation that immunity has been waived. Compl. (Doc. 1-1) ¶ 35, Foy v. N.C. Dept. of Ins., No. 5:09-CV-61-FL, 2010 WL 93860, at *3 (E.D.N.C. Jan. 8, 2010). Defendants argue to the contrary that insurance coverage does not exist and have submitted a declaration from Candy Anderson, Cherokee County's finance director, who states that Cherokee County's insurance policies for July 1, 2016 through July 1, 2017 and July 1, 2017 through July 1, 2018 specifically exclude claims for which Cherokee County may assert sovereign and/or governmental immunity. See Anderson Decl. (Doc. 10-2). ¶¶ 3-5. To Ms. Anderson's affidavit are attached copies

of the policies' General Provisions sections (Exhibit A, D), General Liability sections (Exhibit B, C), and Public Official Liability sections (Exhibit C, F).

Plaintiffs counter that: (1) Defendants have only provided excerpts of the policies; (2) Plaintiffs' claims pre-date the referenced coverage; and 3) Defendants' interpretation of the excerpts is incorrect or incomplete. Pl.'s Oppos. (Doc. 13) at 20-21.

"It is a well settled principle of insurance policy construction that an insurance policy is to be construed as a whole, giving effect to each clause, if possible." Smith v. Heath, 703 S.E.2d 194, 196 (N.C. Ct. App. 2010) (bracket removed and emphasis added); see also Century Indem. Co. v. The Hanover Ins. Co., No. CIV. 297CV-00925 BSJ, 2007 WL 2742718, at *13 (D. Utah Sept. 18, 2007) (parties could not properly analyze allocation of coverage without complete copies of relevant policies).

In this case, while the language of the policies may prove to be fatal to Plaintiffs' state tort claims, review of the important issue of immunity should be deferred until complete copies of the applicable policies have been produced. See Owen v. Haywood Cty., 697 S.E.2d 357, 358 (N.C. Ct. App. 2010) (waiver of immunity issue decided at summary judgment); Earley, 694 S.E.2d at 408 (same; copy of insurance contract attached to affidavit of County manager); Davis v. Dibartolo, 625 S.E.2d 877, 879 (N.C. Ct. App. 2006) (trial court deferred ruling on motion to dismiss and ordered defendant to produce complete copies of all liability policies).

The undersigned will, therefore, recommend that the Partial Motion to Dismiss on the basis of sovereign immunity be denied.

13

## B.    Failure to State a Claim

The Moving Defendants' arguments that various of Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) are treated, in turn, as follows.

### 1.    Claims against Cherokee DSS

The Moving Defendants contend that all claims against Cherokee DSS should be dismissed as a county department of social services is not amenable to suit.  Defs.' Mem. (Doc. 10) at 7-8. Plaintiffs essentially concede this point, responding that they "have no objection to the dismissal of claims against [Cherokee DSS] so long as Plaintiffs' claims proceed against the County itself."  Pls.' Resp. (Doc. 13) at 6.

The capacity of an entity to sue or be sued is assessed under "the law of the state where the court is located."  Fed. R. Civ. P. 17(b)(3).  The Fourth Circuit Court of Appeals has held that, in North Carolina, "[n]either the [County] Board of Health or Social Services is a legal entity separate and apart from the county.  Both boards are created by, and are extensions of, the county."  Avery v. Burke Cty., 660 F.2d 111, 113-14 (4th Cir. 1981). This conclusion has been cited by numerous federal district courts within North Carolina in dismissing claims against county DSS agencies. See, e.g., Pratt v. Pitt Cty. Dept. of Soc. Servs., No. 4:416-CV-00198-BR, 2016 WL 7057473, at *3 (E.D.N.C. Oct. 24, 2016), overruled on other grounds, 2016 WL 7046752 (E.D.N.C. Dec. 2, 2016); Loughlin v. Vance Cty. Dept. of Soc. Servs., No. 5:14-CV-219-FL, 2015 WL 11117120, at *4 (E.D.N.C. Mar. 31, 2015); see also Moua v. Alexander Cty., No. 5:09CV19-V, 2012 WL 252648, at *6 (W.D.N.C. Jan. 26, 2012) ("Plaintiffs' claims against Alexander County DSS

14

are dismissed given that, pursuant to North Carolina law, the Department of Social Services, an agency of Alexander County, does not have the legal capacity to be sued.").

