THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:18-CV-96

| | |
|---|---|
| BRIAN HOGAN,<br>SHALEES GREENLEE,<br>TIENDA ROSE PHILLIPS,<br>AMANDA DOCKERY a/k/a AMANDA TIMSON, and<br>HANNAH ALLEN,<br>each on their own behalf and as representatives of all unnamed class members who are similarly situated;<br><br>and<br><br>H.H., A.M., C.A., L.T., Z.A. M.C, and all unnamed minor class members who are similarly situated, by and through their GUARDIAN AD LITEM, JOY McIVER<br><br><br>Plaintiffs,<br><br>v.<br><br>CHEROKEE COUNTY;<br>SCOTT LINDSAY, in both his individual capacity and his official capacity as attorney for Cherokee County;<br>CINDY PALMER, in both her individual capacity and her official capacity as Director of Cherokee County Department of Social Services;<br>DONNA CRAWFORD, both in her individual capacity and her official capacity as Director of Cherokee County Department of Social Services; and<br>LISA DAVIS, both in her individual capacity and her official capacity as Director of Cherokee County Department of Social Services<br>Defendants, | **PLAINTIFFS' FIRST AMENDED COMPLAINT**<br>**(Petition for Class Certification)**<br>**(Jury Trial Demanded)** |

- 1 -

NOW COME the Plaintiffs, by and through undersigned counsel, and allege the following Claims for Relief seeking recovery of damages and for injuries incurred as a proximate cause of the acts and omissions of Defendants arising from the conduct of the Defendants in their official and individual capacities, as described more particularly in this Amended Complaint:

**INTRODUCTION**

1. This action arises from multiple events, transactions and occurrences, referenced and described in this Amended Complaint, involving the unlawful taking of minor children by Defendants. Defendants' conduct violated both state and federal law, policy, and the constitutional rights of both the parents and their children, when Defendants illegally took minor children from the custody of their biological parents using a variety of unlawful documents titled Custody and Visitation Agreements (hereinafter "CVA"), Powers Of Attorney (hereinafter "POA"), Family Safety Agreements (FSA's), Safety Plans and other similarly substantive documents and agreements. This conduct, including the unlawful taking described throughout this Amended Complaint, affected the relationships between the parents and their children, as well as the relationships of other persons and their children, and caused them injuries and damages. Copies of representative CVA's were filed with Court under seal (DE 8-1[1]); a copy of a representative POA was filed with this Court under seal (DE 8-2).

---

[1] Plaintiffs' original Complaint was filed in Cherokee County Superior Court and was removed to this Court based on the existence of a federal question. (DE 1) Plaintiffs' original Complaint had 7 exhibits attached. Four of the Exhibits (A through D) were filed with this Court under seal to protect the identity of minor children. (DE 8-1, 8-2, 8-3, 8-4) The other three exhibits (E through G) were filed with this Court at the time of removal. (*See* DE 1-1; Exhibit E at 68, Exhibit F at 69-72, and Exhibit G at 74-124). All seven of these exhibits are incorporated and adopted by reference into this Amended Complaint as though fully set forth herein. Three additional Exhibits, H through J are also attached to this Amended Complaint and are also adopted and incorporated as though fully set forth herein.

Case 1:18-cv-00096-MR-WCM   Document 27-2   Filed 05/20/19   Page 2 of 101

## PARTIES AND JURISDICTION

2.  Plaintiffs Brian Hogan, Shalees Greenlee, Tienda Rose Phillips, Amanda Dockery, and Hannah Allen (collectively "Representative Adult Plaintiffs" or "Adult Plaintiffs") bring this action for damages and a redress of harms suffered by themselves, as well as the damages and harms suffered by all other members of a class of similarly-situated parents,[2] who have been damaged and harmed as the result of like conduct by all named Defendants and other Social Services employees of Cherokee County, who are state actors as defined by law.

3.  Joy McIver has been appointed as the guardian ad litem for H.H. A.M., C.A., L.T., Z.A., and M.C. (collectively "Representative Child Plaintiffs" or Child Plaintiffs"), who are biological children of the Representative Adult Plaintiffs or other Class Parents and are minors or were minors at times relevant to this Amended Complaint. McIver, on behalf of these children, brings this action for damages and redress of harms suffered by Child Plaintiffs, as well as the damages and harms suffered by all other members of a class of similarly-situated families, and particularly, minor children who have been damaged and harmed as the result of like conduct by all named Defendants and other Social Services employees of Cherokee County, who are state actors as defined by law.

4.  Brian Hogan is a citizen and resident of Cherokee County, North Carolina.

5.  Shalees Greenlee is a citizen and resident of Cherokee County, North Carolina.

6.  Tienda Rose Phillips is a citizen and resident of Cherokee County, North Carolina.

7.  Amanda Dockery, who also at some relevant times has gone by the name Amanda Timpson, is a citizen and resident of Cherokee County, North Carolina.

---

[2] Plaintiffs allege and believe that there are one hundred or more affected parents who are similarly situated, as "District Attorney Ashley Hornsby Welch [said in] talking about the SBI's investigation into what the North Carolina Health and Human Services Department called illegal custody and visitation agreements that allowed Cherokee County's DSS to take custody away from potentially more than 100 parents…." https://wlos.com/news/local/sbi-wraps-up-cherokee-county-dss-investigation-case-turned-over-to-state-ags-office (last accessed April 22, 2019).

8. Hannah Allen is a citizen and resident of Cherokee County, North Carolina.

9. All other unnamed class members were, at the times of the events giving rise to this litigation, either citizens and residents of Cherokee County, North Carolina or, by the actions of the Defendants as more fully described below, had significant contact with Cherokee County, North Carolina.

10. The Child Plaintiffs were, at all times relevant to the allegations of Amended Complaint, residents and citizens of Cherokee County, North Carolina.

11. To ensure that the interest of the Child Plaintiffs and other Class Minors was protected throughout this action, undersigned counsel sought an order appointing a guardian *ad litem* for H.H. and the Class Minors.

12. This motion was granted by the Clerk of Superior Court for Cherokee County prior to the removal of this action to this Court, and the Order of appointment was filed with this Court.

13. Joy McIver, a licensed North Carolina Attorney in good standing from Buncombe County, was appointed as guardian *ad litem* for H.H. and the Class Minors. Joy McIver also accepted this appointment. (DE 1-2 at 5-8)

14. The new Child Plaintiffs in this Amended Complaint, and all unnamed children who are similarly situated, are also Class Minors as defined in the Order appointing the GAL.

15. Defendant Cherokee County (hereinafter "Cherokee County") is a political subdivision of the State of North Carolina, organized and governed by the laws of the State of North Carolina.

16. Defendants Lindsay is a citizen and resident of Cherokee County, North Carolina.

17. Defendant Palmer is a citizen and resident of Cherokee County, North Carolina.

18. Defendant Crawford is, upon information and belief, a resident of Cherokee County, North Carolina, or was at the times relevant to this action.

- 4 -

19. Defendant Davis is, upon information and belief, a resident of Cherokee County, North Carolina, or was at the times relevant to this action.

20. The unlawful acts and/or omissions which are the subject of this action took place in Cherokee County, North Carolina.

21. Cherokee County is located within the Western District of North Carolina, making venue proper in this Court.

22. In that the above-entitled action involves a claim arising under the Constitution of the United States and federal civil rights laws, including but not limited to 42 U.S.C. § 1983, this case involves a federal question. Federal jurisdiction in therefore founded upon 28 U.S.C. §§ 1331 and 1441(a).

23. The United States District Court would be acting within its discretion by exercising supplemental jurisdiction over Plaintiffs' state law claims asserted in this Amended Complaint pursuant to 28 U.S.C. § 1367(a).

24. Defendants are not entitled to absolute, prosecutorial, or governmental immunity because, *inter alia*, the actions complained of herein were not undertaken during the process of prosecuting any claim of abuse, neglect, or dependency in a proceeding before the District Court of Cherokee County.

25. Defendants have waived any governmental immunity that may arguably apply, pursuant to N.C. Gen. Stat. § 153A-435 by the purchase of insurance and/or participation in the North Carolina Association of County Commissioners Risk Management Pool, which provides coverage for the acts and omissions alleged against the Defendants herein.

26. Each Claim for Relief against each Defendants Lindsey, Palmer, Crawford, and Davis is brought against that Defendant in both his/her individual and official capacities, unless otherwise specified below.

- 5 -

27. Each Defendant, both those known and yet to be identified through discovery in this action, committed the acts complained of herein while acting in both their individual and official capacities.

## FACTS RELEVANT TO PLAINTIFFS' CLAIMS FOR RELIEF

### GENERAL FACTS APPLICABLE TO ALL PLAINTIFFS' CLAIMS

28. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as though full set forth herein

29. Defendant Scott Lindsay (hereinafter "Lindsay") has been at all relevant times, the attorney for Cherokee County DSS, an agent and employee of Cherokee County, and a Social Services employee of Cherokee County

30. Defendant Lindsay is a government actor as it relates to the allegations set forth herein.

31. Defendant Lindsay exercised personal and professional deliberation, made decisions and exercised personal and professional judgment as set forth herein.

32. Defendant Lindsay has been trained for more than 18 years in the rules, regulations, policies and procedures of the Department of Social Services as promulgated by the North Carolina Department of Health and Human Services ("NCDHHS") and the associated cases and laws of the state of North Carolina, the Constitution of the United States, and applicable federal laws, including corresponding federal cases and statutes.

   a. Defendant Lindsay, as an agent of and policy maker for Cherokee County and the Director of the Department of Social Services, is statutorily obligated to act in the best interest of each minor child and to ensure each child's health and safety at all times when acting in regard to Cherokee County (and its constituent Department of Social Services) and carrying out its duties.

- 6 -

b. Defendant Lindsay, as an agent of and policy maker for Cherokee County and the Director of the Department of Social Services, is obligated to ensure the legal rights of each and every parent are protected at all times when a minor child is being removed from a parent's care, custody and control, by Cherokee County (and its constituent Department of Social Services).

c. He is obligated to follow all the laws of the State of North Carolina at all times.

d. He owes a duty, as the DSS Attorney for Cherokee County and Socials Services employee of Cherokee County, operating with the authority of and at the direction of the County Director of Social Services, to act in accordance and conformity with all applicable state and federal laws, policies, and procedures toward all adults and children who are provided social services by Cherokee County and its Social Services employees.

33. Defendant Lindsay has been continuously employed as both the County Attorney and DSS Attorney for Cherokee County simultaneously for many years.

34. Further, Defendant Lindsay has represented Cherokee County as DSS attorney and provided advice and guidance to the then-incumbent Directors of Social Services for Cherokee County and Cherokee County's Social Services employees regarding all social services-related investigations and practices during all times relevant to the allegations contained within this Amended Complaint.

35. Defendant Cindy Palmer (hereinafter "Palmer") was, at relevant times (at the time of filing the original Complaint), the Director of Social Services for Cherokee County and has been an agent or employee of Cherokee County at all relevant times. Defendant Palmer is a health and community worker.

a. Defendant Palmer was the Director of Social Services for Cherokee County on an interim basis from November 30, 2009 until July 2010, and again from August 1, 2015 until March 23, 2016 and was the permanent Director of Social Services from March 23, 2016 until June 11, 2018.

b. Defendant Palmer has been, at all relevant times, an agent or employee of Cherokee County and a health and community worker.

c. Defendant Palmer, at all relevant times, was trained in the applicable policies, procedures, and laws of the State of North Carolina as they pertain to her duties as Director of Social Services for Cherokee County, including Chapter 7B of the North Carolina General Statutes.

d. Defendant Palmer was not lawfully qualified to be the Director and a waiver was sought for her appointment by Cherokee County.

e. Defendant Scott Lindsay served as DSS staff Attorney for this Director and used CVAs, FSAs, Safety Plans and other similar documents during the time and tenure of this director.

36. Defendant Donna Crawford (hereinafter "Crawford") was, at relevant times, the Director of Social Services for Cherokee County and was an agent or employee of Cherokee County at those relevant times.

a. Defendant Crawford was a health and community worker at those relevant times.

b. Defendant Crawford was the permanent Director of Social Services for Cherokee County from July 26, 2010 through July 31, 2015.

c. Defendant Crawford, at all relevant times, was trained in the applicable policies, procedures, and laws of the State of North Carolina as they pertain to her duties as

Director of Social Services for Cherokee County, including Chapter 7B of the North Carolina General Statutes.

    d. Defendant Scott Lindsay served as DSS staff Attorney for this Director and used CVAs, FSAs, Safety Plans and other similar documents during the time and tenure of this director.

37. Defendant Donna Crawford (hereinafter "Crawford") was, at relevant times, the Director of Social Services for Cherokee County and was an agent or employee of Cherokee County at those relevant times.

    a. Defendant Crawford was a health and community worker at those relevant times.

    b. Defendant Crawford was the permanent Director of Social Services for Cherokee County from July 26, 2010 through July 31, 2015.

    c. Defendant Crawford, at all relevant times, was trained in the applicable policies, procedures, and laws of the State of North Carolina as they pertain to her duties as Director of Social Services for Cherokee County, including Chapter 7B of the North Carolina General Statutes.

    d. Defendant Scott Lindsay served as DSS staff Attorney for this Director and used CVAs, FSAs, Safety Plans and other similar documents during the time and tenure of this director.

38. Defendant Lisa Davis (hereinafter "Davis") was, at relevant times, the Director of Social Services for Cherokee County and was an agent or employee of Cherokee County at those relevant times.

    a. Defendant Davis was a health and community worker at those relevant times.

    b. Defendant Davis was the permanent Director of Social Services for Cherokee County from January 5, 1995 through November 29, 2009.

c. Defendant Davis, at all relevant times, was trained in the applicable policies, procedures, and laws of the State of North Carolina as the pertain to her duties as Director of Social Services for Cherokee County, including Chapter 7B of the North Carolina General Statutes.

d. Defendant Scott Lindsay served as DSS staff Attorney for this Director and used CVAs, FSAs, Safety Plans and other similar documents during the time and tenure of this director.

39. Defendants Palmer, Crawford, and Davis, held, during the times aforementioned, a public office created by state statute whereby they exercised a position of power and discretion, as allowed by law as set forth in N.C. Gen. Stat. § 7B-100 *et. seq* and Chapter 108A of the North Carolina General Statutes.

40. Defendants Palmer, Crawford, and Davis were trained in the rules, regulations, policies and procedures of the Department of Social Services as promulgated by the NCDHHS and the associated laws of the state of North Carolina after assuming their responsibilities and duties.

41. Defendants Palmer, Crawford, and Davis exercised personal and professional deliberation, made decisions and exercised personal and professional judgment as set forth herein.

42. Defendants Palmer, Crawford, and Davis, as Directors of Social Services for Cherokee County, had both the authority and responsibility to set policies and practices for Cherokee County related to the County's obligation under state law to provide social services, including those complained of in this action.

43. As Cherokee County's Directors of Social Services, Defendants Palmer, Crawford, and Davis had a duty to their office to, at all times, act in the best interest of each minor child

over whom the County exercises its social services powers and to follow the law regarding placement of minors in the care of persons other than their biological parents.

44. Defendants Palmer, Crawford, and Davis were official policy makers for Cherokee County as set forth by North Carolina law.

45. Defendants Palmer, Crawford, and Davis were public officers as defined by applicable law, including the law of North Carolina.

46. The identities of all persons who are or have been social workers, supervisors, health and community workers, and others who took part in, were involved in, or had knowledge of the process of removing minor children from proper custodial parents without lawful authority and in derogation of the rights and privileges of those parents and minor children, have yet to be identified. However, those persons will be identified through discovery during both the class certification process and the merits of this action. Plaintiffs reserve their right to amend this Amended Complaint to add those persons as Defendants to this case as they become known.

47. Each and every agent and employee of Cherokee County, including each and every past and present social worker, supervisor, attorney, and Director of Social Services, is obligated to act, at all times, in the best interest of each minor child over whom the County exercises its social services powers and to follow the law regarding placement of minors in the care of persons other than their biological parents.

48. Each and every agent and employee of Cherokee County, including each and every past and present social worker, supervisor, attorney, and Director of Social Services, is obligated to act, at all times, in the best interest of each minor child over whom the County exercises its social services powers and to follow the applicable law, policy and procedure

- 11 -

as it relates to the removal/taking and placement of minor children in the care of persons other than their biological parents.

49. Each and every agent and employee of Cherokee County, including each and every past and present social worker, supervisor, attorney, and Director of Social Services, is obligated to act, at all times, in the best interest of each minor child over whom the County exercises its social services powers and to follow the applicable law, policy and procedure to provide services as required by law to the biological parents, guardians and persons to whom minor children were sent of other given.

50. At all relevant times, Cherokee County had a Social Services Board, which had oversight authority over the County's Department of Social Services.

    a. At all relevant times, at least one County Commissioner served on the County Board of Social Services and was aware, or should have been aware, of the conduct of Defendant Lindsey.

    b. At all relevant times, the Cherokee County Commissioner serving on the Board of Social Services, as well as the Board itself, had a duty imposed by law to ensure that Social Services employees of the County complied with all applicable policies, procedures, and state and federal laws , including but not limited to, laws related to the taking of minor children from their parents.