Some authorities from North Carolina state courts appear to reach a different conclusion. See e.g., Taylor v. Wake County, 811 S.E.2d 648, 657 (N.C. Ct. App. 2018) ("Our holding today does not preclude Plaintiff from maintaining a negligence action against Wake County DSS in superior court concurrently with her Tort Claims Act action against DHHS in the Industrial Commission if Wake County DSS has waived immunity[.]").

However, as federal case law is clear on this point, the undersigned will recommend dismissal of all claims against Cherokee DSS.

### 2. Hiring Claims against Cherokee County

Plaintiffs' Fifth and Sixth claims are brought solely against Cherokee County and allege negligence and gross negligence in the hiring and retention of Director Palmer. See Compl. (Doc. 1-1) at 32-33. The Moving Defendants argue that these claims should be dismissed because Cherokee County did not employ Director Palmer. Defs.' Mem. (Doc. 10) 8-10.

To establish a claim for negligent hiring, supervision, or retention under North Carolina law, a plaintiff must show: (1) a specific negligent act upon which the action is based; (2) incompetence or unfitness of previous acts from which incompetency can be inferred; (3) the employer's actual or constructive notice of the employee's incompetency or unfitness; and (4) injury resulting from the employee's incompetency or unfitness. Foster v. Nash-Rocky Mount Cty. Bd. of Educ., 665 S.E.2d 745, 750 (N.C. Ct. App. 2008).

"Inherent to this cause of action is the employer-employee relationship." Newton v. City of Charlotte, No. 3:14-CV-00672-FDW-DSC, 2015 WL 346949, at *5 (W.D.N.C. Jan. 26, 2015).

Section 108A-1 of the North Carolina General Statutes requires that "[e]very county have a board of social services or a consolidated human services board." Members of a DSS Board are appointed by the local county commissioners. See N.C.G.S. § 108A-3. One duty of a DSS Board is "[t]o select the county director of social services according to the merit system rules of the North Carolina Human Resources Commission." N.C.G.S. § 108A-9 (1). Section 108A-12(a) describes the process by which a county director of social services is appointed and also indicates that "any director dismissed by such board shall have the right of appeal under the same rules." The salary of the DSS director is paid by the county. See N.C. Gen. Stat. § 108A-13.

The Moving Defendants cite some of these provisions in support of their argument that decisions regarding the hiring and dismissal of a DSS director are left to the DSS Board such that the DSS Board, and not the county, is in an employer-employee relationship with the director. This view, however, does not recognize fully the relationship between a county and its DSS.

As noted above, boards of health and boards of social services "are created by, and are extensions of, the county." Avery v. Burke County, 660 F.2d 113, 114; see also N.C. Gen. Stat. §§ 130A-34, 130A-35, 130A-39. That is, such boards are considered to be part of the county itself. Gray v. Laws, 51 F.3d 426, 437-38 (4th Cir. 1995) ("[W]e have consistently regarded the county and the county board of health as one in the same.").

16

Therefore, claims made against a Department of Social Services are properly directed toward the involved county. See Hester v. Colvin, No. 1:16CV410, 2017 WL 375656, at *3 (M.D.N.C. Jan. 26, 2017) ("Defendant Durham County Department of Social Services appears to be an improper defendant in this action. Under North Carolina law, a county is an entity that can sue or be sued.").

Similarly, official capacity claims against a county DSS director and DSS employees are deemed to be claims against the county. See Loughlin, 2015 WL 11117120, at *4 (concluding that because DSS is not subject to suit in its own name, county would be proper party for official capacity claims brought against DSS director and employees); accord Motel 6 Operating, L.P. v. Gaston Cty, N.C., No. 3:08-CV-00390-FDW, 2009 WL 1940499, at *1 (W.D.N.C. July 2, 2009) (though boards of health are not subject to suit, "the officers of the boards of health may subject local municipalities to liability if they act in an unconstitutional manner").