51. At all relevant times, Cherokee County, by and through its employees (including its Directors of Social Services) was aware, or should have been aware, of the Defendants' conduct, as describe throughout this Amended Complaint. As a direct and proximate result of their deliberate indifference, Cherokee County effected the loss and deprivations referenced in this Amended Complaint through its policy, pattern, practice, and custom of

- 12 -

unlawfully taking minor children by use of illegal documents, including the CVA. Yet, Cherokee County did nothing to object or intervene.

52. The Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants, at the times relevant, improperly billed either local, state, tribal or federal government funding sources while engaging in the CVA, POA, FSA, Safety Plan or other similar document process with the Plaintiffs and those similarly situated.

<u>PLAINTIFFS BRIAN HOGAN AND H.H.</u>

53. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

54. Plaintiff Hogan is the biological father of a minor child, H.H., born January 16, 2006.

55. On or about September 14, 2015, the Cherokee County Department of Social Services received a report of suspected neglect involving Hogan, H.H., and H.H.'s mother, Amanda Edmondson. Amanda Edmondson is a citizen and resident of Cherokee County, North Carolina.

56. Defendant Palmer or her designee conducted an investigation into the report and ultimately filed a juvenile petition alleging abuse, neglect, and/or dependency of H.H. in 2015. This juvenile petition is contained within Cherokee County File Number 15-JA-73.

57. The District Court of Cherokee County ultimately rendered an Order of adjudication and disposition on January 14, 2016, and said Order was signed and entered on April 1, 2016.

58. The April 1, 2016 Order was entered by the Honorable Tessa Sellers, District Court Judge Presiding, and placed custody of the minor child with Plaintiff Hogan.

- 13 -

a. The decision to return H.H. to the custody of Hogan was entered with the consent of Defendant Palmer (or her designee acting pursuant to her authority and at her direction) and H.H.'s guardian ad litem.

b. The April 1, 2016 order (hereinafter the "Judge Sellers Order") has been filed with this Court under seal to protect the identity of H.H. (DE 8-3), and constitutes an official record of the North Carolina General of Justice.

c. During the course of the litigation arising from the Juvenile Petition filed in Cherokee County 15-JA-73 ("*In re H.H.*"), Hogan was represented by court-appointed counsel, Melissa Jackson.

d. Cherokee County, Defendant Palmer, Defendant Lindsay, and other Defendant social workers and health and community workers participated in and were parties to *In re H.H.*

59. Defendant Palmer was the Director of Social Services for Cherokee County during the investigation and litigation of the juvenile action involving Hogan and H.H. She exercised full supervisory authority and had final authority over all decisions, policies, and actions of all Social Services employees of Cherokee County during the investigation leading to the filing of *In re H.H.* and the subsequent juvenile court proceedings.

60. Further, Defendant Palmer was Director of Social Services for Cherokee County and exercised full supervisory authority and had final authority over all decisions, policies, and actions of Cherokee County and its Social Services employees at all times relevant to the allegations contained within this Amended Complaint during the times that she was either the interim or permanent Director of Social Services for Cherokee County.

61. Defendant Lindsay represented Cherokee County as DSS attorney during the proceedings of *In re H.H.*, and, upon information and belief, provided advice and guidance to

- 14 -

Defendant Palmer and Cherokee County's other Social Services employees during the investigation leading to the filing of *In re H.H.*.

62. On or about November 21, 2016, Social Services employees of Cherokee County again contacted Hogan regarding concerns involving Hogan and H.H.

    a. A Social Services employee of Cherokee County, acting as an agent of Cherokee County, requested that Hogan come to the Department of Social Services.

    b. Hogan attended a meeting at the Department of Social Services.

    c. Present at this meeting were Hogan and Laurel Smith, a social worker for Cherokee County.

63. During this meeting, Cherokee County, by and through its social worker Laurel Smith, requested that Hogan sign a CVA, which purportedly removed custody of H.H. from Hogan and placed physical and legal custody of the minor child with the minor child's paternal grandfather, Warren Hogan (hereinafter "Grandfather").

64. Grandfather is a citizen and resident of Cherokee County, North Carolina.

65. Plaintiff Hogan has learning disabilities and is unable to adequately read and write.

66. Cherokee County, by and through its Social Services employees, was aware of Hogan's disabilities at all relevant times.

67. Cherokee County Social Services employees made a number of false, threatening, and coercive statements to Hogan at the time Hogan was presented with the CVA, which included:

    a. That this CVA was entered in lieu of court involvement;

    b. That Hogan would be subjected to adverse legal proceedings and other consequences if he did not sign the CVA;

    c. That if Hogan did not acquiesce to the CVA:

- 15 -

i.   Your child will be adopted out and you will never see her again.

ii.  Your child will be placed in foster care and you won't see her.

iii. Your child will be placed in a location where you will have little or no contact with her.

iv.  Other false threatening, and coercive statements as may be shown through discovery and trial.

68. Plaintiff Hogan was not represented by counsel at the time of the November 21, 2016 meeting His appointed counsel from *In re H.H.* had been released from further representation following entry of the Judge Sellers Order back on April 1, 2016.

69. Plaintiff Hogan was neither advised nor given an opportunity to contact independent legal counsel when confronted with and unlawfully pressured and coerced to sign the unlawful CVA.

70. No Social Services employee of Cherokee County contacted Hogan's prior attorney regarding the meeting or the CVA.

71. Under the provisions of N.C. Gen. Stat. § 7B-100 *et seq.*, Plaintiff Hogan was entitled to due process and the appointment of counsel prior to any adversarial proceeding that would result in him losing custody of his child.

72. Further, neither Laurel Smith, nor any other Social Services employee of Cherokee County ever informed Hogan during the course of obtaining his signature on the CVA that, in a DSS Court proceeding, Hogan would have had a right to counsel, and that DSS  is required by law to attempt to reunify parents who have lost custody of the children in a DSS proceeding.

73. On November 21, 2016, Plaintiff Hogan, because of the fraud, coercion, misrepresentations, and omissions made by Cherokee County and its agents and

- 16 -

employees described herein, signed the CVA purporting to remove H.H. from Hogan's custody and placing her in the custody of Grandfather. A true and accurate copy of the CVA has been filed with this Court under seal to protect the identity of H.H. (DE 8-4).

74. Hogan did not voluntarily sign the CVA, his signature was the result of the unlawful coercion by Social Services employees of Cherokee County.

75. Laurel Smith, who was a social worker for Cherokee County at the time, prepared this CVA at the direction of and with the approval of Defendants Lindsay and Palmer.

76. As a result of this CVA, in violation of law, H.H. was removed from Hogan's care, custody, and control and placed with her paternal grandfather in direct violation of Judge Seller's Order.

77. As a result of this CVA and the unlawful conduct of Cherokee County, its agents and employees, Hogan was not allowed to see, visit, care for, or otherwise interact with H.H.

78. Hogan and H.H. had only *de minimus* contact, which consisted of approximately 10 minutes walking around the track at H.H.'s school, with Grandfather closely following closely behind.

79. The CVA permitted no meaningful contact and did not allow Hogan to exercise his rights as a parent to be a parent to his child.

80. On December 4, 2017, Plaintiff Hogan attempted to lawfully obtain his daughter, H.H., by contacting the Cherokee County Sheriff's Office.

    a. The Sheriff of Cherokee County has been, since December of 2014, Derrick Palmer, the husband of Defendant Cindy Palmer.

    b. Cody Williams, a deputy of the Cherokee County Sheriff's Office, reviewed the Judge Sellers' Order and concluded that it was not a valid Court Order.

c. On information and belief, Defendant Lindsay was either directly or indirectly involved in Deputy Williams reaching this decision.

d. As the County Attorney for Cherokee County, Defendant Lindsay was also a legal advisor to the Sheriff's Office during this time.

e. At the time, Defendant Lindsay was paid in excess of $300,000.00 per year by Cherokee County for his employment as the attorney for Cherokee County as well as the DSS attorney for Cherokee County -- two positions that he held simultaneously.

81. On December 6, 2017, Hogan attempted to pick up the minor child from school. He had in his possession a certified true copy of the Judge Sellers Order that gave him custody of his daughter.

82. Despite having this Court Order,

a. School officials would not release the H.H. to Hogan.

b. School officials contacted the Andrews Police Department and Grandfather.

c. Grandfather appeared with a copy of the unlawful CVA.

d. Officers of the Cherokee County Sheriff's Officer (and employees of Defendant Palmer's husband, Cherokee County Sheriff Derrick Palmer) prevented Hogan from retrieving H.H. upon the threat of arrest.

e. Upon information and belief, Defendants Lindsay and Palmer were either directly or indirectly involved in enforcing the unlawful CVA, and denying Hogan access to and custody of H.H.

83. On December 7, 2017, attorney Melissa Jackson filed on Hogan's behalf a motion in the Cherokee County District Court case, 15-JA-73, to enforce the Judge Sellers Order. Attorney Jackson was not court-appointed at this time; Plaintiff Hogan was not informed

of his right to have, nor was he provided with, court-appointed counsel at any time after April 2, 2016, when the Judge Sellers' Order was entered.

84. On December 13, 2017, the Honorable Monica H. Leslie heard Hogan's motion to enforce the Judge Sellers Order.

85. Defendant Lindsey was present in Court during the hearing on Hogan's motion to enforce the Judge Sellers Order. When asked by the Court what legal authority DSS had for the use of the CVA, Defendant Lindsay admitted that there was "none."

86. Defendant Lindsay further informed the Court that at that time, he was aware of 20 such agreements drafted by himself or at his direction.

    a. At all relevant times, Defendant Lindsay was operating within the scope and authority of his position as the DSS attorney for Cherokee County.

    b. At all relevant times, Cherokee County, by and through its employees (including its Directors of Social Services) was aware of Defendant Lindsay's conduct. As a direct and proximate result of their deliberate indifference, Cherokee County effected the loss and deprivations referenced in this Amended Complaint through its policy, pattern, practice, and custom of unlawfully taking minor children by use of illegal documents, including the CVA. Yet, Cherokee County did nothing to object or intervene.

    c. On at least one occasion, a Cherokee County social worker, Katie Brown, inquired about whether the CVAs or substantively similar agreements were legal, and Defendant Lindsay assured her that such agreements were legal and enforceable.

    d. Defendant Lindsay's conduct was negligent, grossly negligent, and without legal authority and done with reckless disregard of and deliberate indifference to the Plaintiffs or their constitutionally protected rights.

- 19 -

e. In the alternative Defendant Lindsay's conduct was intentional, willful, and without legal authority and done with reckless disregard of and deliberate indifference to the Plaintiffs or their constitutionally protected rights.

87. Judge Leslie entered an Order on December 13, 2017 holding that the CVA was not a valid legal document, not enforceable or binding, is null and void, and the previous order entered by Judge Sellers was valid and full legal custody and control of H.H. was to be returned to Plaintiff Hogan. A true and accurate copy of this Order (which does not identify H.H. by name) is attached to this Complaint as Exhibit H and it is incorporated and adopted as though fully set forth herein.

88. After entering her order in regard to Hogan's CVA on December 13, 2017, Judge Leslie reported Cherokee County, its Department of Social Services, and Defendant Lindsay to the N.C. Department of Health and Human Services (hereinafter "NCDHHS").

89. Following Judge Leslie's report to NCDHHS regarding Cherokee County, its Department of Social Services, and Defendant Lindsay's actions, the NCDHHS became aware of the Defendants' practice of entering into CVAs, POAs, Family Safety Agreements, Safety Plans and other documents substantively similar to the CVA used with Plaintiff Hogan and others.

90. An affidavit, executed by Judge Leslie detailing the events described during and after the hearing on December 13, 2017, is attached as Exhibit I to this Amended Complaint. The contents of this affidavit are incorporated and adopted as factual allegations into this paragraph of this Amended Complaint as though fully set forth herein.

91. NCDHHS advised in a December 20, 2017 letter to all county Directors of Social Services throughout North Carolina that "facilitating such private custody agreements without the

oversight of the Court falls outside of both law and policy." A true and accurate copy of this letter was filed with this Court (DE 1-1 at 68).

92. Hogan was deprived of his rights to substantive due process because Defendants unlawfully took H.H. and deprived him of his parental rights by means of the coercive and unlawful CVA.

93. Hogan was deprived of his procedural rights to due process because Defendant's coercive and unlawful use of the CVA deprived Hogan of a fair and meaningful opportunity to be heard by a court prior to losing his constitutional parental rights.

94. As a proximate result of Defendants' conduct, Hogan and H.H. suffered sadness, pain and emotional distress as:

    a. Hogan was denied the opportunity to provide care, love, and affection to minor child.

    b. H.H. lost the services, care, protection, and assistance of Hogan.

    c. Hogan and H.H. lost society, companionship, comfort, guidance, kindly offices, and advice of each other;

    d. Hogan and H.H. suffered other damages that will be proven at trial.

95. Because H.H. was taken from Plaintiff Hogan outside of the lawful process of a dispositional hearing in DSS Court and by means of the unlawful CVA, Cherokee County did not provide medical care and other services and benefits that it would have been required to provide by law had the lawful process of a court proceeding been undertaken. Therefore, H.H. was separately and directly harmed by Defendants' unlawful taking of her from her father's legal custody by losing medical care and other beneficial services to which she would have been entitled by law.

96. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

97. Plaintiff Shalees Greenlee ("Greenlee") is the biological mother of A.M., born July 6, 2016. Both Greenlee and A.M. reside in Cherokee County, North Carolina.

98. The biological father of the minor child is Michael Mathieu ("Mathieu").

99. When A.M. was born, she appeared to suffer from drug withdrawal symptoms. As a result of A.M.'s symptoms, Director Palmer or her designee opened an investigation to determine whether A.M. was an abused, neglected, or dependent child as defined by the laws of North Carolina.

100. Social workers Katie Brown and Diana Garett met Greenlee and A.M. at the birth hospital and notified Greenlee that an investigation had begun and a case had been opened as to A.M.

101. During all relevant times, Katie Brown and Diana Garett were Social Services employees of Cherokee County acting under the authority, direction, and policies of Defendant Palmer.

102. For approximately the first two and one-half months after A.M. was released from the hospital, Greenlee was required by Social Services employees to take a number of drug tests, beginning on the day A.M. was released from the hospital.

103. Greenlee tested positive for a controlled substance in that first test, and negative on the next five drug screens.

104. Sometime during the first three months after A.M. came home from the hospital, social worker Katie Brown went to Greenlee's home with a CVA, which she asked Greenlee to sign and give custody of A.M. to Mathieu. Mathieu was purportedly A.M.'s biological

- 22 -

father. However, another man was listed on A.M.'s birth certificate. North Carolina law presumes that the person listed on a child's birth certificate is, in fact, the child's father. As such, Mathieu had no legal rights to custody of A.M. unless and until he proved that he was, in fact, the biological father of A.M.

105. Greenlee refused to sign the proffered CVA.

106. Later, A.M. was placed into a kinship placement with Greenlee's mother, but Mathieu wanted additional visitation.

107. Greenlee at this time desired to enter into some type of arrangement whereby Mathieu could have access to A.M., but that Greenlee would also retain her parental rights and visitation with A.M.

108. Social Worker David Hughes, went to Greenlee's home on November 23, 2016, with the same CVA that Greenlee had previously refused to sign.

109. At all times relevant to this Amended Complaint, David Hughes was a health and community worker and a Social Services employee and agent of Cherokee County.

110. Even though Greenlee had refused to sign the CVA previously, Hughes used false, threatening, coercive, and oppressive statements and omissions to overcome Greenlee's free will, and she signed the CVA as a result of coercion and duress.

111. Hughes' false statements and omissions included:

    a. That the CVA was a binding legal document.

    b. That the CVA would not completely bar her from visitation.

    c. Failing to inform her that in a DSS Court proceeding, Greenlee would have had a right to counsel, and that DSS is required by law to attempt to reunify parents who have lost custody of the children in a DSS proceeding

- 23 -

d.   Such other and further false statements and omissions as may become evident through discovery and trial of this action.

112. No Cherokee County Social Services employee ever offered services to Greenlee or A.M. either during Greenlee's pregnancy or after A.M.'s birth.

113. The CVA was drafted and created by Social Services employees of Cherokee County acting under the authority and at the direction of the Director of Social Services and in conjunction with, at the direction of, and with and the approval of the Cherokee County DSS Attorney Scott Lindsay.

114. After learning of Judge Leslie's order determining that the CVA's were illegal in December of 2017, Mathieu filed an action for legal custody of A.M. in the District Court of Cherokee County, North Carolina. (Cherokee County File No. 18-CVD-46 [3])

115. Mathieu obtained temporary custody of A.M. during an *ex parte* hearing. Mathieu relied on the CVA as one of the grounds for claiming that he should continue to have custody of A.M. (Exhibit J at 65-76)

116. Upon being served with Matthieu's custody lawsuit, Greenlee counterclaimed for custody and sought a declaratory judgment that the CVA was void and illegal. (Ex. J at 44-54)

117. The child custody action and declaratory judgment action came on for hearing before the Honorable Tessa Sellers, District Court Judge presiding at the February 28, 2018 session of District Court in Cherokee County.