The county's responsibility for these claims arises from its relationship with the DSS employees. See Pratt, 2016 WL 7057473, at *3 (holding that official capacity claims against DSS employees should be considered a suit against their employer, either DSS or the county, and since DSS is not amenable to suit, the plaintiff should have named the county as a defendant); Lore v. Wilkes, No. 1:12CV165, 2013 WL 5935072, at *8 (M.D.N.C. Nov. 1, 2013) (official capacity claims against employees, including director of DSS, constitute claims against the governmental entities employing them).

Consequently, Cherokee County's connection with Director Palmer, either directly or derivatively through the DSS Board, is sufficient to constitute an employer-employee relationship for purposes of Plaintiffs' hiring claims.

Therefore, the undersigned will recommend that the Partial Motion to Dismiss be denied as to Plaintiffs' Fifth and Sixth claims.

### 3. Constructive Fraud.

The Moving Defendants argue that Plaintiffs' constructive fraud claim against Director Palmer and Attorney Lindsay should be dismissed because there is no confidential or fiduciary relationship between these Defendants and Plaintiffs. Defs.' Mem. (Doc. 10) at 10-12.

"Constructive fraud arises where a confidential or fiduciary relationship exists, and its proof is less exacting than that required for actual fraud." Head v. Gould Killian CPA Grp., P.A., 812 S.E.2d 831, 837 (N.C. 2018) (citations and quotation marks omitted). To state a claim for constructive fraud, a plaintiff must allege the following: (1) there was a confidential or fiduciary relationship; (2) the defendant took advantage of that position of trust to benefit himself; and (3) the plaintiff was injured based on an abuse of that relationship. White v. Consolidated Planning, Inc., 603 S.E.2d 147, 156 (N.C. Ct. App. 2004).

"A confidential relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Painter v. Doe, No.

3:15-CV-00369-MOC-DCK, 2016 WL 4644495, at *8 (W.D.N.C. Sept. 6, 2016) (internal quotation marks omitted).

In this case, Plaintiffs allege that "[Cherokee DSS] and its agents and employees had a relationship of trust and confidence with [Hogan] and the other Class Parents prior to or while obtaining the Class Parent's signatures on the [Custody Agreements], POAs or substantively similar agreements." Compl. (Doc. 1-1) ¶ 186. Plaintiffs do not cite case law finding that a Department of Social Services and a parent in Hogan's position are in a confidential or fiduciary relationship. Rather, Plaintiffs appear to argue that North Carolina statutory authority creates such a relationship, as it tasks Defendants "with protecting the constitutional rights of both the parents and minor children with whom they deal." Pl.'s Oppos. (Doc. 13) at 15 (citing N.C. Gen. Stat. § 7B-100(1)).

However, neither the fact that the State of North Carolina has an interest in protecting the constitutional rights of parents who may interact with a county Department of Social Services, nor the existence of the statutes it has passed to further that interest, appear to create a confidential or fiduciary relationship between Cherokee DSS and its representatives, such as Director Palmer and Attorney Lindsay, and parents such as Hogan that would support a claim for constructive fraud. As Plaintiffs' Complaint indicates, Hogan was in an adversarial relationship with DSS to the point of having been investigated, perhaps twice, regarding the circumstances of H.H. and having been represented by court-appointed counsel in the *In re HH* litigation.

Therefore, the undersigned will recommend that Plaintiffs' claim for constructive fraud against Director Palmer and Attorney Lindsay be dismissed.

19

## 4. 42 U.S.C. § 1983 <u>Monell</u> claim

Next, the Moving Defendants argue that, to the extent Plaintiffs seek to hold Cherokee County liable under 42 U.S.C. § 1983, pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), for decisions made by Director Palmer and Attorney Lindsay, such a claim should be dismissed since Director Palmer is not a policymaker for Cherokee County. Defs.' Mem. (Doc. 10) at 13.