118. During the trial, which was transcribed (and a complete copy of the transcript of this trial has been filed with this Court in DE 1-1 at 74-124), Shalees Greenlee, Michael Mathieu,

---

[3] A copy of this state court file was filed with this Court as DE 21-1. However, in reviewing all the exhibits in the course of preparing this Amended Complaint, undersigned counsel determined that a scanner error caused the loss of several pages from the court file. Undersigned counsel made a new scan of the court file, Bates numbered it to ensure all pages were present, and attaches it to this Amended Complaint as Exhibit J. All of Exhibit J is incorporated and adopted by reference into this Amended Complaint as though fully set forth herein. Further Plaintiffs note that Exhibit J is an official record of the state of North Carolina, and Exhibit J is attested by the Cherokee County Clerk of Superior Court as an official court record pursuant to 28 U.S.C. § 1738.

David Hughes, Cindy Palmer, and Scott Lindsay all testified. Their testimonies are incorporated and adopted by reference into this Amended Complaint as though fully reproduced herein.

119. After hearing all the evidence presented, Judge Sellers entered a declaratory judgment.

120. After hearing all the evidence presented, Judge Sellers found numerous facts, made numerous conclusions of law, and ruled that:

    a. The CVA signed by Greenlee is unlawful. (*See* Ex. J at 23.)

    b. The process of obtaining the CVA violated the constitutional rights of Greenlee. (*See id.*)

    c. The CVA is the product of both actual and constructive fraud on behalf of the Cherokee County Department of Social Services, its agents and employees and Attorney Scott Lindsay and Director Cindy Palmer. (*Id.*)

    d. The CVA signed by Greenlee and all other CVAs similar to and like this in form, content and structure created by Cherokee County Department of Social Services, their agents or employees and Attorney Scott Lindsay are and shall be at all times void *ab initio*. (Ex. J at 23-24)

121. Greenlee was deprived of her rights to substantive due process because Defendants unlawfully took A.M. and deprived Greenlee of her parental rights by means of the coercive and unlawful CVA.

122. Greenlee was deprived of her procedural rights to due process because Defendant's coercive and unlawful use of the CVA deprived Greenlee of a fair and meaningful opportunity to be heard by a court prior to losing her constitutional parental rights.

123. As a proximate result of Defendants' conduct, Greenlee and A.M. suffered sadness, pain and emotional distress as:

- 25 -

    a. Greenlee was denied the opportunity to provide care, love, and affection to her minor child.

    b. A.M. lost the services, care, protection, and assistance of Greenlee.

    c. Greenlee and A.M. lost society, companionship, comfort, guidance, kindly offices, and advice of each other; and

    d. Such other damages as may be proven at trial.

124. Because A.M. was taken from Greenlee outside of the lawful process of a dispositional hearing in DSS Court and by means of the unlawful CVA, Cherokee County did not provide medical care and other services and benefits that it would have been required to provide had the lawful process of a court proceeding been undertaken. Therefore, A.M. was separately and directly harmed by Defendants' unlawful taking of her from her mother's legal custody by losing medical care and other beneficial services to which she would have been entitled.

<u>PLAINTIFFS TIENDA ROSE PHILLIPS and C.A.</u>

125. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

126. Plaintiff Tienda Rose Phillips ("Phillips") is the biological mother of C.A., born November 17, 2009.

127. Stephen Ashe ("Ashe") is the biological father of C.A..

128. Plaintiff Phillips and Ashe are citizens and residents of Cherokee County, North Carolina.

124. C.A. was, at the time of the events set forth herein, a citizen and resident of Cherokee County, North Carolina.

125. Around October 2017, Plaintiff Phillips' mother, Kelly Phillips, was preparing to move from Cherokee County, North Carolina, to the state of North Dakota.

- 26 -

126. Plaintiff Phillips believed that it would be appropriate for Kelly Phillips to take C.A. to North Dakota for a period of time.

127. Plaintiff Phillips and Kelly Phillips both understood that they would need some sort of legal document granting Kelly Phillips the right to obtain medical c a re for C.A., enroll C.A. in school, and do other necessary and proper things on behalf of C.A. so long as C.A. would reside in North Dakota.

128. Plaintiff Phillips and Kelly Phillips created and executed a temporary guardianship agreement as between themselves to permit Kelly Phillips to take C.A. to North Dakota and care for him.

129. Temporary guardianship agreements like the one executed between Plaintiff Phillips and Kelly Phillips are expressly authorized under North Carolina law.

130. Upon learning of the temporary custody agreement executed by Plaintiff Philips and Kelly Phillips, Social Services employee Lacy Hensley of Cherokee County contacted Plaintiff Phillips sometime around September of 2017 and told her that the temporary custody agreement was insufficient.

131. Hensley presented Plaintiff Phillips with a CVA and directed her sign it.

132. Plaintiff Phillips initially refused to sign the proffered CVA because it purported to permanently transfer legal custody of C.A. to Kelly Phillips. At no time had it been the intention of Plaintiff Philips to surrender full and permanent legal and physical custody of C.A. to Kelly Phillips

133. When Plaintiff Phillips refused to sign, Hensley made a number of threatening and coercive statements to Plaintiff Phillips, including:

    a. If Plaintiff Phillips refused to sign the CVA, Social Services employees of Cherokee County would put C.A. in a foster home.

- 27 -

b. If Kelly Phillips took C.A. to North Dakota without signing the CVA, that she would be charged with the crime of kidnapping C.A.

c. Such other and further false statements and omissions as may become evident through discovery and trial of this action.

134. Further Social Services employees of Cherokee County misrepresented to Plaintiff Phillips that her temporary guardianship agreement was insufficient.

135. An unsigned copy of the CVA has been filed with this Court under seal to protect the identity of C.A. (DE 8-1 at 81-84)

136. Plaintiff Phillips did not have counsel, was not given court-appointed counsel, was not informed of her right to have counsel, and was not given an opportunity to seek legal counsel when presented with the CVA.

137. Plaintiff Phillips did not voluntarily sign the CVA; her signature was the result of coercion.

138. At no time did Social Services employees seek to contact Ashe about C.A. or obtain Ashe's consent for Phillips' mother to take custody of C.A., even though they were aware that he was C.A.'s biological father.

139. Ashe was not presented with, nor did he sign, the CVA.

140. No Social Services employee of Cherokee County informed Plaintiff Phillips that, in a DSS Court proceeding, Plaintiff Phillips would have had counsel, and that DSS is required by law to attempt to reunify parents who have lost custody of the children in a DSS proceeding.

141. These false, threatening, coercive, and oppressive statements and omissions overcame Plaintiff Phillips' free will, and she signed the CVA under this duress.

- 28 -

142. The executed CVA purported to place permanent legal and physical custody of C.A. with Kelly Phillips and purported to re-establish North Dakota as C.A.'s home state for the purposes of the Uniform Child Custody and Enforcement Jurisdiction Act (UCCJEA) – a situation that would not be possible without Kelly Phillips obtaining full and permanent legal custody.

143. There was a never a judicial hearing as required by the UCCJEA to establish C.A.'s home state or to ensure the best interest of the minor child was legally considered.

144. Plaintiff Phillips was deprived of her rights to substantive due process because Defendants unlawfully took C.A. and deprived her of her parental rights by means of the coercive and unlawful CVA.

145. Plaintiff Phillips was deprived of her procedural rights to due process because Defendants' coercive and unlawful use of the CVA deprived Plaintiff Phillips of a fair and meaningful opportunity to be heard by a court prior to losing her constitutional parental rights.

146. The CVA was drafted and created by Social Services employees of Cherokee County acting under the authority and at the direction of the Director of Social Services and in conjunction with, at the direction of, and with and the approval of the Cherokee County DSS Attorney, Scott Lindsay.

147. As a proximate result of Defendants' conduct, Plaintiff Phillips and C.A. suffered sadness, pain and emotional distress as:

   a. Plaintiff Phillips was denied the opportunity to provide care, love, and affection to her minor child;

   b. C.A. lost the services, care, protection, and assistance of Phillips;

c. Plaintiff Phillips and C.A. lost society, companionship, comfort, guidance, kindly offices, and advice of each other; and

d. Such other damages as may be proven at trial.

148. Because C.A. was taken from Plaintiff Phillips outside of the lawful process of a dispositional hearing in DSS Court and by means of the unlawful CVA, Cherokee County did not provide medical care and other services and benefits that it would have been required to provide had the lawful process of a court proceeding been undertaken. Therefore, C.A. was separately and directly harmed by Defendants' unlawful taking of him from his mother's legal custody by losing medical care and other beneficial services to which he would have been entitled.

### PLAINTIFFS AMANDA DOCKERY and L.T.

149. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

150. Plaintiff Amanda Dockery ("Dockery") was previously known as Amanda Timpson, and is the biological mother of L.T., born May 24, 2013.

151. At the time of L.T.'s birth, Dockery was married to Travis Timpson, the biological father of L.T.

152. William "Bill" Timpson is the paternal grandfather of L.T.

153. William "Bill" Timpson was granted legal custody of L.T. by the District Court of Cherokee County, 17-CVD-66 (*Timpson v. Timpson*) on February 8, 2017.

154. The parental rights of Dockery were <u>not</u> terminated in *Timpson v. Timpson*.

155. After obtaining legal custody of L.T., William "Bill" Timpson was arrested for offenses unrelated to L.T. and incarcerated in the Cherokee County Detention Center.

- 30 -

156. During William "Bill" Timpson's incarceration, the Cherokee County Director of Social Services or her designee filed a petition alleging that L.T. was an abused, neglected, or dependent child.

157. Social Services employees of Cherokee County, in conjunction with filing the petition, also obtained an order of non-secured custody for L.T. pursuant to Chapter 7B of the North Carolina General Statutes.

158. The Petition alleging that L.T. was an abused, neglected, or dependent juvenile was adjudicated on June 13, 2017. The Department did not prove abuse, neglect or dependency, and as a result, the non-secure custody order was dissolved and the petition was dismissed.

159. While William "Bill" Timpson was incarcerated, and while L.T. was in the non-secured custody of DSS, Dockery filed a motion to regain custody of L.T. in *Timpson v. Timpson* on June 13, 2017.

160. After the DSS petition was dismissed and the non-secure custody order was dissolved, but while Dockery's motion to regain custody of L.T. was pending, Social Services employees, David Hughes and Courtney Myers, Social Services employees of Cherokee County, on June 15, 2017, presented William "Bill" Timpson (who remained incarcerated) with a CVA purporting to transfer his custodial rights to Christopher Coker and Melissa Coker, the maternal uncle and aunt of L.T.

161. William "Bill" Timpson was told by the Social Services employees that if he did not sign the CVA, L.T. would be placed in a random foster placement.

162. At the time they presented the CVA to William "Bill" Timpson, Courtney Myers and David Hughes knew that the Cherokee County District Court had dismissed the petition

- 31 -

alleging abuse, neglect, or dependency, and therefore that William "Bill" Timpson would not lose custody of L.T.

163. At all times in their dealings with L.T. and William "Bill" Timpson, Social Services employees Courtney Myers and David Hughes were acting as agents and employees of Cherokee County and with the authority of and at the direction of the Director of Social Services for the County.

164. The misrepresentation that L.T. would be placed in a random foster placement was coercive and overcame the will of William "Bill" Timpson. As a result, he signed the proffered CVA. (An unsigned copy of the CVA was filed with this Court, *see* DE 8-1 at 77-80.)

165. The CVA was never presented to Dockery, even though her parental rights had never been terminated and she had a motion to regain custody pending in the District Court of Cherokee County at the time the CVA was executed.

*166.* William "Bill" Timpson had no right to transfer custody to a third party under North Carolina law, as he was bound by the terms of the consent judgment recorded in *Timpson v. Timpson*.

167. Social Services employees of Cherokee County, including Defendant Lindsay, were aware of *Timpson v. Timpson* and the provisions of its judgment because they are expressly referenced in the CVA.

168. Neither Dockery or William "Bill" Timpson were advised of their rights to court-appointed counsel in any proceeding that could result in their losing custody of a child. Neither person was provided counsel. Neither person was given an opportunity to seek legal counsel in connection with this CVA.

- 32 -

169. Despite knowing (1) that Dockery retained parental rights in regard to L.T., (2) that Dockery had filed a motion to regain custody after William "Bill" Timpson's arrest, and (3) that Dockery would be a necessary party to any judicial determination of custody of L.T., Social Services employees of Cherokee County, acting with the authority of and at the direction of Defendant Palmer, used the CVA to unlawfully deprive Dockery of an opportunity to regain custody of L.T.

170. The CVA was drafted and created by Social Services employees of Cherokee County acting under the authority and at the direction of the Director of Social Services and in conjunction with, at the direction of, and with and the approval of the Cherokee County DSS Attorney Scott Lindsay.

171. Further, Social Services employees of Cherokee County, by means of the methods and action described in this Amended Complaint, dispossessed Dockery of a constitutionally protected liberty interest, *to wit* her right to participate in a custody hearing before the District Court of Cherokee County.

172. Dockery was deprived of not only of her parental rights, but also her rights to seek reunification through her pending motion to reclaim custody by the actions of the Defendants in violation of her substantive due process rights under the Fourteenth Amendment to the Constitution of the United States.

173. Dockery was deprived of her right to procedural due process. The use of CVA and the manner in which it was secured prevented Dockery from having a fair and meaningful opportunity to be heard before she could pursue her right to regain custody.

174. Upon the execution of the CVA, custody of L.T. was assumed by Christopher and Melissa Coker.

- 33 -

175. Had Social Services employees of Cherokee County and the Director of Social Services (Palmer) used the correct and legal method of placing L.T. (e.g., full adjudication of abuse/neglect/dependency and disposition as mandated by Chapter 7B of the North Carolina General Statutes), Dockery would have been a necessary party and her constitutional rights as a parent would have been protected.

176. Dockery might have regained custody at a dispositional hearing, but she was deprived of that opportunity to be heard by the actions of the Defendants.

177. Instead, the Social Services employees of Cherokee County utilized the coercive and unlawful CVA to function as a *de facto* termination of Dockery's parental rights without even obtaining her signature on it.

178. Dockery was deprived of her rights to substantive due process because Defendants unlawfully took L.T. and deprived her of her parental rights by means of the coercive and unlawful CVA.

179. Dockery was deprived of her procedural rights to due process because Defendants' coercive and unlawful use of the CVA deprived Dockery of a fair and meaningful opportunity to be heard by a court prior to losing her constitutional parental rights.

180. As a proximate result of Defendants' conduct, Dockery and L.T. suffered sadness, pain and emotional distress as:

    a. Dockery was denied the opportunity to provide care, love, and affection to her minor child;

    b. L.T. lost the services, care, protection, and assistance of Dockery and potential future services, care, protection, and assistance of Dockery;

    c. Dockery and L.T. lost society, companionship, comfort, guidance, kindly offices, and advice of each other; and

- 34 -

d.  Such other damages as may be proven at trial.

181. Because L.T. was taken outside of the lawful process of a dispositional hearing in DSS Court and by means of the unlawful CVA, Cherokee County did not provide medical care and other services and benefits that it would have been required to provide had the lawful process of a court proceeding been undertaken. Therefore, L.T. was separately and directly harmed by Defendants' unlawful taking of him from his mother's legal custody by losing medical care and other beneficial services to which he would have been entitled.

PLAINTIFFS HANNAH ALLEN and Z.A.

182. Plaintiffs adopt and incorporate by reference all allegations of this amended Complaint as if fully set out herein.

183. Plaintiff Hannah Allen ("Allen") is the biological mother of Z.A., born July 27, 2015.

184. Desmond Artes Champagne ("Champagne") is the biological father of Z.A.

185. Defendant Palmer, as Director of Social Services for Cherokee County or her designee, opened an investigation into whether Z.A. was an abused, neglected, or dependent child shortly after Z.A.'s birth.

186. The case, which concerned whether Allen had substance abuse issues and was financially capable of providing for Z.A., was open for several months.

187. Allen volunteered to take drug screens at any time requested by DSS worker, Katie Brown/Johnson. However, no drug test was ever performed.

188. In late January or early February, Social Services employee Katie Brown/Johnson of Cherokee County, acting with the authority and at the direction of the Director of Social Services presented Allen with a CVA.

- 35 -

189. The Social Services employee, Katie Brown/Johnson of Cherokee County, coerced Allen by telling her that Z.A. would go into foster placement and that Allen would likely not be able to see Z.A. if she did not sign the CVA.

190. Allen did not have the benefit of legal counsel when presented with the CVA.

191. Allen did not have the benefit of legal counsel when she signed the CVA.

192. Allen was not provided with court-appointed counsel, was not provided an opportunity to obtain counsel, and was not informed of her rights to court-appointed counsel when she was presented with the CVA.

193. No Social Services employee of Cherokee County informed Allen that, in a DSS Court proceeding, Allen would have had counsel, and that DSS is required by law to attempt to reunify parents who have lost custody of their children in a DSS proceeding.

194. Based upon these misrepresentations and omissions, Allen signed the CVA on February 19, 2016. (An unsigned draft of the CVA has been filed under seal with the Court to protect the identity of Z.A. *See* DE 8-1 at 59-61.)

195. After the CVA was signed, custody of Z.A. was assumed by Scottie and Sarah MacDonell.

196. Scottie and Sarah MacDonell were told that the CVA would be filed with the court and that a judge would sign it.

197. Despite knowing that Champagne was the biological father of Z.A., Social Services employees of Cherokee County did not present him with the CVA.

198. Champagne did not sing the CVA.

199. The CVA was drafted and created by Social Services employees of Cherokee County acting under the authority and at the direction of the Director of Social Services and in

conjunction with, at the direction of, and with the approval of the Cherokee County DSS Attorney, Scott Lindsay.