Section 1983 imposes liability on any "person" who, acting under color of law, deprives another of rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Local governmental entities, such as counties, are "persons" for purposes of this statute and therefore are amenable to suit. <u>Owens v. Balt, City State's Attorneys Office</u>, 767 F.3d 379, 402 (4th Cir. 2014).

However, a municipality may only be held liable under section 1983 if it causes a deprivation through an official policy or custom, <u>Carter v. Morris</u>, 164 F.3d 215, 218 (4th Cir. 1999), that is created "by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 486 (1986). "To qualify as a 'final policymaking official,' a municipal official must have the responsibility and authority to implement final municipal policy with respect to a particular course of action." <u>Riddick v. School Bd. of the City of Portsmouth</u>, 238 F.3d 518, 523 (4th Cir. 2000).

In the instant case, Plaintiffs allege that:

Defendants Lindsay and Palmer established as official policy or custom the use of [Custody Agreements], POAs or substantively similar agreements to coerce parents to surrender custody of their children in violation of their

rights under the First, Fourth and Fourteenth Amendments to the Constitution
of the United States[.]

Compl. (Doc. 1-1) ¶ 253.

For their part, the Moving Defendants have articulated the issue primarily as being whether Cherokee County is the policymaker for Cherokee DSS. Defs.' Mem. (Doc. 10) at 12; cf. Defs.' Reply (Doc. 14) at 4 (whether Cherokee DSS is a policymaker for the county). "Quite simply," say the Moving Defendants, "neither the County, nor the County Manager, nor the County Commissioners have any role in the conduct which allegedly caused the constitutional injury in this case – the investigation of child abuse cases." Defs.' Reply (Doc. 14) at 5.

The framework for the analysis of this issue is set forth in Wilcoxson v. Buncombe County, 129 F. Supp. 3d 308 (2014), a recent case from this District that involved a legal determination under Monell as to whether Sheriff Bobby Medford was the final law enforcement policymaker for Buncombe County.

There, the court stated that the defendant county's formulation of the question as being whether the county or the sheriff was the official policymaker reflected a fundamental misunderstanding of Monell and did not address "the salient questions of who *is* the final policymaker, who adopted the policies in question, and for what entity does this person make such policy decisions?" Id. at 315. Further, the court noted that "[t]he County's observation that 'the County Commissioners have no say as to how the Sheriff and his or her deputies enforce the state criminal statutes within the [sic] Buncombe

County' begs the question" and found the issue to be "whether the sheriff is the final policymaker for the County, for the State, or for some other entity." Id. at 315-16.

In the instant case, the Moving Defendants' statement that the County Manager and the County Commissioners lack involvement in setting social services policies for Cherokee County is similarly unhelpful in answering the question at hand, which is whether Director Palmer should be considered a final policymaker for Cherokee County.

As discussed in Wilcoxson, the determination of whether an individual can be considered a final policymaker is made in light of state law. Id. at 315.

N.C. Gen. Stat. § 108A-14 sets forth the duties and responsibilities of a county director of social services, which duties include serving as the executive officer of the DSS Board, administering programs of public assistance and social services, administering funds provided by the board of commissioners for the care of indigent persons in the county, and assessing reports of child abuse and neglect and taking appropriate action.

The DSS Director is therefore the final policy-making authority for a Department of Social Services. See Smith v. Cleveland Cty., No. 1:10CV112, 2011 WL 3861396, at *4 (W.D.N.C. Aug. 31, 2011) ("[Cleveland County DSS, the director of DSS, and employees] do not dispute that the director of DSS is a policymaker under state law.").

Defendants acknowledge that Director Palmer is a policymaker for Cherokee DSS but dispute that the policies Director Palmer enacts are policies of Cherokee County. This argument, however, runs contrary to the express provision of Section 108A-1, which directs that a county board of social services "establish county policies for the programs established by this chapter." (emphasis added). It likewise does not square with the other

authorities, cited herein, imputing liability to a county for the conduct of DSS and its employees.