200. Allen was deprived of her rights to substantive due process because Defendants unlawfully took Z.A. and deprived Allen of her parental rights by means of the coercive and unlawful CVA.

201. Allen was deprived of her procedural rights to due process because Defendant's coercive and unlawful use of the CVA deprived Allen of a fair and meaningful opportunity to be heard by a court prior to losing her constitutional parental rights.

202. As a proximate result of Defendants' conduct, Allen and Z.A. suffered sadness, pain and emotional distress as:

    a. Allen was denied the opportunity to provide care, love, and affection to her minor child;

    b. Z.A. lost the services, care, protection, and assistance of Allen and potential future services, care, protection, and assistance of Allen;

    c. Allen and Z.A. lost society, companionship, comfort, guidance, kindly offices, and advice of each other; and

    d. Such other damages as may be proven at trial.

203. Because Z.A. was taken from Allen outside of the lawful process of a dispositional hearing in DSS Court and by means of the unlawful CVA, Cherokee County did not provide medical care and other services and benefits that it would have been required to provide had the lawful process of a court proceeding been undertaken. Therefore, Z.A. was separately and directly harmed by Defendants' unlawful taking of him from his mother's legal custody by losing medical care and other beneficial services to which he would have been entitled.

204. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

205. M.C. born June 1, 2000, during the period of her minority, lived with her grandmother after her biological mother passed away.

206. Timothy Wayne Cordell is the biological father of M.C., but M.C. was not living with her father after her mother's death.

207. M.C.'s relationship with her grandmother was volatile, and her grandmother was an unsuitable placement for M.C.

208. Social Services employees of Cherokee County, upon information and belief, opened an investigation into whether M.C. was an abused, neglected, or dependent child based in part upon the unsuitability of her grandmother.

209. This investigation resulted in Social Services employees of Cherokee County utilizing a CVA (executed by Timothy Wayne Cordell) to remove custody of M.C. from her grandmother and placing M.C. with her brother, Timothy Isiah Cordell, who was over the age of 18 and living in Alabama.

210. An unsigned draft copy of this CVA has been filed with this Court under seal to protect the identity of M.C. DE 8-1 at 40-42.

211. M.C.'s brother attempted to enroll M.C. in school in Alabama using the authority purportedly given by the CVA.

212. Alabama school officials refused to recognize the CVA as creating a legal guardianship or foster placement of M.C. with her brother and refused to enroll M.C. in school.

213. M.C.'s brother sought the assistance of Cherokee County DSS in enrolling M.C. in school in Alabama, and Social Services employees of Cherokee County refused to provide assistance.

214. M.C. eventually left her placement in Alabama and migrated back to Cherokee County.

215. M.C. eventually returned to her grandmother, having no other viable options for care.

216. M.C. and the grandmother had an explosive argument that resulted in law enforcement and DSS response.

217. Sometime during late summer of 2017, Social Services employees of Cherokee County again opened and investigation into whether M.C. was an abused, neglected, or dependent child, and again utilized a CVA to purportedly transfer custody of M.C., again having Timothy Wayne Cordell execute the CVA.

218. M.C.'s placement after the second CVA was with a friend and the friend's parents, named Jackie Austin.

219. An unsigned draft copy of this second CVA involving M.C. is filed with this Court under seal to protect the identity of M.C. DE 8-1 at 37-39.

220. While living with Jackie Austin, M.C., who remained a minor, was not provided room and board, but rather was required to pay rent and contribute to the upkeep of the household.

221. M.C. both worked and attended high school while at the second placement, paying approximately $400 per month in rent.

222. At no time relevant was M.C. presented to a court as an abused, neglected, or dependent child.

223. At no time relevant was M.C. provided any Social Services by employees of Cherokee County.

224. At no time relevant did Social Services employees of Cherokee County attempt to comply with the provisions of the UCCJEA and transfer M.C.'s home state to Alabama.

225. At no time relevant was any well-being check or other follow-up was provided by Social Services employees of Cherokee County.

226. As a proximate result of Defendants' conduct, M.C. suffered sadness, pain and emotional distress as:

    a. M.C. was removed against her will and without due process of law from her home state to the State of Alabama;

    b. M.C. lost the services, care, protection, and assistance of her father and potential future services, care, protection, and assistance of her father;

    c. M.C. was unable to enroll and school and lost access to a free public education as guaranteed under the North Carolina Constitution;

    d. M.C. undertook a harrowing journey from Alabama back to North Carolina without any legal or enforceable guardianship or foster placement;

    e. M.C. was forced to return to an unsuitable home with her grandmother because she had to lawful and enforceable guardianship or foster placement;

    f. M.C. was forced to sacrifice her adolescence and provide gainful employment, rent, and household upkeep to retain a place to live; and

    g. Such other damages as may be proven at trial.

227. Because M.C. was placed with her brother and Jackie Austin outside of the lawful process of a dispositional hearing in DSS Court and by means of the unlawful CVA, Cherokee County did not provide medical care and other services and benefits that it would have been required to provide had the lawful process of a court proceeding been undertaken. Therefore, M.C. was directly harmed by Defendants' unlawful placement of

- 40 -

her by losing medical care, education, and other beneficial services to which he would have been entitled.

FACTS RELEVANT TO UNNAMED CLASS MEMBERS' CLAIMS FOR RELIEF

228. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

229. The illegal taking of minor children by means of an unlawful CVA not only occurred in the Adult Plaintiffs' situations, but also in numerous other situations by Social Services employees of Cherokee County acting with the authority of and under the direction of the Social Services Director, with modifications to the CVAs being made to account for the individual circumstances of each child and the placement that Cherokee County had chosen.

230. Upon information and belief:

   a. The CVAs described in this Amended Complaint concerning Hogan and H.H., Greenlee and A.M., Phillips and C.A., Dockery and L.T., and Allen and Z.A. are only examples of numerous CVAs and similar documents utilized by Cherokee County Social Services employees.

   b. The Hogan CVA was one of several that Ms. Smith and other Cherokee County Social Services employees effected for Cherokee County at Defendant Lindsay's direction and approval while employed by and acting on behalf of Cherokee County as director, supervisor, social worker or similarly situated person.

   c. The names of the documents and the specific mechanics of each used to accomplish the illegal taking of children from the biological parents or lawful court-appointed foster parent and to deprive biological parents of their rights to substantive and procedural due process has varied through the years.

- 41 -

d. At various times, these documents used for the illegal takings, were referred to as "Custody and Visitation Agreements," "CVAs," "Custody Agreements," "Voluntary Placement Agreements," "VPAs," Powers of Attorney "POAs", Family Safety Agreements ("FSA"), Temporary Safety Agreements ("TSA"), Family Safety Plans ("FSP"), or such similar terms. Plaintiffs use the generic term "CVA" to encompass all such substantively similar documents or documents utilized to accomplish Defendants' unlawful objectives.

e. Regardless of the title given to the document, the unlawful act was using the documents prepared by Social Services employees of the County to illegally take a child to which a biological parent retained his/her constitutional rights to custody and to deprive that parent of his/her rights to substantive and procedural due process.

f. Courtney Myers, who previously worked for Cherokee County as a Social Worker for approximately three years, estimates that she or co-workers completed between 30 and 50 CVAs.

g. Upon information and belief, based on the above estimation, if the use of these documents by Child Protective Service Social Workers to effectuate illegal takings was calculated on average, and used over the time period from 1998 until 2017, the number of affected families and or children would be several hundred.

h. CVAs other similar documents were often used as an option when Defendant Lindsay did not feel the case was "serious enough" for Court involvement.

i. Defendant Lindsay would communicate about the draft CVAs with Cherokee County Social Services employees to input the particular factual information.

- 42 -

       i. For example, social workers Katie Brown, Laurel Smith, Joyce Bernier, and Courtney Myers, and other Social Services employees of Cherokee County would receive the draft CVA from Defendant Lindsay and input the information applicable to a particular case (for example, the names of Plaintiff, grandfather, minor child, and minor child's date of birth), and send the draft CVA via email back to Defendant Lindsay for his approval.

       ii. All of the above-referenced social workers prepared similar agreements only with the approval of Defendant Lindsay and/or their social worker supervisor (whose authority is directly derived from and can only be exercised with the consent of the County Social Services Director) and/or the Director of Social Services for Cherokee County.

      iii. All knowledge of Defendant Lindsay, as well as the social workers and supervisors, are imputed to the Director of Social Services for Cherokee County at relevant times.

j. These CVAs, POAs, FSAs, Safety Plan or other similar documents were sent to and from Defendant Lindsay's Cherokee County-provided and private email addresses since 1999.

k. These CVAs, POAs, FSAs, Safety Plan or other similar documents have been used by Cherokee County Social Services employees and County Social Services directors to unlawfully take children from the lawful custody of a parent and deprive the parent of substantive and procedural due process since 1999.

l. Ms. Brown, as well as several other social workers, did question the legality and validity of the CVAs to both the Defendant Lindsay and Cherokee County Directors of Social Services over the years.

m. Defendant Lindsay and/or social worker supervisors and/or Cherokee County Social Services Directors advised these social workers that the use of CVAs was legal and permissible.

n. Cherokee County, by and through its Director of Social Services and Social Services employees, utilized unlawful CVAs, POAs, FSAs, Safety Plan or other similar documents frequently.

o. Social Services employees of Cherokee County created and induced parents to enter into dozens, if not more (possibly several hundred) CVA's, POAs, FSAs, Safety Plans or other similar documents -- all of which were created, effected, and enforced by Social Services employees of Cherokee County or the county Director of Social Services, or Defendant Lindsay.

p. No CVAs, POAs, FSAs, Safety Plan or other similar documents were done without the approval, guidance and participation of Defendant Lindsay and/or the then-incumbent Cherokee County Director of Social Services.

q. Some of these agreements have been placed in closed court files in the Cherokee County courthouse by Defendant Lindsay or Social Services employees of Cherokee County, while others were not. This placement was done at the direction of either a director, defendant Lindsay, DSS supervisor, or other employee with supervisory authority.

r. Defendant Palmer, the Cherokee County Director of Social Services, and persons who held the public office of Cherokee County Social Services Director prior to her (including Defendants Crawford and Davis) are and were aware of the CVAs, POAs, FSAs, Safety Plans and similar documents and approved of them, both expressly and tacitly.

- 44 -

s. Use of the CVA's, POA's, FSAs, Safety Plans and substantively similar agreements to remove minor children from their parents without court involvement was an official policy of Cherokee County, implemented by the county Social Services Director.

t. Use of the CVA's, POA's, FSAs, Safety Plans and substantively similar agreements to remove minor children from their parents without court involvement was an accepted custom and practice of CCDSS, known to its policy makers and accepted and encouraged by the policy makers.

u. The practice of utilizing CVAs, POAs, FSAs, Safety Plan or other similar documents to remove minor children from their parents was so widespread and so obviously illegal that the failure of the Cherokee County Board of Commissioners or the Cherokee County Board of Social Services to exercise their statutory oversight authority and prevent or correct the unlawful actions of Cherokee County Social Services directors and employees constitutes deliberate indifference to the constitutional rights of the parents and children of Cherokee County.

v. On multiple occasions, the decision to proceed with a CVA or other similar document was made in consultation and agreement between the then-incumbent Direct of Social Services (including Defendants Palmer, Crawford, and Davis) and Social Services employees of Cherokee County.

w. On multiple occasions, the decision to proceed with a CVA or other similar document was made in consultation between Defendant Lindsay and Social Services employees of Cherokee County during case review, case staffing, or other times.

- 45 -

*x.* These documents were used to achieve Cherokee County's and its Social Services director, employees, and Defendant Lindsay's goal of removing minor children from lawful custody when they lacked sufficient evidence or a legal basis to file a petition or seek non-secure custody of a minor child pursuant to N.C. Gen. Stat. § 7B-100 *et. seq.,*

y. CVAs, POAs, FSAs, Safety Plans or other similar documents were used to interfere with parental relationships in cases in which Cherokee County, its Social Services Director and other Social Services employees and Defendant Lindsay knew such interference was not legally justified.

    i. Moreover, CVAs and POAs and other similar documents were used to avoid judicial oversight into the activities of the Cherokee County Director of Social Services, other Social Services employees, and Defendant Lindsay.

    ii. Further, CVAs and POAS and other similar documents were utilized to avoid scrutiny by the Court and parents' counsel.

z. CVAs, POAs, FSAs, Safety Plan or other similar documents were used to avoid, and in fact did result in, Cherokee County not providing any follow-up care (including *inter alia* medical care) that Cherokee County is required to provide children who are placed in an out-of-home placement, pursuant to N.C. Gen. Stat. § 7B-100 *et seq*.

231. In a separate action seeking a Declaratory Judgment, Judge Sellers, entered a Declaratory Judgment, finding *inter alia,* that all CVA's and like documents including POA's are void *ab initio*. A true and accurate copy of this Order is attached as Exhibit J at 10-24.

- 46 -

232. After entering her order in regard to Hogan's CVA on December 13, 2017, Judge Leslie reported the Cherokee County Department of Social Services and Defendant Lindsay to the N.C. Department of Health and Human Services (hereinafter "DHHS").

233. Following Judge Leslie's report to DHHS regarding the Cherokee County Department of Social Services' and Defendant Lindsay's actions, the DHHS became aware of the practice of entering into CVAs, POAs and other such agreements as used in Plaintiffs' case.

234. DHHS advised in a December 20, 2017, letter to all county directors of social services that "facilitating such private custody agreements without the oversight of the Court falls outside of both law and policy." A true and accurate copy of this letter has been filed with the Court, *see* DE 1-1 at 68.

## CLASS OF UNNAMED PLAINTIFFS

235. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

236. Cherokee County has utilized CVAs, POAs, FSAs, Safety Plans or substantively similar agreements to unlawfully coerce parents into surrender of custody of their children without proper process or Court oversight for upwards of two decades.

    a. Upon information and belief, prior Directors of Social Services for Cherokee County (including Defendants Palmer, Crawford, and Davis), prior supervisors, prior social workers, as well as others still working for Cherokee County as Social Services employees (including health care and community workers) have caused parents to sign CVAs, POAs, FSAs, Safety Plans or substantively similar agreements without court involvement or oversight, thereby interfering with the

- 47 -

parental relationship between that of parent and child, violating the constitutional and statutory rights of the parents and minor children.

b.  The Defendants lacked a compelling governmental interest as it relates to the use of CVAs, POAs, FSAs, Safety Plans and similar documents in obtaining signatures from all class plaintiffs.

c.  Neither Defendant Lindsay, nor Defendant Palmer, nor any Cherokee County DSS supervisor, nor Cherokee County DSS social worker, health or community worker (or their predecessors at times relevant) reviewed the placement as required by N.C. Gen. Stat. § 7B-100 *et. seq.,* or checked on the health, safety or welfare of any minor child removed pursuant to CVAs or substantively similar agreements or otherwise protected the requisite rights of the Plaintiffs.

d.  Other plaintiffs' attorneys (representing respondent parents in abuse, neglect, dependency proceedings) similarly situated as Hogan's court-appointed attorney, were never told about CVAs involving their clients or their clients' minor children.

237. Defendants' actions caused Plaintiffs and Unnamed Class Members to be deprived of fundamental rights, particularly, a parental relationship with their biological children, in violation of substantive and procedural due process of the law, and caused a deprivation of the minor children's rights to remain a part of their biological families and receive social services to which they were entitled under state law.

238. The Defendants, collectively and individually, represented and carried out Cherokee County's policy and procedures and represented to all Plaintiffs they were acting in accordance with N.C. Gen. Stat. § 7B-100 *et. seq.* and other applicable federal and state law, when in fact, they were acting contrary to law.

- 48 -

239. The Defendants' conduct was the result of the policy decisions of policy makers acting on behalf of Cherokee County.

240. Defendants Palmer, Crawford, Davis, and all other Cherokee County Directors of Social Services have the authority to set official policy, training, and directives, including the use of the CVAs, POAs, FSAs, Safety Plans and other substantively similar "agreements," and, in fact, did so.

241. Defendants Palmer, Crawford, Davis, and all other Cherokee County Directors of Social Services have the authority and responsibility to oversee the activities and behaviors of Cherokee County Social Services employees and their agents, including the use of the CVAs, POAs, FSAs, Safety Plans and other substantively similar "agreements."

242. The use of the CVAs, POAs, FSAs, Safety Plans and other substantively similar "agreements" was an official custom, practice, and policy of Cherokee County.

243. The use of the CVAs, POAs, FSAs, Safety Plans and other substantively similar "agreements" were also the result of accepted customs, practices, and conduct by Cherokee County.

244. The practice of utilizing CVAs, POAs, FSAs, Safety Plans and other substantively similar agreements to remove minor children from their parents was so widespread and so obviously illegal that the failure of the Cherokee County Board of Commissioners or the Cherokee County Board of Social Services to exercise their statutory oversight authority and prevent or correct the unlawful actions of Cherokee County Social Services directors and employees constitutes deliberate indifference to the constitutional rights of the parents and children of Cherokee County.

245. At no time after the removal of the Plaintiffs' children did Defendants Lindsay, Palmer, Crawford, Davis, any Cherokee County DSS supervisor, Cherokee County DSS social

worker or agent review the placement, as required by N.C. Gen. Stat. Chapter 7B, or check on the health, safety, or welfare of the minor children. They also did not provide the health-care services required by law to the minor children. In fact, Cherokee County provided no follow-up services required by law for the children, their biological parents, or the persons with whom the children were placed after the children were removed from their homes.