Director Palmer should therefore be considered a final policymaker responsible for the creation of social services policies for Cherokee County. Accordingly, the undersigned will recommend that the Moving Defendants' Motion as to Plaintiffs' Monell claim be denied.

### 5. Equal Protection

The Moving Defendants next argue that Plaintiffs' claim for violation of their equal protection rights is not supported by an adequate factual basis and therefore should be dismissed. Defs.' Mem. (Doc. 10) at 15 – 17.

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, § 1. To state a claim for an equal protection violation, a plaintiff must allege that similarly-situated individuals were treated differently and there was clear and intentional discrimination. Cent. Radio Co. Inc. v. City of Norfolk, Va, 811 F.3d 625, 635 (4th Cir. 2016). In addition, the plaintiff must allege "that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Id. (internal quotations omitted).

In pertinent part, Plaintiffs allege: "Defendants only utilized the practice of coercing parents into signing Custody Agreements, POAs or substantively similar agreements in some cases." Compl. (Doc. 1-1) ¶ 262. In others, Cherokee DSS elected to file petitions in accordance with N.C. Gen. Stat. § 7B-100 et. seq. Compl. (Doc. 1-1) ¶ 262. Plaintiffs

23

further allege that "[t]here is no rational basis for the arbitrary and capricious decision to afford the protections of due process to some individuals while ignoring them for others." Id. ¶ 263.

Plaintiffs have alleged disparate treatment of similarly-situated individuals—some parents in Hogan's situation were presented with Custody Agreements while others were not. However, Plaintiffs fail to allege facts that, even if construed liberally, could support an inference that this unequal treatment was based on intentional discrimination.  See Willoughby v. Virginia, No. 3:16CV784, 2017 WL 4171973, at *5 (E.D. Va. Sept. 20, 2017) (Plaintiff's claim for equal protection could not stand where he failed to allege facts to support an inference that any unequal treatment arose from discrimination).

Consequently, the undersigned will recommend dismissal of Plaintiffs' equal protection claim.

### 6.    North Carolina State Constitutional Claim.

The Moving Defendants next argue that Plaintiffs' Sixteenth Claim, which is made under the North Carolina State Constitution, is barred because Plaintiffs have adequate state law remedies.  Defs' Mem. (Doc. 10) at 17.

"[A] citizen asserting abridgement of her state constitutional rights may assert a direct claim thereunder only absent an adequate state remedy."  Evans v. Cowan, 510 S.E.2d 170, 178 (N.C. Ct. App. 1999) (citing Corum v. University of North Carolina, 413S.E.2d 276, 289 (N.C. 1992)).

North Carolina courts have found that adequacy in this context involves two elements: "(1) that the remedy addresses the alleged constitutional injury, and (2) that the

remedy provides the plaintiff an opportunity to enter the courthouse doors." <u>Taylor v. Wake</u> <u>Cty.</u>, 811 S.E.2d 648, 654 (N.C. Ct. App. 2018) (internal citations omitted).

In this case, Plaintiffs do not argue that remedies provided by other claims do not address their alleged constitutional injury. Rather, Plaintiffs' opposition to the Motion is based on the second element and contends that the Moving Defendants' argument is appropriate in the context of summary judgment and only after Plaintiffs have had an opportunity to present evidence supporting their claims and damages. Pl.'s Oppos. (Doc. 13) at 16.

The instant Motion to Dismiss, however, does not seek dismissal of all claims against all parties. As shown by the chart of claims above, Plaintiffs have made individual capacity claims against Director Palmer and Attorney Lindsay (and not counting the Doe defendants) under theories including negligence, negligent misrepresentation, fraud, and obstruction of justice. <u>See</u> Compl. (Doc. 1-1). Director Palmer and Attorney Lindsay, in their individual capacities, have not moved to dismiss these claims and instead have answered. Further, the pending Motion does not seek dismissal of Plaintiffs' Section 1983 claim against Director Palmer and Attorney Lindsay in their official capacities. Thus, it appears that at least some of Plaintiffs' claims will proceed.