246. The Defendants' conduct has harmed a class of persons, who are the biological parents of children, who were unlawfully coerced into signing a CVAs, POAs, FSAs, Safety Plan or other similar documents ("Class Parents").

    i. The Adult Plaintiffs, Brian Hogan, Shalees Greenlee, Amanda Dockery, Tienda Rose Phillips, and Hannah Allen, are members of this class.

    ii. Upon information and belief, there are in excess of 50 (and up to 100 or more, *see* n. 2, *supra*) members of this class, in addition to the named Adult Plaintiffs. The remaining members of this class are currently unknown, but will be ascertained through discovery.

    iii. The Adult Plaintiffs have a personal interest in the issues of law and fact in this case, including but not limited to:

        1. Being unlawfully coerced into surrendering custody of their minor children by Cherokee County in violation of their constitutional rights.

        2. The unlawful deprivation of the constitutional rights to substantive due process of law through the CVAs and tactics employed to obtain the Adult Plaintiffs' signatures on the CVAs and similar documents.

- 50 -

3. The unlawful deprivation of their constitutional rights to procedural due process of law through the CVAs and the tactics employed to obtain the Adult Plaintiffs' signatures on the CVAs and similar documents.

4. Other factual allegations, as set forth *supra*, and claims for relief, as set forth *infra*, all of which are incorporated by reference as though fully set forth herein.

iv. These issues of fact and law in which the Adult Plaintiffs have a personal interest are common with the class.

v. These common issues of fact and law predominate over issues affecting only individual class members.

vi. The claims for relief alleged by the Adult Plaintiffs are common to the class.

vii. With the total number of class members exceeding 50, the class is so numerous that it would be impracticable to bring all class members before the court.

viii. The named Adult Plaintiffs have no interests adverse to those unnamed class members, and they would fairly and adequately represent the members of the class.

247. The Defendants' conduct has harmed a second class of persons, who are minor children who were unlawfully taken away from their biological parents by use of unlawful and coercive CVAs or substantively similar agreements ("Class Minors").

- 51 -

i. The Child Plaintiffs, H.H., A.M., C.A., L.T., and Z.A., whose interests are represented by their court-appointed guardian *ad litem*, are members of this class.

ii. Upon information and belief, there are in excess of 50 members of this class (and up to 100 or more, *see* n. 2, *supra*). The remaining members of this class are currently unknown, but will be ascertained through discovery.

iii. The Child Plaintiffs have a personal interest in the issues of law and fact in this case, including but not limited to:

    1. Being unlawfully taken from the custody of their biological parents by Cherokee County in violation of their constitutional rights.

    2. Loss of access to services that they are entitled to by law, had the Defendants used the proper procedures to remove them from their biological parents' custody in a DSS Court proceeding.

    3. Other factual allegations, as set forth *supra*, and claims for relief, as set forth *infra*, all of which are incorporated by reference as though fully set forth herein.

iv. These issues of fact and law in which the Child Plaintiffs have a personal interest are common with the class.

v. These common issues of fact and law predominate over issues affecting only individual class members.

vi. The claims for relief alleged by the Child Plaintiffs, through their guardian *ad litem*, are common to the class.

vii. The Cherokee County District Court's order appointed Joy McIver as the *guardian ad litem* for all minors who are or may be part of the class of Class Minors, such that the unnamed class members' interests are adequately represented.

viii. With the total number of class members exceeding 50, the class is so numerous that it would be impracticable to bring all class members before the court.

ix. The named Child Plaintiffs have no interests adverse to those unnamed class members, and they would fairly and adequately represent the members of the class.

x. The named Child Plaintiffs and the other Class Minors are represented by a qualified Guardian *Ad Litem*, as well as class counsel.

248. The Class Parents and Class Minors have been damaged as follows:

a. Class Parents have not been allowed to see, visit, care for, or otherwise interact with their children, who were unlawfully taken from them by use of the CVA's, POA's, FSAs, Safety Plans or other substantively similar agreements.

b. Class Parents and Class Minors have endured suffering sadness, pain and emotional distress resulting from the use of the CVA's POA's, FSAs, Safety Plans or other substantively similar agreements.

c. Class Parents have been denied the opportunity to provide care, love, and affection to Class Minors.

d. Class Minors have lost the services, care, protection, and assistance of Class Parents.

- 53 -

e.   Some Class Minors have suffered physical, mental and emotional abuse and injuries while in the custody of persons selected by Social Services employees of Cherokee County to be their caretakers.

f.   Class Parents and Class Minors have both been deprived of and have endured lost society, companionship, comfort, guidance, kindly offices, and advice of each other.

g.   Class Minors have been deprived of medical care and other types of care and assistance that Cherokee County would have been required to provide under N.C. Gen. Stat.

§ 7B-100 *et seq.* had the Class Minors been removed from their biological parents pursuant to law.

h.   Such other damages as may be proven at trial.

249. The parental/familial relationships between Class Parents and Class Minors have been interrupted, damaged, harmed and or destroyed due to the conduct of the Defendants.

### CLAIMS FOR RELIEF[4]

### COUNT I: NEGLIGENCE
#### (Against Lindsay in his individual and official capacities)

250. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

251. Defendant Lindsay was employed as the DSS attorney for Cherokee County for a period in excess of 18 years.

---

[4] Following the example provided by Magistrate Judge Metcalf, Plaintiffs have created a chart of claims to provide a visual representation of the claims asserted and the Defendants against whom the claims are made.  This chart is included at the end of this Amended Complaint.  Any discrepancy between the markings of the chart and the text of the Amended Complaint should be resolved in favor of the text of the Amended Complaint.

a. At all times relevant, Defendant Lindsay was trained in the law as an attorney, licensed to practice law in North Carolina, as authorized by the North Carolina State Bar.

b. At no time relevant, was Defendant Lindsay ever in an attorney-client relationship with any parents or children involved with in any CVA, POA, Safety Plan, or substantively similar document.

c. At no time relevant, did Defendant Lindsay or any other named Defendant execute a binding retainer agreement involving legal services pursuant to the Rules of the North Carolina State Bar with any Adult Plaintiff, Class Parent, Child Plaintiff or Class Minor.

252. At all relevant times, Lindsay has improperly and without legal authority prepared CVAs, POAs, FSAs, Safety Plans and similar documents and obtained signatures from parents, either directly or indirectly, and made misrepresentations to accomplish the purpose of encouraging parents to sign the CVAs, POAs and similar documents for the purpose of removing children from the lawful parent/plaintiffs' care, custody, and control.

253. Defendant Lindsay stated to the District Court of Cherokee County in December 2017 that he had personal knowledge of at least 20 CVAs.

254. Upon information and belief, Defendant Lindsay received, reviewed, and approved dozens, if not hundreds, of CVAs, POAs, FSAs, Safety Plans or other similar documents during his tenure as DSS attorney for Cherokee County over the course of nearly 20 years. These documents were either drafted by other Social Services employees of Cherokee County or by Lindsay himself.

255. Upon information and belief, Defendant Lindsay improperly used his position to influence the Cherokee County Director of Social Services or her designees to NOT file

petitions in regard to abused, neglected, and dependent children of Cherokee County based on personal relationships he had with family members of either the parents or children.

256. Defendant Lindsay's conduct, as set forth throughout this Amended Complaint, was in violation of the Plaintiffs' constitutional rights.

257. Pursuant to North Carolina law, Defendant Lindsay owed a duty to the Plaintiffs in this matter and those similarly situated to render services and exercise the degree of care and or skill commonly applied and used by other DSS attorneys similarly trained with similar experience that a prudent, reputable attorney representing a Department of Social Services would have used when dealing with the plaintiffs in similar circumstances as set forth herein.

258. Pursuant to North Carolina law, Defendant Lindsay failed to render services and exercise the degree of care and or skill commonly applied and used by other DSS attorneys similarly trained with similar experience that a prudent, reputable attorney representing a Department of Social Services would have used when dealing with the plaintiffs in similar circumstances as set forth herein.

259. Pursuant to North Carolina law, Defendant Lindsay failed to exercise appropriate professional judgment and engaged in misconduct which is otherwise unreasonable under the circumstances as set forth herein.

260. As a proximate result of Lindsay's negligence, Plaintiffs have suffered damages.

## COUNT II: NEGLIGENCE
### (Against Palmer, Crawford and Davis in their individual and official capacities)

261. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

- 56 -

262. At all times relevant to the transactions and occurrences giving rise to the Amended Complaint, the Social Services employees of Cherokee County received the training required by the State of North Carolina to be social workers at the Cherokee County Department of Social Services.

263. Upon information and belief, the use of CVAs and POAs, FSA's, Safety Plans and other similar documents by Cherokee County was approved of by either official policy, unofficial custom, or constituted an official, endorsed or accepted practice of Cherokee County.

264. North Carolina law imposes a duty on the named Defendants to act in accord with the constitutional rights of parents and children, including clearly stating that the provisions of Chapter 7B "shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile cases that assure fairness and equity and that *protect the constitutional rights of juveniles and parents* " N.C. Gen. Stat. § 7B-100(1) (emphasis added).

265. Upon information and belief, when Defendant Lindsay or the Director (at the relevant time) were questioned by social workers, they represented that the use of CVAs was lawful.

266. The three directors (Palmer, Crawford, and Davis) served as the Cherokee County Director of Social Services from 1999 through the end of 2017, the time period during which the unlawful CVAs were used.

267. Upon information and belief, the use of CVAs continued from 1998 through 2017, which spans the tenures of Defendants Crawford, Davis and Palmer:

   a. David Hughes testified during the *Mathieu* trial that Social Services employees of Cherokee County had located CVAs that go back 10 years (to 2008), a time

period that encompasses the tenures of Defendants Palmer, Crawford, and Davis. (DE 1-1 at 104-105)

    b. David Hughes further testified that those CVAs only represented the ones that they had found up to that point, but that files were missing from the DSS records room. (DE 1-1 at 109))

    c. Defendant Lindsay testified during the *Mathieu* trial that he started using the CVAs in 2007 or even earlier, again encompassing the tenures of Defendants Palmer, Crawford and Davis. (DE 1-1 at 121).

268. Upon information and belief, all Defendants received training from the North Carolina Department of Health and Human Services on the proper procedures for child removal pursuant to N.C. Gen. Stat. § 7B-100 *et. seq.*

269. These named Defendants owed a duty to the Plaintiffs in this matter and those similarly situated to render services and exercise the degree of care and or skill commonly applied and used by other County Directors of Social Services similarly trained with similar experience that a prudent Director of Social Services for a county would have used when dealing with the plaintiffs in similar circumstances as set forth herein.

270. The Defendants acted with deliberate indifference to such training, the law, the rights of the plaintiffs, and in other ways yet to be discovered through discovery during both the class certification process and discovery on the merits.

271. Upon information and belief, there is a written manual promulgated by NCDHHS setting forth written instructions for county Departments of Social Services on the proper and lawful methods to remove children from the custody of their biological parents pursuant to N.C. Gen. Stat. § 7B-100 *et seq.*

- 58 -

272. On multiple occasions, the Cherokee County DSS was audited by the NCDHHS, including reviewing files involving the removal of minor children from their biological parents.

    a. Upon information and belief, the CVA process was not discussed with or approved by NCDHHS or the State of North Carolina.

    b. Upon information and belief, the CVA documents were not shown to or disclosed to the state inspectors.

    c. Upon information and belief, the Defendants took affirmative steps to hide the CVAs and the process for obtaining CVAs from the state inspectors from NCDHHS.

    d. Alternatively, the Defendants negligently failed to inform NCDHHS officials about the CVAs and the process for obtaining CVAs.

267. At all times, Defendants knew or should have known that using CVAs to remove children from their biological parents was not an accepted practice and would not have been approved by NCDHHS.

268. Defendants were negligent in using the CVAs to deprive the Adult Plaintiffs of their children.

269. Defendants were negligent in using the CVAs to deprive the Minor Plaintiffs of a relationship with their parents.

270. Defendants' conduct has proximately caused damages to Plaintiffs.

## COUNT III: GROSS NEGLIGENCE
### (Against Lindsay, Palmer, Crawford and Davis in their individual and official capacities)

271. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

- 59 -

272. The Defendants owed a duty to the Plaintiffs in this matter and those similarly situated to render services and exercise the degree of care and or skill commonly applied and used by other County Directors of Social Services and their attorney, similarly trained with similar experience that a prudent Director and/or County DSS attorney would have used when dealing with the plaintiffs in similar circumstances as set forth herein.

273. Defendants, by their conduct as described in this Amended Complaint, acted in reckless disregard of, or wanton indifference to, the rights of the Plaintiffs.

274. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

275. Defendants' gross and utter failure to take care to follow the constitutional and statutory mandates regarding the removal of children from their biological parents as described throughout this Amended Complaint over a period of many years clearly demonstrates deliberate indifference to the rights of the Plaintiffs and constitutes willful and wanton conduct.

276. As a result of this gross failure to exercise its duty of care, Defendants' use of these CVAs and POAs, FSAs, Safety Plans and other similar documents proximately caused the injuries described in this Amended Complaint.

277. As a proximate cause of Defendants' conduct, Plaintiffs have suffered damages.

### COUNT IV: NEGLIGENT MISREPRESENTATION
### (Against Palmer, Lindsay, Crawford and Davis in their individual and official capacities)

278. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

- 60 -

279. Defendants or Social Services employees of Cherokee County, acting under their authority and direction, made statements to Adult Plaintiffs regarding the legality of the CVAs and POAs, FSAs, Safety Plans and other similar documents and the impact that signing such a document would have on them and their children.

280. Defendants made or caused to be made, material misrepresentation and/or misleading statements to Adult Plaintiffs, as described above.

    a. These misrepresentations were made negligently, and without regard for their truth. Defendants intended their misrepresentations to be relied upon by Adult Plaintiffs.

    b. Adult Plaintiffs, in fact, reasonably relied on Defendants' representations in executing the CVAs and POAs, FSAs, Safety Plans and other similar documents.

281. Defendants failed to exercise reasonable care and competence in communicating the material facts to Adult Plaintiffs.

282. Adult Plaintiffs actually and reasonably relied upon the false information and/or material facts not disclosed by Defendants, and Adult Plaintiffs' reliance was justified as, under the same or similar circumstances, a reasonable person or party, in the exercise of ordinary care for his or her own welfare would have either relied on the negligent misrepresentations or would not have discovered them.

283. Adult Plaintiffs' reliance proximately caused them to incur damages.

284. As a proximate cause of Defendants' negligent misrepresentations, Adult Plaintiffs have suffered damages.

## COUNT V: NEGLIGENT HIRING AND RETENTION AND SUPERVISION
### (Against Cherokee County)

285. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

286. Defendant Cherokee County owed a duty to its residents and citizens to ensure that its agents and employees acted pursuant to applicable constitutional and statutory mandates and all applicable state and federal laws.

287. Defendant Cherokee County owed a duty of care to its citizens to hire a competent and qualified Director of Social Services.

288. Defendant Cherokee County owed a duty of care to its citizens to hire a Director of Social Services who was well-versed and trained in all applicable federal and state policies and laws in the performance of her duties.

289. Defendant Cherokee County, either directly by its Board of Commissioners or its agents and employees bearing the authority and responsibility for doing so, had a duty to ensure that the Director of Social Services discharged the director's duties pursuant to applicable constitutional and statutory mandates.

290. At all times relevant, Director Palmer did not have the requisite qualifications to be the Director of Cherokee County Social Services, as set out by the North Carolina Office of State Human Resources.

291. At all times relevant, Director Palmer did not have the training or experience to perform the duties required as a Director of Social Services in North Carolina.

292. Defendant Cherokee County, despite being aware of Defendant Palmer's lack of qualifications, hired her for the position of Cherokee County Director of Social Services. To do so, Cherokee County sought and obtained a waiver from NCDHHS to hire Palmer, despite her lack of qualifications.

- 62 -

293. Defendant Cherokee County, either directly by its Board of Commissioners or its agents and employees bearing the authority and responsibility for doing so, failed to adequately oversee Defendant Palmer and other Directors of Social Services.

294. The use of unlawful CVAs and POAs, FSAs, Safety Plans and other similar documents has occurred for many years and over the tenures of multiple directors.

295. At no point during the time that the CVAs and POAs, FSAs, Safety Plans and other similar documents were being used to remove children from the custody of their biological parents did Defendant Cherokee County, either directly by its Board of Commissioners or its agents and employees bearing the authority and responsibility for doing so, properly determine that Social Services employees of Cherokee County under the supervision, direction, and authority of the then-incumbent Director of Social Services were following the law. Cherokee County and the persons responsibility for supervising the Social Services employees failed to discovery that the then-incumbent directors of social services were using the unlawful agreements, nor did they steps to correct the unlawful policies and practices being used by the Cherokee County DSS.

296. Cherokee County's failure to act and failure to oversee the then-incumbent Director of Social Services and prevent or overturn the implementation of their unlawful and unconstitutional policies constitutes negligence in the hiring and retention and supervision of these personnel.

297. Cherokee County's failure to adequately oversee the then-incumbent Director of Social Services and thereby prevent or overturn the unlawful and unconstitutional policies, or at a minimum attempt to remove such a Director of Social Services from her office, constitutes deliberate indifference to the constitutional rights of the citizens and residents of Cherokee County.