Plaintiffs have an adequate remedy under state law in this context and, accordingly, the undersigned will recommend that Plaintiffs' North Carolina State Constitutional Claim be dismissed. <u>See</u> <u>Johnson v. City of Fayetteville</u>, No. 5:12-CV-456-F, 2013 WL 12165680, at *16 (E.D.N.C. Mar. 28, 2013) (granting motion to dismiss the plaintiffs'

25

claims under the North Carolina Constitution on the basis that there was a "possibility of relief").

<h3>7.     Punitive Damages.</h3>

The Moving Defendants argue that Plaintiffs' Seventeenth Claim, which seeks punitive damages, must be dismissed because punitive damages are not recoverable against municipalities or in an official capacity lawsuit, unless they are authorized by statute. Defs.' Mem. (Doc. 10) at 18.

In <u>Long v. City of Charlotte</u>, the North Carolina Supreme Court held that "in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages." 306 N.C. 187, 208 (1982).

The state Supreme Court subsequently noted that such a provision existed with respect to wrongful death claims; "by specifically including punitive damages as an item of damages recoverable in a wrongful death action under N.C. Gen. Stat. § 28A-18-2, the General Assembly has provided a statutory exception to the common law prohibition on punitive damages against municipal corporations." <u>Jackson v. Hous. Auth. of City of High Point</u>, 341 S.E.2d 523, 525 (N.C. 1986).

Here, Plaintiffs argue that the enactment in 1996 of N.C. Gen. Stat. §§ 1D-1 to 1D-50 abrogated the common law rule stated in <u>Long</u> so that punitive damages are now recoverable against municipalities. Pl's Oppos. (Doc. 13) at 18-19.

However, to remove municipalities' common law immunity, "the statutory provision must remove the *immunity of municipal corporations,* not merely provide for punitive damages." <u>Jackson v. Hous. Auth. of City of High Point</u>, 341 S.E.2d 523, 525

(N.C. 1986) (emphasis in original). Plaintiffs' reliance on <u>Cockerham-Ellerbee v. Town of Jonesville</u>, 660 S.E.2d 178 (N.C. Ct. App. 2008) is misplaced as it is a wrongful death case, whereas the instant case is not.

Punitive damages are similarly unavailable from municipal defendants in section 1983 cases. <u>See</u> <u>Iglesias v. Wolford</u>, 539 F. Supp. 2d 831, 841 (E.D.N.C. 2008) ("Municipalities may not be held liable for punitive damages, whether under 42 U.S.C. § 1983 or North Carolina law.").

Consequently, the seventeenth claim for relief should be dismissed.

## V.  Conclusion

Considering the foregoing, the undersigned **RECOMMENDS** that the Partial Motion to Dismiss by Cherokee County, Cherokee County Department of Social Services, Scott Lindsay in His Official Capacity, and Cindy Palmer in Her Official Capacity (Doc.9) be **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)  The Moving Defendants' Rule 12(b)(2) Motion be **DENIED**;

(2) The Moving Defendants' Rule 12(b)(6) Motion be **GRANTED** and

    (a)  All of Plaintiffs' claims against Cherokee DSS be dismissed;

    (b)  Plaintiffs' tenth claim for relief (constructive fraud) as against Director Palmer and Attorney Lindsay in their official capacities be dismissed;

    (c)  Plaintiffs' thirteenth claim for relief (equal protection) as against the Moving Defendants be dismissed;

    (d)  Plaintiffs' sixteenth claim for relief (North Carolina constitutional claim) as against the Moving Defendants be dismissed; and

(e) Plaintiffs' seventeenth claim for relief (punitive damages) as against the

Moving Defendants be dismissed.

(3) The Moving Defendants' Rule 12(b)(6) Motion be **DENIED** as to

(a) Plaintiffs' fifth and sixth claims for relief (hiring claims), and

(b) Plaintiffs' twelfth claim for relief (<u>Monell</u> claim) as against Cherokee

County.

Signed: February 27, 2019

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).