- 63 -

298. As a direct and proximate cause of Cherokee County's negligence, as set forth above, the Plaintiffs have, in fact, suffered damages.

## COUNT VI: GROSS NEGLIGENT HIRING AND RETENTION AND SUPERVISION
### (Against Cherokee County)

299. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

300. Defendant Cherokee County owed a duty to its residents and citizens to ensure that its agents and employees acted pursuant to applicable constitutional and statutory mandates and all applicable state and federal laws.

301. In addition, or in the alternative, Cherokee County was grossly negligent in its hiring and retention and supervision of Palmer.

302. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

303. Defendant Cherokee County's gross and utter failure to make an inquiry into and respond appropriately to the unlawful conduct described throughout this Amended Complaint over a period of many years shows deliberate indifference to the rights of the Plaintiffs and constitutes willful and wanton conduct.

304. As a result of this gross failure to exercise its duty of care, Cherokee County's failure to discharge any DSS Director who permitted the use of these CVAs, POAs, and substantially similar documents proximately caused the injuries described in this Amended Complaint.

305. Defendant Cherokee County was grossly negligent in its failure to properly oversee its Director of Social Services from 1998 through 2017.

- 64 -

306. Further, Defendant Cherokee County was deliberately indifferent to the acts, or failures to act by the various Directors of Social Services.

307. As a proximate cause of Cherokee County's gross negligence, Plaintiffs have suffered damages.

## COUNT VII: NEGLIGENT SUPERVISION
### (Against Palmer, Crawford, and Davis in their individual and official capacities)

308. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

309. Chapter 7B of the General Statutes clearly states that it "shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile cases that assure fairness and equity and that *protect the constitutional rights of juveniles and parents* "

N.C. Gen. Stat. § 7B-100(1) (emphasis added).

310. Each Defendant had a duty to ensure that she established social services policies for Cherokee County that protected the constitutional rights of juveniles and parents during their respective tenures of the Director of Social Services for Cherokee County.

311. The three directors (Palmer, Crawford, and Davis) served as the Cherokee County Director of Social Services from 1999 through the end of 2017, the time period during which the unlawful CVAs were used, upon information and belief.

312. Plaintiffs are informed and believe that the use of CVAs continued from 1998 through 2017. Plaintiffs have provided evidence in this Amended Complaint in the form of sworn testimony establishing that the use of CVAs has spanned the tenures of three Directors of Social Services for Cherokee County:

    a. David Hughes testified during the *Mathieu* trial that Social Services employees of Cherokee County had located CVAs that go back 10 years (to 2008), a time

period that encompasses the tenures of Defendants Palmer, Crawford, and Davis. (DE 1-1 at 104-105)

b. David Hughes further testified that those CVAs only represented the ones that they had found up to that point, but that files were missing from the DSS records room. (DE 1-1 at 109))

c. Defendant Lindsay testified during the *Mathieu* trial that he started using the CVAs in 2007 or even earlier, again encompassing the tenures of Defendants Palmer, Crawford and Davis. (DE 1-1 at 121).

313. Defendants had a duty to supervise the social workers, supervisors, attorney, and other Social Services employees of Cherokee County to ensure that their actions did not violate the constitutional rights of any juveniles and parents.

314. Defendants had a duty to establish protective services for juveniles alleged to be abused, neglected, or dependent. N.C. Gen. Stat. § 7B-300.

315. Defendants had a duty to make a prompt and thorough assessment of a complaint that a juvenile within Cherokee County is abused, neglected, or dependent. N.C. Gen. Stat. § 7B-302(a).

316. If, in the course of this assessment, Defendants determined that removal of the juvenile from the child's home is necessary for the protection of the juvenile, the Director is required to "sign a petition seeking to invoke the jurisdiction of the court for the juvenile's protection." N.C. Gen. Stat. § 302(c).

317. As a final policy maker and final supervisor over all Social Services employees of Cherokee County, Defendants had a duty to ensure that the Social Services employees of Cherokee County acted pursuant to applicable constitutional and statutory mandates.

- 66 -

318. Defendants failed to exercise their respective supervisory authority and thereby breached these duties.

319. Defendants failed to make any inquiry into and respond appropriately to the unlawful conduct described throughout this Amended Complaint over a period of many years.

320. Defendants failed to supervise their employees to ensure that a petition seeking to invoke the jurisdiction of the juvenile court was filed when removal of a juvenile from his/her hone was deemed appropriate for the juvenile's protection.

321. These failures on the part of Defendants to discharge their duties of care proximately caused the injuries described in this Amended Complaint.

322. As a proximate cause of Defendants' conduct, Plaintiffs have suffered damages.

## COUNT VIII: GROSS NEGLIGENT SUPERVISION
### (Against Palmer, Crawford, and Davis in their individual and official capacities)

323. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

324. Each Defendant had a duty to ensure that she established social services policies for Cherokee County that protected the constitutional rights of juveniles and parents during their respective tenures are Director of Social Services for Cherokee County.

325. The three directors (Palmer, Crawford, and Davis) served as the Cherokee County Director of Social Services from 1999 through the end of 2017, the time period during which the unlawful CVAs were used, upon information and belief.

326. Plaintiffs are informed and believe that use of CVAs continued from 1998 through 2017. Plaintiffs have provided evidence in this Amended Complaint in the form of sworn testimony establishing that the use of CVAs has spanned the tenures of three Directors of Social Services for Cherokee County:

- 67 -

a. David Hughes testified during the *Mathieu* trial that Social Services employees of Cherokee County had located CVAs that go back 10 years (to 2008), a time period that encompasses the tenures of Defendants Palmer, Crawford, and Davis. (DE 1-1 at 104-105)

b. David Hughes further testified that those CVAs only represented the ones that they had found up to that point, but that files were missing from the DSS records room. (DE 1-1 at 109))

c. Defendant Lindsay testified during the *Mathieu* trial that he started using the CVAs in 2007 or even earlier, again encompassing the tenures of Defendants Palmer, Crawford and Davis. (DE 1-1 at 121).

327. Defendants had a duty to supervise the social workers, supervisors, attorney, and other Social Services employees of Cherokee County to ensure that their actions did not violate the constitutional rights of juveniles and parents.

328. Defendants had a duty to establish protective services for juveniles alleged to be abused, neglected, or dependent. N.C. Gen. Stat. § 7B-300.

329. Defendants had a duty to make a prompt and thorough assessment of a complaint that a juvenile within Cherokee County is abused, neglected, or dependent. N.C. Gen. Stat. § 7B-302(a).

330. In the alternative, Defendants' conduct was done in reckless disregard for the rights of the Plaintiffs. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

- 68 -

331. These gross failures on the part of Defendants' to discharge their duties of care proximately caused the injuries described in this Amended Complaint.

332. Defendants were grossly negligent in its failure to properly oversee the Social Services employees of Cherokee County.

333. As a proximate cause of Defendants' gross negligence, Plaintiffs have suffered damages.

### COUNT IX: ACTUAL FRAUD
### (Against Lindsay, Palmer, Crawford, and Davis in their individual capacities)

334. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

335. The statements Defendants made to the Adult Plaintiffs and Class Parents described above regarding the CVAs and POAs, FSAs, Safety Plans and other similar documents were false, misleading, and material at the time they were made,

336. Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction of the Defendants, knew these statements were false at the time they were made.

337. The Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants, made these false statements with the intention that the Adult Plaintiffs would rely on these misrepresentations and sign the CVAs and POAs, FSAs, Safety Plans and other similar documents.

338. Adult Plaintiffs did, in fact, rely on these false statements when they signed the CVAs and POAs, FSAs, Safety Plans and other similar documents.

339. No provision of law exists within the North Carolina General Statutes authorizing any Social Services employees of Cherokee County, acting with the authority of and at the

direction the Defendants, to draft or otherwise effect the CVAs and POAs, FSAs, Safety Plans and other similar documents.

340. The misrepresentations were made willfully and wantonly, and with intention of coercing and/or otherwise deceiving the Adult Plaintiffs into abandoning their rights as parents.

332. Defendants' or Social Services employees of Cherokee County, acting with the authority of and at the direction of the Defendants, made false representations to Plaintiffs that were reasonably calculated to deceive. Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction of the Defendants, made false representations with the intent to deceive and with the intent that the Adult Plaintiffs would act on false statements.

333. Adult Plaintiffs were, in fact, deceived by Defendants' or Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants.

334. Adult Plaintiffs reasonably relied on Defendants' or Social Services employees of Cherokee County, who were acting with the authority of and at the direction of the Defendants' representations, when they signed the CVAs and POAs, FSAs, Safety Plans and other similar documents. Under the same or similar circumstances, a reasonable person, in the exercise of ordinary care for his or her own welfare, would have relied on the false representations.

335. Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants, have acted intentionally and with malice toward Plaintiffs and/or in reckless disregard of Plaintiffs' rights.

336. The Defendants or Social Services employees of Cherokee County, acting with the authority of and at the direction the Defendants, at the times relevant, improperly billed either local, state, tribal or federal government funding sources while engaging in the

CVA, POA, FSA, Safety Plan or other similar document process with the Adult Plaintiffs and those similarly situated.

337. Until discovery is conducted, the other Class Parents will not have sufficient information to provide more specific allegations, nor will they have reasonably been expected to discover the deception of Cherokee County and its agents and employees.

338. Plaintiffs have suffered damages proximately caused by Defendants' false representations.

339. As a result of Defendants' deceit, fraud and fraudulent inducement, Plaintiffs are entitled to a judgment against Defendants for their damages, plus attorneys' fees.

## COUNT X: CONSTRUCTIVE FRAUD
### (Against Lindsay, Palmer, Crawford, and Davis in their individual capacities[5])

340. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

341. "A constructive fraud claim . . . is based on a confidential relationship rather than a specific misrepresentation. The very nature of constructive fraud defies specific and concise allegations and the particularity requirement may be met by alleging facts and circumstances '(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Terry v. Terry*, 302

---

[5] The Plaintiffs are aware of and acknowledge this Court's prior ruling with regard to the Constructive Fraud Claim as to Defendants Cherokee County, and Lindsay and Palmer in their official capacities only. (*See* DE 20 and 22.) Magistrate Judge Metcalf recommended dismissal of "Plaintiffs' tenth claim for relief (constructive fraud) as against Director Palmer and Attorney Lindsay in their official capacities." (DE 20 at 27) The Court then Ordered "that the Plaintiffs' Objections to the Memorandum and Recommendation [Doc. 21] are OVERRULED; the Memorandum and Recommendation [Doc. 20] is ACCEPTED." (DE 22 at 7) The Court further noted that "[t]he Court does not address the viability of Plaintiffs' constructive fraud claim against Defendants Palmer and Lindsay in their individual capacities, as Defendants' Partial Motion to Dismiss is brought by these Defendants only in their official capacities" (DE 22 at 7, n. 3)). Accordingly, Plaintiffs bring this claim in this Amended Complaint against the Defendants Lindsay and Palmer and the new Defendants added in this Amended Complaint, in their individual capacities only.

N.C. 77, 85, 273 S.E.2d 674, 678-79 (1981) (quoting *Rhodes v. Jones,* 232 N.C. 548-49, 61 S.E. 2d at 725 (1950)).

342. Upon information and belief, Cherokee County Social Services employees had a relationship of trust and confidence with named Adult Plaintiffs and the other Class Parents prior to or during the course of obtaining the Class Parents' signatures on the CVAs and POAs, FSAs, Safety Plans and other similar documents.

   a. In many instances, the Defendants had prior working history involving the minor children and parents who signed the CVAs and POAs, FSAs, Safety Plans and other similar documents.

   b. In many instances, the Class Parents, including Adult Plaintiffs, were in a position of mental, physical, economic, or emotional vulnerability when they were coerced into giving up their children by and through the use of a CVA, POA, FSA, Safety Plan and other similar documents.

   c. Upon information and belief, in many instances, Social Services employees of Cherokee County, acting under the authority and direction of the Director of Social Services, Adult Plaintiffs that, if they didn't sign the agreement, their children would be sent to foster care, possibly adopted, or removed from them so that the Adult Plaintiffs would never have any kind of contact or ever see their children again.

   d. Social Services employees of Cherokee County, acting with the authority of and at the direction of the then-incumbent Director of Social Services, represented themselves as acting within the law when presenting the CVAs to the Adult Plaintiffs and unnamed Class Parents; these representations were believed by the Adult Plaintiffs and unnamed Class Parents and they reasonably relied upon them.

- 72 -

A reasonable person in the Adult Plaintiffs' and unnamed Class Parents' positions would have reasonably relied on these representations.

e. Social Services employees of Cherokee County, acting with the authority of and at the direction of the then-incumbent Director of Social Services, represented that they had the authority to remove their children when presenting the CVAs to the Adult Plaintiffs and unnamed Class Parents; these representations were believed by the Adult Plaintiffs and unnamed Class Parents and they reasonably relied upon them. A reasonable person in the Adult Plaintiffs' and unnamed Class Parents' positions would have reasonably relied on these representations.

f. The Adult Plaintiffs and the unnamed Class Parents were not told of their right to counsel, were not appointed counsel, and were not informed of the requirements of law that DSS attempt reunification after lawful removal. Consequently, the Adult Plaintiffs and the unnamed Class Parents had no reason to believe the state of the law was anything other than that as represented by Social Services employees of Cherokee County, acting with the authority of and at the direction of the then-incumbent Director of Social Services. These representations were believed by the Adult Plaintiffs and unnamed Class Parents and they reasonably relied on them. A reasonable person in the Adult Plaintiffs' and unnamed Class Parents' positions would have reasonably relied on these representations.

g. Once the minor children were removed, there was no follow-up by any Social Services employee of Cherokee County to monitor the health, well-being or care of any minor child.

h. There was no follow-up with the Adult Plaintiffs and unnamed Class Parents to see if there had been any substantive changes in their life or if they had contact of any kind with the minor children.

i. In a declaratory judgment action involving Plaintiff Greenlee, the District Court of Cherokee County specifically found the existence of a confidential, special relationship between Cherokee County Social Services employees and Greenlee at the time Greenlee executed her CVA, determining that a reasonable person in Greenlee's position would have relied on the false representations made by the Cherokee County Social Services employee. (*See* Ex. J at 10-24)

343. Cherokee County Social Services employees used coercive tactics aimed toward the named Adult Plaintiffs and other Class Parents to obtain signatures on the CVAs and POAs, FSAs, Safety Plans and other similar documents applicable to their children.

344. The named Adult Plaintiffs and other Class Parents relied on the position of trust and authority occupied by Cherokee County Social Services employees and other agents and employees of the County when they acquiesced to the Defendants' attempts to obtain their signatures on the CVAs and POAs, FSAs, Safety Plans and other similar documents.

345. The named Adult Plaintiffs and other Class Parents relied on the representations made by the Social Services employees of Cherokee County because they believed those Social Services employees were obligated to be truthful and not misrepresent the state of the law to them. A reasonable person in the Adult Plaintiffs' and unnamed Class Parents' positions would have reasonably relied on this position of trust that these government and state actors occupied.

346. The Social Services employees of Cherokee County who made these false, coercive, and fraudulent misrepresentations to the Adult Plaintiffs and unnamed Class Parents were

- 74 -

acting with the authority of and at the direction of the then-incumbent Director of Social Services for Cherokee County and/or Defendant Lindsay, who held a position of authority.

347. The named Adult Plaintiffs, other Class Parents, H.H., and Class Minors were injured as a proximate case of Defendants' conduct.

348. The Defendants unlawfully billed local, state, tribal or federal government funding sources while engaging in the unlawful CVA or POA process with the Adult Plaintiffs and those similarly situated.

349. Until discovery is conducted, the other Class Parents will not have sufficient information to provide more specific allegations, nor will they have reasonably been expected to discover the deception of Cherokee County Social Services employees.

350. As a proximate cause of Defendants' conduct, Plaintiffs are entitled to recover damages.

## COUNT XI: DEPRIVATION OF RIGHTS 42 U.S.C. § 1983
**(Against Palmer, Lindsay, Crawford, and Davis in their individual and official capacities)**

351. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

352. Defendant Lindsay, Defendant Palmer, Defendant Crawford, and Defendant Davis are "persons" as that term is used in 42 U.S.C. § 1983.

353. At all relevant times, Defendants were acting under color of state law.

354. The CVAs and POAs, FSAs, Safety Plans and other similar documents were entered into in the course and scope of Cherokee County's child welfare, family services, and child protective services efforts. However, the facilitation of these agreements falls outside the duties and responsibilities of Cherokee County, its Directors of Social Services, and Defendant Lindsay imposed by, inter alia, N.C. Gen. Stat. §§ 7B-108A, -108A(14), -108A(18) and other applicable statutes and laws.

- 75 -

355. At no time after the removal of any Child Plaintiff, nor upon information and belief any Class Minor, did any of the Defendants, or Social Services employees of Cherokee County acting with the authority of and at the direction the Defendants, or health or community workers, review the placement as required by N.C. Gen. Stat. § 7B-100 *et. seq.*, or check on the health, safety, or welfare of the minor children.

356. At all times relevant, Defendant Cherokee County's social services policies were established by the then-incumbent Director of Social Services, who acts under the authorization of North Carolina law.

357. The then-incumbent Director of Social Services is further responsible for the oversight, supervision, policies, and procedures regarding implementation of social services by both Cherokee County policy and North Carolina law.

358. Pursuant to N.C. Gen. Stat. § 7B-100 *et. seq* and other relevant North Carolina statutes, including Chapters 108A and 153A, Defendants Palmer, Crawford, and Davis were at all times relevant to this Amended Complaint, during their respective tenures in office, the final policy maker with regard to all investigative and placement activities conducted by their staff, subordinates, attorney, and employees.

359. Defendant Palmer, Crawford, and Davis were at all times relevant to this Amended Complaint, during their respective tenures in office, were acting under the color of state law in their individual and official capacity.

360. At the times relevant, all Social Services employees of Cherokee County were acting under color of state law and with the authorization of and direction of the county Director of Social Services.

- 76 -

361. At the times relevant, all named Defendants were acting under color of state law in his/her individual and official capacities when engaged in the unlawful conduct described throughout this Amended Complaint.

362. At the times relevant, the Defendant Directors of Social Services (including Defendants Palmer, Crawford, and Davis), supervisors, social workers, staff employees, Social Services employees of Cherokee County, health and community workers and Defendant Lindsay were acting within the scope of their employment.

363. Adult Plaintiffs have a constitutionally protected liberty interest and right to custody of their biological children.

364. Parents have a right under the Constitution of the United States, the Constitution of North Carolina, and the laws of the United States and North Carolina to live with their children free from involvement and interference of Cherokee County, absent proof by clear, cogent and convincing evidence of abuse, neglect, or dependency being produced in a court of law.

365. Children have a right under the Constitution of the United States, the Constitution of North Carolina, and the laws of the United States and North Carolina to live with their parent or parents free from involvement and interference of Cherokee County, absent proof by clear, cogent and convincing evidence of abuse, neglect, or dependency being produced in a court of law.

366. Children and parents, including the named Plaintiffs and class Plaintiffs, have the right to live together as a family without government interference.

367. The only way a social worker, agent or the Director of a DSS may lawfully remove a child from a biological parent's custody under North Carolina law is by clear, cogent and convincing evidence, based on allegations of abuse, neglect or dependency.

368. Only a Court Order resulting from due deliberation, duly signed by a judge, and filed with the Court -- can be used to interfere, interrupt or prevent the relationship between a parent and a child, including the Plaintiffs in this action.

369. No judicial authorization ever occurred for this or any other CVA as it relates to the allegations as set forth herein, which removed a child from the Adult Plaintiffs and the unnamed Plaintiffs.

370. No Adult Plaintiff or Class Parent was informed of the harm that would result from the execution of such documents as CVAs and POAs, FSA's, Safety Plans and other similar documents. Instead, Adult Plaintiffs relied on the representations of Cherokee County and its Social Services employees, who withheld such information, to the detriment of the Adult Plaintiffs.

371. No emergency was ever alleged in a single CVA and POA, FSA, Safety Plan or other similar documents.

372. There was no allegation in any CVA and POA, FSA, Safety Plan or other similar documents, that a child was abused, neglected or dependent.

373. There was no allegation a single CVA and POA, FSA, Safety Plan or other similar documents, that a child was exposed to a substantial risk of bodily injury or harm.

374. There was no allegation in a single CVA and POA, FSA, Safety Plan or other similar documents, that a child would be removed from the jurisdiction of the Court.

375. There was no allegation in a single CVA and POA, FSA, Safety Plan or other similar documents, as it relates to a child being covered by the Indian Child Welfare Act, even when it was necessary to do so.

376. At the times relevant, the Defendants failed to represent the laws and facts, as set forth herein, to the Adult Plaintiffs and Class Parents accurately, during the process that resulted in the removal of the minor children from their parents.

377. At the times relevant, the Defendants, as set forth herein, lacked any legal right to remove these minor children from their parents, the Adult Plaintiffs and Class Parents.

378. At the times relevant, there existed no legal authority for the Defendants to remove the minor children from their parents, the Adult Plaintiffs and Class Parents.

379. Defendants never attempted to establish or work a lawful safety plan with the Adult Plaintiffs or Class Parents prior to seeking their signatures by deceit on the CVA and POA,FSA, Safety Plan or other similar documents that were used to remove the children from their parents.

380. No Adult Plaintiffs or Class Parents were noticed for or provided a pre-deprivation hearing, as required by North Carolina law or by any process otherwise due.

381. At the times relevant, not one Adult Plaintiff or Class Parent was ever allowed or provided a post-deprivation hearing as it relates to the allegations as set forth herein.

382. At no relevant time were Class Parents provided counsel, as required by North Carolina law.

383. At no relevant time were the Child Plaintiffs or Class Minors provided counsel, the appointment of a guardian *ad litem*, or an attorney for a guardian *ad litem*, as required by North Carolina law.

384. The conduct on behalf of the Defendants toward all Plaintiffs shocks the conscience. At no time was Defendants' conduct supported in law or fact.

385. The right to parent one's child is enshrined in the Due Process Clause of the 14th Amendment to the Constitution of the United States and the Law of the Land Clause in Article I, Section 19 if the North Carolina Constitution.

386. The Defendants' conduct violated clearly established constitutional rights of all named Plaintiffs, class Plaintiffs, and those yet to be determined through discovery. These rights were clearly established at the time these violations occurred.

387. Defendants' actions deprived all Plaintiffs of their constitutional rights and violated their rights to both procedural and substantive due process.

388. The actions of the Cherokee County Social Services employees resulted an unlawful seizure of the Child Plaintiffs, in violation of the Fourth Amendment to the Constitution of the United States.

389. The actions of the Cherokee County Social Services employees unlawfully deprived the Adult Plaintiffs and their respective Child Plaintiff children. of their respective freedom to associate with each other in violation of the First Amendment to the Constitution of the United States.

390. The actions of the Cherokee County Social Services employees deprived Plaintiffs of procedural due process by interfering with their right to freedom of association in violation of their respective rights under the First Amendment to the Constitution of the United States.

391. The actions of the Cherokee County Social Services employees deprived Plaintiffs of procedural due process by not providing a prompt and fair post-deprivation juridical review in violation of all Plaintiffs' rights under the Fourteenth Amendment to the Constitution of the United States.

392. The actions of the Cherokee County Social Services employees deprived all Plaintiffs of substantive due process in that they shock the conscience of the Court.

   a. The use of CVAs and POAs, FSAs, Safety Plans or other similar documents were intended to (and did) allow Cherokee County and its Social Services employees to evade judicial review of their coercive and unlawful action and to separate parents from their children without lawful authority.

   b. These actions by the Cherokee County Social Services employees violated Plaintiffs' rights to substantive due process in violation of the Fourteenth Amendment of the Constitution of the United States.

393. Defendants each engaged in conduct in furtherance of the object of this conspiracy and induced others to engage in conduct in furtherance of those conspiracies.

394. Defendants engaged in such conduct in bad faith and with intentionally, recklessly, and with callous disregard for, and deliberate indifference to Plaintiffs' rights.

395. As a direct and foreseeable consequence of this deprivation:

   a. The Adult Plaintiffs and their respective biological Child Plaintiffs were separated for extended periods of time, anywhere from 180 days to years. As a direct and foreseeable consequence of this conduct, the Adult Plaintiffs and Child Plaintiffs endured pain and suffering, emotional trauma and distress, and mental anguish.

   b. Adult Plaintiffs were prevented from providing for the care, custody, and control of their respective Child Plaintiff during a valuable and critical time of the minor child's formative years.

   c. Class Parents and Class Minors suffered substantially similar injuries when they were separated for various periods of time.

- 81 -

396. The CVAs, POAs, FSAs, Safety Plans or other similar documents were unlawful and obtained in violation of the Adult Plaintiffs' rights guaranteed under the U.S. Constitution, including but not limited to:

    a. The agreement is not permitted by, did not comply with, and is contrary to the provisions of N.C. Gen. Stat. § 7B-100 *et. seq.,* of the North Carolina General Statutes (which is the means by which the constitutional rights of parents and juveniles are protected in North Carolina, *see, inter alia,* N.C. Gen. Stat. § 7B-100(1)) because, *inter alia*:

        i. The agreement did not allow the Adult Plaintiffs specified minimum visitation with their respective minor child, in violation of N.C. Gen. Stat. § 7B-905.1.

        ii. The agreement failed to follow the mandate of N.C. Gen. Stat. § 7B-507(a), which provides that any order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services (whether it is an Order for nonsecure custody, continued nonsecure custody, a dispositional Order, or a review Order):

            1. Shall contain a finding the juvenile's removal or continuation in or return to the juvenile's home would be contrary to the juvenile's best interest;

            2. Shall contain findings as to whether the county Department of Social Services has made reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has

previously determined that such efforts are not required and shall cease;

3. Shall contain findings as to whether a county Department of Social Services should continue to make reasonable efforts to prevent or eliminate the need for placement of the juvenile;

4. Shall specify that the juvenile's placement and care is the responsibility of the county Department of Social Services and that the agency is to provide or arrange for the foster care or other placement of the juvenile; and

5. May provide for services or other efforts aimed at returning the juvenile to a safe home or at achieving another permanent plan for the juvenile.

iii. The agreement is unauthorized by N.C. Gen. Stat. § 7B-100 *et. seq.,* which does not authorize Cherokee County or its Social Services employees to enter into or facilitate private custody agreements, powers of attorneys, file private custody actions, or take any actions regarding custody of a minor child without judicial action.

1. These CVAs, POAs, FSAs, Safety Plan or other similar documents are more similar to a private parental custody agreement than a custody order entered under the authority of N.C. Gen. Stat. § 7B-100 *et. seq.*

2 These CVAs, POAs, FSAs, Safety Plan or other similar documents, while similar to a private parental custody agreement,

are not authorized under N.C. Gen. Stat § 50-13.1 *et seq.* or N.C. Gen. Stat § 50A-101 *et seq.*

3. These CVAs, POAs, FSAs, Safety Plan or other similar documents, though appearing to be similar to a private parental custody agreement, are prohibited by law.

iv. Under N.C. Gen. Stat § 7B-905(b), a dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker shall direct that a review hearing (as required by N.C Gen. Stat § 7B-906) be held with 90 days from the date of the dispositional hearing.

v. It was not executed under the supervision of the District Court of Cherokee County, North Carolina, which possesses original and exclusive jurisdiction over all juveniles alleged to be abused, neglected, dependent, undisciplined, or delinquent within the County. *See* N.C. Gen. Stat. § 7B-200, 7B-1600, and 7B-1601.

vi. It was not executed under the supervision of the District Court of Cherokee County, North Carolina, which possesses original and exclusive jurisdiction over all child custody actions. *See* N.C. Gen. Stat. § 50A-201(b) and N.C. Gen. Stat § Chapter 50-13.1 *et seq.*,

vii. It was not reviewed by a court official or guardian *ad litem* for the minor child, and was not filed in the minor child's juvenile action court file.

viii. North Carolina District Court has the original and exclusive jurisdiction over all matters regarding all minor children within the state (excluding adoptions).

- 84 -

b. The CVAs, POAs, FSAs, Safety Plan or other similar documents failed to follow the North Carolina Rules of Practice and Rules of Civil Procedure by *inter alia*:

    i. They were not signed by a judge or filed with the Cherokee County Clerk of Court's office.

    ii. Cherokee County DSS did not file any motion, notice on for hearing, or in any other way bring before or otherwise seek court approval or oversight in entering into the CVAs.

c. The execution of the CVAs, POAs, FSAs, Safety Plan or other similar documents was lacking in any legal safeguards for the rights of Adult Plaintiffs or Child Plaintiffs, as required by N.C. Gen. Stat. § 7B-100 *et. seq.,* and the Constitutions of the United States and the State of North Carolina.

d. No CVAs, POAs, FSAs, Safety Plan or other similar documents contained no provisions to revoke or otherwise modify the terms contained therein and contained no provision to allow judicial review or ratification at any time.

e. The CVAs, POAs, FSAs, Safety Plan or other similar documents were used to deprive Adult Plaintiffs and their respective Child Plaintiff of the right to procedural due process and substantive due process.

f. Other ways that shall be ascertained through discovery and proven at trial.

397. Defendants represented to Adult Plaintiffs, and Adult Plaintiffs--in reasonable reliance on Defendants' representations--believed the CVAs, POAs, FSAs, Safety Plan or other similar documents were binding legal documents with the same force and effect as an order of the Court, based on the representations of CCDSS.

398. The CVAs, POAs, FSAs, Safety Plan or other similar documents was drafted and formatted in such a manner as to resemble a Court Order.

399. Defendants Palmer, Crawford, and Davis and others who were in the position to establish and promulgate the policies and official practices of Cherokee County were aware of, approved, and directed the use of the CVA and substantively similar "agreements."

400. Defendant Lindsay drafted multiple CVAs, POAs, FSAs, Safety Plan or other similar documents involving many parents and children over the course of multiple years.

    a. The CVAs, POAs, FSAs, Safety Plan or other similar documents were prepared, propagated, and produced by CCDSS based upon Defendant Lindsay's advice, drafting, and/or counsel. The CVA was designed to be a bilateral "agreement" requiring the signatures of both the parents and the recipient adults.

    b. Upon information and belief, Defendant Lindsay, Defendant Palmer, and/or Cherokee County are in possession of electronic copies of many, if not all, of the CVAs, POAs, FSAs, Safety Plan or other similar documents utilized by the Defendants.

        i. Cherokee County, its Social Services employees, and health and community workers of Cherokee County are liable for their tortious actions, particularly in light of the deliberate indifference of Cherokee County, and its employees, its agents and other defendants yet to be determined through the discovery process.

        ii. Cherokee County, its Directors of Social Services and other policy makers are liable for the direct activity and actions of the DSS and its officials and employees through their individual acts and actions, as well as the official policies and *de facto* policies.

        iii. These unlawful "agreements" were crafted and utilized to unlawfully take minor children from the custody of their parents with the knowledge and

approval of the Cherokee County DSS director or Defendant Lindsay or both.

c. In addition to the CVAs, Defendants unlawfully utilized what they described as "Powers of Attorney" ("POA") to also remove children from the custody of their parents.

    i. A POA was used to unilaterally remove a child from the custody of a parent without court oversight or approval.

    ii. Use of a POA to remove a child from his/her parent violated the same rights as the use of a CVA.

    iii. Upon information and belief, Cherokee County and its Social Services employees made material misrepresentations to Class Parents to induce them to sign POAs.

    iv. Upon information and belief, Class Parents executed POAs acting in reliance on the false statements of Cherokee County and its Social Services employees.

d. Defendants also unlawfully used Family Safety Agreements, Safety Plans and other similar agreements that effectuated the removal of minor children from their biological parents.

401. The Defendants combined, confederated, and agreed to act in conformity with their unlawful patterns, customs, and policies. Each member of the conspiracy shared the same conspiratorial objective to deprive the Plaintiffs of their federally protected rights resulting in the harm and damages that the Plaintiffs have incurred.

402. The unlawful conduct described throughout the Amended Complaint demonstrates that:

a. Defendants established as official policy or custom the use of CVAs, POAs, FSAs, Safety Plan or other similar documents to unlawfully remove children and coerce Class Parents to surrender custody of their children in violation of their rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States

b. Defendants maintained a policy, custom, or pattern and practice of promoting, facilitating, and condoning the improper, illegal, and unconstitutional techniques by Cherokee County Social Services employees.

c. Defendants demonstrated deliberate indifference to the unlawful, unconstitutional, and unconscionable actions of their delegated policymakers, and further failed to adequately train, supervise, or discipline Social Services employees in connection with protecting and ensuring the constitutional rights of the Adult Plaintiffs, Class Parents, Child Plaintiffs, and Class Minors

403. As a proximate cause of Defendants' conduct, Plaintiffs have suffered damages.

## COUNT XII: DEPRIVATION OF RIGHTS 42 U.S.C. § 1983
## (Against Defendant Cherokee County - *Monnell v. Dep't of Social Services*, 436 U.S. 658)

404. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

405. The Cherokee County Department of Social Services is a constituent department of Cherokee County. Cherokee County is governed by a Board of Commissioners, which has oversight over all county programs and departments.

406. The Director of Social Services for Cherokee County, pursuant to N.C. Gen. Stat. § 7B-100 *et. seq.,* and other relevant North Carolina statues including Chapters 108A and 153A, is the final policymaker for all policies and procedures established to govern the operations and activities of the Cherokee County DSS.

- 88 -

407. Defendant Palmer was the Director of Social Services for Cherokee County on an interim basis from November 30, 209 until July 2010, and again from August 1, 2015 until March 23, 2016. Palmer was the permanent Director of Social Services from March 23, 2016 until June 11, 2018.

408. Defendant Crawford was the permanent Director of Social Services for Cherokee County from July 26, 2010 through July 31, 2015.

409. Defendant Davis was the permanent Director of Social Services for Cherokee County from January 5, 1995 through November 29, 2009.

410. The Defendants, as well as unnamed and other as yet unknown supervisors, directors, policymakers, and other responsible individuals are "persons," as defined pursuant to 42 U.S.C. §1983 and *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), and its progeny.

411. Defendant Lindsay was, at the relevant times, simultaneously the attorney hired to represent Cherokee County in juvenile DSS court proceedings, as well as serving as the attorney for Cherokee County. Defendant Lindsay was also an advisor to Social Services employees of Cherokee County, including its directors. Defendant Lindsay was also a policymaker for Cherokee County.

412. Defendants Lindsay, Davis, Crawford, and Palmer established as official policy or custom the use of CVAs, POAs, FSAs, Safety Plan or other similar documents to coerce Adult Plaintiffs and Class Parents to surrender custody of their children in violation of their rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

413. The fundamental right to familial relations is constitutionally protected.

414. Cherokee County, by and through its final policy maker, maintained a policy, custom, or pattern and practice of promoting, facilitating, and condoning the improper, illegal, and unconstitutional techniques used by Cherokee County Social Services employees and Defendant Lindsay.

415. Cherokee County demonstrated deliberate indifference to the unlawful, unconstitutional, and unconscionable actions of their delegated policymakers. Cherokee County failed to adequately train, supervise, or discipline the directors of Social Services as set forth herein in connection with protecting and ensuring the constitutional rights of the Adult Plaintiffs and minor children.

416. Because the County Commissioners of Cherokee County and/or the County Board of Social Services and/or the Cherokee County Director of Social Services and/or Defendant Scott Lindsay were the final policy makers during the past 19 years, their acts or omissions during that time constituted the policy, custom, or pattern and practice of Cherokee County.

417. As the final policymaker for Cherokee County, the County Commissioners of Cherokee County and/or the respective Director of Social Services (Palmer, Davis and Crawford) and/or Defendant Lindsay created, promulgated, and maintained the following policies, customs, or practices that deprived all class plaintiffs, including the named Adult Plaintiffs and Child Plaintiffs, of their constitutionally protected rights by:

    a. Failing to properly train and supervise Cherokee County Social Services employees with regard to their duties not to (1) fabricate purportedly legal documents, (2) coerce signatures from Adult Plaintiffs and Class Parents whereby they gave up their right to parent, (3) separate a parent from a child, (4) remove a child from his/her family, (5) conceal the CVA process from NCDHSS auditors.

(6) intentionally and recklessly failed to follow the procedures as set forth in N.C. Gen. Stat. § 7B- 100 *et. seq.,* (7) ignore the policies and guidelines as set forth by NCDHHS as it relates to safety plans, removal procedures, maintaining contact between parents and children, providing a reunification plan for parents and children and following up on placement of the minor children to ensure their safety, health and essential needs are being adequately met.

b. Encouraging, promoting and condoning Cherokee County Social Services employees to (1) fabricate purportedly legal documents, (2) coerce signatures from Adult Plaintiffs and Class Parents whereby they gave up their right to parent, (3) separate a parent from a child, (4) remove a child from his/her family, (5) conceal the CVA, POA, Family Safety Agreement, Safety Plan and similar processes from NCDHSS auditors. (6) intentionally and recklessly failed to follow the procedures as set forth in N.C. Gen. Stat. § 7B-100 *et. seq.,* (7) ignore the policies and guidelines as set forth by NCDHHS as it relates to safety plans, removal procedures, maintaining contact between parents and children, providing a reunification plan for parents and children and following up on placement of the minor children to ensure their safety, health and essential needs are being adequately met; (8) fostering a climate of impunity for engaging in such unconstitutional conduct.

c. Creating, promulgating, and maintain a policy, custom, or practice of failing to follow the law as set forth in N.C. Gen. Stat. § 7B-100 *et. seq.,* the policies, procedures and guidelines as set forth by NCDHHS and other behaviors, conduct or practices to be learned through discovery and proved at trial.

- 91 -

418. The wrongful acts and omissions that deprived the named Adult Plaintiffs of custody of their respective biological Child Plaintiffs and their right to parent occurred pursuant to Cherokee County's policies, customs, patterns, practices and conduct.

419. The policies, practices, customs and patterns of conduct of Cherokee County were the direct and proximate cause of all Class Parents, including the named Adult Plaintiffs, being unable to act as a parent to their children, associate with their children or enjoy their constitutionally protected rights accordingly.

420. As a proximate cause of Defendants' conduct, Plaintiffs have suffered damages.

## COUNT XIII: RESPONDEAT SUPERIOR

421. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

422. Liability for the tortious conduct and constitutional violations by the Defendants in their individual and professional capacity are imputed to Cherokee County, a governmental subdivision of the state of North Carolina, by operation of the doctrine of respondeat superior.

423. The conduct of Defendants Palmer, Lindsay, Crawford, Davis, and all Cherokee County Social Services employees, acting within their authority and at their direction, in their individual and official capacities, was undertaken within the course and scope of their employment with Cherokee County and in the furtherance of Cherokee County and its Department of Social Services.

424. The Defendants owed a statutory duty to all Plaintiffs to follow state law, act consistently with state policies, and not act in ways so as to infringe on the rights and privileges of parents and minor children, , including but not limited to, the Adult Plaintiffs, Class

- 92 -

Parents, Child Plaintiffs, and Class Minors, under the Constitutions of the United States and the State of North Carolina.

425. Defendants Palmer, Lindsay, Crawford, Davis, and all Cherokee County Social Services employees, acting within their authority and at their direction, breached that duty by presenting the CVA to the Adult Plaintiffs, coercing them to sign, and engaging in the other acts set forth above.

426. Defendants Palmer, Lindsay, Crawford, Davis, and all Cherokee County Social Services employees, acting within their authority and at their direction, breached their duties by presenting CVAs, POAs, FSAs, Safety Plan or other similar documents to Class Parents, including the Adult Plaintiffs, coercing them to sign, and engaging in the other acts set forth above.

427. The use of the unlawful CVAs, POAs, FSAs, Safety Plan or other similar documents interrupted, interfered with, and destroyed the parental relationship and bond of between the named Adult Plaintiffs and their respective Child Plaintiffs, as well as between other Class Parents and Class Minors, and caused irreparable harm, injuries, emotional distress, mental anguish and other damages yet to be determined.

428. All named and unnamed plaintiffs suffered damages and irreparable harm by the conduct of the Defendants in that their families were torn apart, the relationship between their siblings, parents and family were damaged or destroyed, which caused emotional trauma, pain and suffering.

429. As a proximate cause of Defendants' conduct, Plaintiffs have suffered damages.

## COUNT XIV: CIVIL OBSTRUCTION OF JUSTICE
### (Against Defendants Cherokee County, Palmer and Lindsay)

430. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

- 93 -

431. Defendants intentionally, willfully, and maliciously engaged in an unlawful pattern of conduct by coercing Class Parents, including the Adult Plaintiffs, into signing CVAs or substantively similar agreements.

432. Defendants further used the CVAs or substantively similar agreements to avoid judicial supervision and oversight of their unlawful activities and to deny the Adult Plaintiffs their rights to access to justice and to access open courts.

433. Defendants obstructed the administration of public and legal justice by means of their unlawful actions as described throughout this Amended Complaint.

434. Despite being under a statutory mandate to preserve all records of child protective services cases, Cherokee County Social Services employees (with the approval of Director Palmer, speaking on behalf of Cherokee County as final policy maker and having care, custody, and control over all Social Services records of Cherokee County) destroyed or knowingly permitted the destruction of records pertaining to child protective services cases, including case files containing copies of CVAs, POAs, and substantively similar agreements. This destruction has hindered, obstructed, and delayed the ability of counsel to identify the victims of Defendants' wrongdoing, and file this action.

435. Class Parents and Class Minors were harmed by the unlawful actions taken by the Defendants in their attempt to obstruct justice as set forth here and elsewhere in the Amended Complaint.

436. As a proximate cause of Defendants' conduct, Plaintiffs have suffered damages.

## COUNT XV: PUNITIVE DAMAGES
## (Against Lindsay, Palmer, Crawford, and Davis in their individual capacities[6])

---

[6] The Plaintiffs are aware of and acknowledge this Court's prior ruling with regard to the Punitive Damages Claim as to Defendants Cherokee County, and Lindsay and Palmer in their official capacities only. *See* DE 20 and 22 (Magistrate Judge Metcalf recommended dismissal of "Plaintiffs' seventeenth claim for relief (punitive damages) as against the Moving Defendants." (DE 20 at 28) The Court then ordered "that the Plaintiffs' Objections to the Memorandum and Recommendation [Doc. 21] are OVERRULED; the Memorandum and Recommendation [Doc.

437. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

438. Defendants, by their actions as set forth in this Amended Complaint, have acted intentionally, willfully, wantonly, and maliciously in causing the injuries complained of.

439. Defendants' intentional, willful, wanton, and malicious behavior has caused injuries to Class Parents as set forth in this Amended Complaint, including:

   a. Violating their rights under the Constitutions of the United States and North Carolina;

   b. Defrauding them;

   c. Obstructing justice and denying them access to due process of law;

   d. Damage to the safety, well-being, mental health, and familial cohesiveness of the Class Parents, Class Minors, and all affected families of Cherokee County, North Carolina;

   e. As a direct and foreseeable consequence of Defendants' conduct, Adult Plaintiffs and other Class Parents suffered injuries, including but not limited to, pain and suffering, mental anguish, emotional trauma and distress, and were prevented from providing for the care, custody, and control of their minor children during valuable and critical times of minor children's formative years.

   f. As a direct and foreseeable consequence of Defendants' conduct, the Child Plaintiffs and other Class Minors suffered injuries, including but not limited to,

20] is ACCEPTED" and that "Plaintiffs' claim for punitive damages against Defendants Lindsay and Palmer in their official capacities and against Defendant Cherokee County is **DISMISSED WITH PREJUDICE."** (DE 22 at 7-8)) Accordingly, Plaintiffs assert a claim for punitive damages in this Amended Complaint against the Defendants in their individual capacities only.

pain and suffering, mental anguish, emotional trauma and distress from being removed from their parents.

440. The Defendants' intentional, willful, wanton, malicious and oppressive conduct is the proximate cause of injuries sustained by the Plaintiffs. As a result, the Class Parents and Plaintiff Hogan are entitled to punitive damages.

## COUNT XVI: ATTORNEY'S FEES
### (Against All Defendants)

441. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

442. Plaintiffs are entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988(b) and other applicable federal and state statutes related to the allegations as set forth herein.

443. In addition to compensatory and punitive damages, Plaintiffs seek to recover their attorneys' fees from Defendants.

## COUNT XVII: INJUNCTIVE RELIEF
### (Against Cherokee County, Lindsay, and Palmer)

444. Plaintiffs adopt and incorporate by reference all allegations of this Amended Complaint as if fully set out herein.

445. The use of CVAs, POAs, FSAs, Safety Plans or other similar documents as set forth throughout this Amended Complaint is in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

446. Use of the CVAs, POAs, FSAs, Safety Plans or other similar documents is the official policy of Cherokee County, as promulgated by its Social Services policy makers.

447. Use of the CVAs, POAs, FSAs, Safety Plans or other similar documents is an accepted and ratified custom and unofficial policy to the extent that it is not an official policy.

448. Use of the CVAs, POAs, FSAs, Safety Plans or other similar documents is known and tolerated by the final policy makers of Cherokee County, such that their failure to take adequate steps to prohibit such use constitutes deliberate indifference to the constitutional rights of the people of Cherokee County, including but not limited to, the Plaintiffs in this action.

449. Upon information and belief, policy makers of Cherokee County deny any wrongdoing or illegality in the use of CVAs, POAs, FSAs, Safety Plans or other similar documents, and are likely to continue using this process in the future.

450. This Court is empowered to issue injunctions to prevent the continuation of this unlawful practice.

451. Plaintiffs pray for the entry of an injunction prohibiting any named Defendant, Cherokee County, or any agent, servant, or employee of Cherokee County from using a CVA, POA, FSA, Safety Plan or other similar document to facilitate a transfer of custody, and restrain all named Defendants, their agents, and those acting in concert with them, from taking any action to remove a minor child from the custody of his/her biological parent, except through an action filed in the North Carolina General Court of Justice.

WHEREFORE the Plaintiffs pray the Court and demand judgment:

1. For an order certifying the proposed class, and any subclasses the Court finds to be necessary, pursuant to Fed. R. Civ. P. 23, designating the Adult Plaintiffs as the named representatives of the Class Parents, designating the Child Plaintiffs, by and through their Guardian *Ad Litem*, as the named representative of the Class Minors, and designating the undersigned as class counsel;

2. For an award to Adult Plaintiffs, Class Parents, Child Plaintiffs, and Class Minors for injuries and damages, including but not limited to, pain and suffering, compensatory,

consequential, punitive and other such damages, as well as interest thereon, in an amount proven to be determined at trial;

3. For pre-judgment and post-judgment interest as allowed by law.

4. For an award of attorney's fees and costs as allowable by all applicable laws;

5. For a trial by jury;

6. For an injunction prohibiting any named Defendant, Cherokee County, or any agent, servant, or employee of Cherokee County from drafting or using a CVA or substantively similar agreement to facilitate a transfer of custody of a child from his/her biological parents to any third person, and restrain all named Defendants from taking any action to remove a minor child from the custody of his/her parent except through an action filed in the North Carolina General Court of Justice;

7. For an acknowledgement of wrongdoing by the named Defendants and an apology for the same; and

8. For such other and further relief as the Court may deem just and proper.

This the_____day of May, 2019

/s/David A. Wijewickrama
David A. Wijewickrama
N.C. State Bar No.: 30694
Law Office of David A. Wijewickrama, PLLC
95 Depot Street
Waynesville, NC 28786
Phone: 828-452-5801
Fax:    828-454-1990
*Attorney for Adult Plaintiffs*
*and Class Parents*

/s/ Ronald L. Moore
Ronald L. Moore
N.C. State Bar No.: 9619
Post Office Box 18402
Asheville, NC 28814
Phone: (828) 777-1812
Fax: (828) 253-2717
*Attorney for Child Plaintiffs*
*and Class Minors*

/s/ Melissa Jackson
Melissa Jackson
N.C. State Bar No.: 34013
95 Depot Street
Waynesville, NC 28786
Phone: 828-452-5801
*Attorney for Adult Plaintiffs*
*and Class Parents*

/s/ D. Brandon Christian
D. Brandon Christian
N.C. State Bar No.: 39579
P.O. Box 2917
Fayetteville, NC 28302
Phone :(910) 750-2265
*Attorney for Child Plaintiffs*
*and Class Minors*

- 98 -

# CHART OF CLAIMS

(Plaintiffs provide this chart only for summary's sake. Any discrepancy between this chart and the text of the Amended Complaint should be resolved in favor of the text of the Amended Complaint)

| Claim | Cherokee County | Lindsay Official Capacity | Palmer Official Capacity | Crawford Official. Capacity | Davis Official. Capacity | Lindsay Individ. Capacity | Palmer Individ. Capacity | Crawford Individ. Capacity | Davis Individ. Capacity |
|---|---|---|---|---|---|---|---|---|---|
| 1. Negligence | | X | | | | X | | | |
| 2. Negligence | | | X | X | X | | X | X | X |
| 3. Gross Negligence | | X | X | X | X | X | X | X | X |
| 4. Negligent Misrepresentation | | X | X | X | X | X | X | X | X |
| 5.Negligent Hiring& Retention | X | | | | | | | | |
| 6.Gross Negligent Hiring & Retention | X | | | | | | | | |
| 7.Negligent Supervision | | | X | X | X | | X | X | X |
| 8. Gross Negligent Supervision | | | X | X | X | | X | X | X |
| 9. Actual Fraud | | | | | | X | X | X | X |
| 10. Constructive Fraud | | | | | | X | X | X | X |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 11. Depr. Rts. § 1983 | | X | X | X | X | X | X | X | X |
| 12. Depr. Rts. § 1983—<u>Monell</u> | X | | | | | | | | |
| 13.Respondeat Superior | X | | | | | | | | |
| 14. Civil Obstruction of Justice | X | | | | | X | X | | |
| 15. Punitive Damages | | | | | | X | X | X | X |
| 16. Attorney's Fees | X | X | X | X | X | X | X | X | X |
| 17. Injunctive Relief | X | | | | | X | X | | |

## CERTIFICATE OF SERVICE

This is to certify that on May____, 2019, a copy of the foregoing PLAINTIFFS' FIRST AMENDED COMPLAINT was electronically filed with the Clerk of Court using CM/ECF system, which will send notification to all counsel having made appearances in the case as follows:

Patrick Houghton Flanagan
Cranfill, Sumner & Hartzog, L.L.P.
2907 Providence Road
Suite 200
P.O. Box 30787
Charlotte, NC 28230
704-940-3419
704-332-9994 (fax)
phf@cshlaw.com
*Attorney for Defendant Scott Lindsey*
*in his individual capacity*

John L. Kubis, Jr
Teague Campbell Dennis & Gorham, LLP
22 South Pack Square, Suite 800
Asheville, NC 28801
828-254-4515
828-254-4516 (fax)
jkubis@teaguecampbell.com

*Attorney for Defendant Cindy Palmer*
*in her individual capacity*

Sean F. Perrin
Womble Bond Dickinson (US) LLP
301 South College St., Suite 3500
Charlotte, NC 28202
704 331-4992
704 338-7814 (fax)
sean.perrin@wbd-us.com

*Attorney for Defendants Cherokee County,*
*Cherokee County DSS, Scott Lindsey in his*
*official capacity, and Cindy Palmer in her*
*official capacity*

/s/ D. Brandon Christian
D. Brandon Christian
N.C. Bar. No. 39579
Post Office Box 2917
Fayetteville, NC 28302
Telephone: (910) 750-2265
Email: brandon.christian@ncleag.com

*Attorneys for Plaintiff H.H. and Class Minors*