IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO.: 1:18-CV-96

BRIAN HOGAN, et al,                )
                                   )
        Plaintiffs,                )
                                   )
                                   )
        v.                         )       REDACTED
                                   )       **MEMORANDUM IN**
                                   )       **SUPPORT OF PLAINTIFFS'**
CHEROKEE COUNTY, et al.,           )       **MOTION FOR PARTIAL**
                                   )       **SUMMARY JUDGMENT**
        Defendant.                 )
                                   )
                                   )
                                   )

███████████████████████████████

Plaintiffs Brian Hogan and Joy McIver, as guardian *ad litem* and as next friend of H.H., pursuant to L.CvR. 7.1(c), respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment on the issue of liability against Defendants Scott Lindsay, Cindy Palmer, and Cherokee County for violation of rights under 42 U.S.C. § 1983.

## **INTRODUCTION**

The North Carolina Supreme Court recently declared:

> Restrictions on the State's authority to interfere with a fit parent's exercise of their parental rights are not merely technical requirements. In the child welfare context, these statutory and constitutional protections help mitigate the risk that parents will lose custody of their children if public officials disagree with their approach to childrearing or because of racial, religious, gender, sexual orientation, or other biases. In cases such as this one, the potential for these biases, whether explicit or unconscious, to interfere with the proper disposition of a custody dispute underscores the importance of according due respect to a parent's constitutional and statutory rights. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 762–63 (1982) (explaining that "[b]ecause parents subject to termination proceedings are often poor, uneducated, or members of minority groups, such proceedings are often vulnerable to judgments based on cultural or class bias").

*In the Matter of E.B.*, ___ N.C. ___, 2020 WL 5742600, at 10,*4 n.2 (Sept. 25, 2020). Failure to follow such procedures violates a parent's constitutional rights. *Id.* at p. 8.

In this case, Defendants did exactly what the state Supreme Court and what the United States Supreme Court have said they could not do – interfere with Plaintiffs' constitutional right to be a family without due process of law. Rather than following the mandates of North Carolina law delimiting the requisites of constitutionally

- 1 -

required due process by ensuring that Brian Hogan and his daughter, H.H., had appointed counsel and a proper hearing before a judge, the Defendants took matters into their own hands and removed H.H. from Hogan's custody with no due process whatsoever. Defendants ignored a court order awarding full custody to Hogan and coerced him into signing an unlawful "Custody and Visitation Agreement" ("CVA") that took H.H. from Hogan and placed her with her grandfather. Hogan and H.H. had very little contact for more than a year, until Hogan was successful in getting a court to declare that the CVA was invalid and to restore custody to him.

Hogan and H.H., though her guardian *ad litem*, have brought numerous claims against Defendants for their unlawful conduct. Plaintiffs' constitutional rights have clearly been violated, and they are entitled to summary judgment in their favor against all Defendants on their claim under 42 U.S.C. § 1983.

## STATEMENT OF THE FACTS

Plaintiff Hogan is the biological father of a minor child, H.H., born January 16, 2006. (Doc. 8-3) In 2015, Cherokee County Department of Social Services ("DSS") conducted an investigation into a report alleging abuse, neglect, and/or dependency of H.H. arising from the conduct of H.H.'s mother. (Brown Aff. ¶ 4) In an order entered on April 1, 2016, Cherokee County District Court Judge Tessa Sellers specifically placed custody of H.H. with Hogan. (Doc. 8-3; Brown Aff. ¶ 4) That order was entered with the consent of DSS and H.H.'s guardian ad litem appointed for that case. (*Id.*)

On or about November 21, 2016, DSS again contacted Hogan ███████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████

Hogan's appointed counsel from the prior DSS proceedings had been released from further representation following entry of Judge Sellers' Order. (Doc. 8-3) █████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████

Because of the fraud, coercion, and misrepresentations made to him by Cherokee County DSS, Hogan executed the CVA, which removed H.H. from Plaintiff's care, custody, and control and placed her with the paternal grandfather, in direct violation of Judge Sellers' Order. (Doc. 8-4; ████████████████████████████████████

On December 7, 2017, attorney Melissa Jackson filed on Hogan's behalf a motion to enforce Judge Sellers' Order. (Doc. 27-4; Judge Leslie Aff. ¶ 4) That motion was heard on December 13, 2017 before the Honorable Monica H. Leslie. (*Id.*) When asked by the Court what legal authority DSS had for the execution of the CVA, DSS attorney, Defendant Lindsay, admitted that there was "none." (*Id.* ¶ 9) Lindsay admitted that he was aware of 20 such agreements drafted by himself or at his direction. (*Id.* ¶ 7)

Judge Leslie entered an Order holding that the CVA was not a valid legal document, not enforceable or binding, and was null and void. Judge Leslie found that the previous order entered by Judge Sellers was valid and required that full legal custody and control of H.H. be returned to Hogan. (*Id.* ¶ 10) Judge Leslie also reported DSS's use of the CVAs to the N.C. Department of Health and Human Services ("DHHS"). (*Id.* ¶ 12) On December 20, 2017, DHHS sent a letter to all county directors of social services stating that "facilitating such private custody agreements without the oversight of the Court falls outside of both law and policy." (Doc. 1-1 at 68, Ex. E; Doc. 16 at ¶ 74, Admitted).

CVAs have been used by Cherokee County DSS with multiple families since at least 2007. (Doc. 1-1 at 104-05, 121; Laurel Smith Aff.) Cherokee County DSS is an agency operated under the laws of the State of North Carolina and pursuant to administrative regulations promulgated by DHHS; its work is carried out by agents and employees of Cherokee County. (Doc. 1-1, ¶ 9; Admitted, Doc. 16) Defendant Cindy Palmer, who was the director of Cherokee County DSS when Hogan's CVA was signed, was trained in the rules, regulations, policies and procedures of DSS as promulgated by DHHS and the associated laws of the state of North Carolina. (Doc. 1-1, ¶ 18; Admitted Doc. 16).

## STANDARD OF REVIEW

The Court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant carries the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of 'pointing out to the district court … that there is an absence of evidence to support the nonmoving party's case.'" *Modern Auto. Network, LLC v. E. Alliance Ins. Co.*, --- F. Supp. 3d ---, 2019 WL 4600228, at *7 (M.D.N.C. Sept. 23, 2019) (quoting *Celotex Corp.*, 477 U.S. at 325). "This burden is met by consideration of affidavits, exhibits and other

- 5 -

evidentiary materials." *Mut. Benefit Grp. v. Wise M. Bolt Co.*, 227 F. Supp. 2d 469, 473 (D. Md. 2002).

Once the movant satisfies its burden, the nonmoving party cannot rest on the allegations or denials in its pleadings, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## ARGUMENT

It is undisputed that the Defendants used the unlawful CVA to remove H.H. from Hogan's custody.  The Defendants' conduct violated the due process rights of both Hogan and his daughter.  The use of the CVA in this case was the product of the official policy and custom of Cherokee County, making the constitutional deprivation suffered by the Plaintiffs fairly traceable to the acts of the County.  Accordingly, there is no genuine issue of material fact, and Defendants Palmer, Lindsay, and Cherokee County are liable to the Plaintiffs under 42 U.S.C. § 1983 as a matter of law.

## I.  DEFENDANTS' USE OF THE CVA DEPRIVED BRIAN HOGAN AND H.H. OF THEIR CONSTITUTIONAL RIGHTS

It is not merely the taking of H.H. from Hogan's custody that is the constitutional violation; it is doing so without due process of law that violates the constitutional rights of a father and his daughter.  *Compare Eidson v. Tenn. Dep't of Children's Servs.*, 510

- 6 -

F.3d 631, 635 (6th Cir. 2007) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; *what is unconstitutional* is the *deprivation* of such an interest *without due process* of law.") (emphasis added) *with White v. Chambliss*, 112 F.3d 731 (4th Cir. 1997) (Mother and children were not denied procedural due process when children were removed from mother's custody by South Carolina DSS where DSS sought judicially approved *ex parte* order before removing children, and a full hearing was held within 24 hours of removal). The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) and citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). These decisions underscore the truism that "'[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Therefore, as the Fourth Circuit has held, "[p]rocedural due process simply ensures a fair process before the government may deprive a person of life, liberty, or property." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013); *Owenby v. Young,* 357 N.C. 142, 144, 579 S.E.2d 264, 266 (2003) (The "Due Process Clause of the Fourteenth Amendment ensures that the

government does not impermissibly infringe upon a natural parent's paramount right to custody solely to obtain a better result for the child").

To succeed on a procedural due process claim, a plaintiff must satisfy three elements. First, he must demonstrate that he had a constitutionally cognizable life, liberty, or property interest. *Sansotta*, 724 F.3d at 540 (quoting *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson,* 566 F.3d 138, 145 (4th Cir. 2009)). Second, he must show that the deprivation of that interest was caused by "some form of state action." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 (4th Cir. 1988)). Third, he must prove "that the procedures employed were constitutionally inadequate." *Id.* (quoting *Patterson,* 566 F.3d at 145). Plaintiffs have met each of these requirements.

A.   <u>Hogan and H.H. Have Constitutional Rights in the Parent-Child Relationship</u>

Hogan has a right under the Constitution of the United States to be a parent to his child, H.H.  *See e.g. Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) ("The liberty interest at issue in this case -- the interest of parents in the care, custody, and control of their children -- is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court."); *Meyer* v. *Nebraska,* 262 U.S. 390, 399, 401 (1923) ("[T]he 'liberty' protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to control the education of their own.'"); *Troxel*, 530 U.S. at 66 ("In light of . . . extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the

- 8 -

fundamental right of parents to make decisions concerning the care, custody, and control of their children."); *In re Montgomery*, 311 N.C. 101, 106, 316 S.E.2d 246, 250 (1984) (the constitutional parental right is a "'fundamental liberty interest' which warrants due process protection.") (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)).

The forced separation of parent from child, even for a short time, represents a serious impingement on those rights. *See Jordan by Jordan v. Jackson*, 15 F.3d 333, 346 (4th Cir. 1994). Similarly, delay implicates the child's interests in his family's integrity and in the nurture and companionship of his parents. *See id.*; *cf. Parham v. J.R.*, 442 U.S. 584, 600, 99 S. Ct. 2493 (1979) (typically a child's interests are "inextricably linked" with those of the parents). Because the CVA interfered with Hogan's and H.H.'s constitutional rights to be a family, due process is required.

B.    The CVA constituted state action to deprive Hogan of custody of H.H. in violation of Chapter 7B

Chapter 7B of the North Carolina General Statutes prescribes with particularity the due process of law mandated where DSS employees want to take custody of a child from the child's parents. *See generally* N.C. Gen. Stat. § 7B-100(1) ("This Subchapter shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents.") The requirements of Chapter 7B are mandatory. The North Carolina Supreme Court recently underscored the necessity of following <u>all</u>

Case 1:18-cv-00094-RWCM Document 63-3 Filed 11/06/20 Page 10 of 26

requirements of Chapter 7B when it reversed an order terminating a father's parental rights because DSS failed to file a proper petition under Chapter 7B, which meant that the court lacked subject-matter jurisdiction to enter multiple orders that affected the father's rights. *In the Matter of E.B.*, ___ N.C. ___, 2020 WL 5742600 (Sept. 25, 2020). Of particular significance to this Motion is the Court's proclamation about a parent's constitutional rights: "We begin by noting that DSS's and the trial court's actions repeatedly infringed upon respondent's constitutional parental rights." *Id.* at *3 (emphasis added).

The conduct here is even more egregious because Defendants did not even attempt to comply with Chapter 7B or to afford constitutionally mandated due process by filing any petitions or providing a hearing. Defendants used the CVA in place of North Carolina's statutorily established mechanisms for ensuring constitutionally adequate due process. Defendants' treatment of Hogan ignored the due process of law required by N.C. Gen. Stat. § 7B-100 *et seq.* and applicable DHHS regulations. Like the father in *In the Matter of E.B.*, Hogan's child was taken from him without due process of law, which is a *per se* violation of his constitutional rights.

The District Court Division of the North Carolina General Court of Justice has the original and exclusive jurisdiction over "any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen. Stat. § 7B-200(a). During the court proceeding, an indigent parent of a juvenile is entitled to the assistance of

court-appointed counsel, which is automatically and provisionally appointed upon the filing of a petition. *Id.* § 7B-602(a). "A parent qualifying for appointed counsel **may be permitted to proceed** *without* the assistance of *counsel only after the court* **examines the parent and makes findings of fact sufficient to show that the waiver is knowing and voluntary**." *Id.* § 7B-602(a1) (emphasis added). The juvenile is also entitled to the appointment of a guardian ad litem to ensure that the juvenile's interests are independently represented. *Id.* § 7B-601.

The Court must find by clear, cogent, and convincing evidence that the juvenile is abused, neglected, or dependent in order to make this adjudication. *Id.* § 7B-807. If, after an adjudication, the Court actually removes a juvenile from her parents' custody, the law requires DSS to make reasonable efforts at reunifying the juvenile and her parents. *Id.* § 7B-901(c). Only upon a termination of parental rights (or other statutorily appropriate findings) can reunification efforts cease. *See id.* §§ 7B-906.2; -1102; -1103; -1111.

Defendants' use of the CVA to deprive Brian Hogan of lawful custody of H.H. clearly violated North Carolina law and DHHS regulations and ignored the entire universe of due process established for DSS employees to interfere in the constitutionally protected rights of children and parents.

C.    Defendants' Failure to Provide Due Process Is a Violation of 42 U.S.C. § 1983.

When considering procedural due process claims, such as the Plaintiffs' here,

- 11 -

"the existence of state remedies is relevant in a special sense." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). In procedural due process claims, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id.* "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.* at 126.

These procedures as set forth in Chapter 7B provide due process of law to ensure that the constitutional rights of parents and children are protected. Chapter 7B contains all of the hallmarks of adequate due process, e.g., a neutral fact finder, standards of proof, right to counsel, discovery, and other safeguards. Section 1983, which provides a federal remedy for violations of rights of individuals guaranteed under the federal constitution by persons acting under color of state law, applies when, as here, the state procedure, though adequate in theory, was not available in practice. *Zinermon*, 494 U.S. at 124.

In this case, there was no process, let alone "due process." In April 2016, Hogan participated in a court hearing that resulted in an order that gave him full custody of H.H. (Doc. 8-3) In November 2016, Laurel Smith and David Hughes, employees of Cherokee County DSS acting within the course and scope of their duties, ignored this order and Plaintiffs' due process rights by coercing Hogan into surrendering custody of H.H. to his father. (Hogan Dep. 47) When DSS employees confronted Hogan with the

Case 1:18-cv-00095-MR-WCM Document 63-3 Filed 11/06/20 Page 13 of 26

CVA and demanded his signature, they misrepresented the law to him, threatened him with never seeing his child again, and used the CVA to remove his daughter from his custody with no judicial oversight. (*Id*.)

Failing to follow the procedures required by Chapter 7B is a *per se* procedural due process violation, *In the Matter of E.B.*, 2020 WL 5742600 at *3 , and entitles the Plaintiffs to relief under 42 U.S.C. § 1983. Moreover, even absent statutory compliance considerations, the failure to provide the rudiments of due process mandates the entry of summary judgment in favor of the Plaintiffs.

## II.  CHEROKEE COUNTY IS LIABLE TO HOGAN AND H.H. UNDER *MONELL*

The use of the CVA and the unconstitutional behaviors associated with its use was an official policy, practice, and custom of Defendant Cherokee County giving rise to its liability.  *Monell v. Department of Social Services of the City of New York*,  436 U.S. 658, 690-91 (1978) (holding governmental entities "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels"). There are three necessary components for *Monell* liability:  (1) identifying the specific "policy" or "custom"; (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the necessary "affirmative link" between identified policy or custom and the specific violation. *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). Each is established here.

A.   The Use of CVAs Was An Established Policy or Custom of Cherokee County.

Plaintiffs have shown that their constitutional harm stems from the acts of a municipal employee "taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell*, 436 U.S. at 694). A "policy or custom" can exist in four ways:

> (1) through an express policy, such as a written ordinance or regulation;
> (2) through the decisions of a person with final policymaking authority;
> (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

Plaintiffs have presented undisputed evidence that the unconstitutional use of the CVA was a policy or custom of the County: (1) The use resulted from the decisions of the DSS director, who has final policy-making authority for the county under North Carolina law; (2) the County's failure to exercise its oversight authority and ensure that the law was being followed amounted to deliberate indifference to the rights of its citizens; and (3) the use of CVAs to unconstitutionally remove children from their parents' custody was widespread and persistent, so as to constitute a custom or usage with the force of law. *Milligan*, 743 F.2d at 229. Any one of these three methods is sufficient to establish *Monell* liability and entitle the Plaintiffs to summary judgment,

- 14 -

but here, all three are met.

**1. Use of the CVA to unconstitutionally remove H.H. from Hogan's custody resulted from decisions of Cindy Palmer, who is the official policymaker for Cherokee County.**

The determination of whether an individual can be considered a final policymaker is made in light of state law. *See Wilcoxson v. Buncombe County*, 129 F. Supp. 3d 308, 315 (W.D.N.C. 2014); *accord Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) ("the relevant legal materials, including state and local positive law, as well as 'custom or usage having the force of law.'"). N.C. Gen. Stat. § 108A-14 sets forth the duties and responsibilities of a county director of social services, which include serving as the executive officer of the DSS Board, administering programs of public assistance and social services, administering funds provided by the board of commissioners for the care of indigent persons in the county, and assessing reports of child abuse and neglect and taking appropriate action. *See also* N.C. Gen. Stat. § 7B-300. The DSS Director is therefore the final policymaking authority for a Department of Social Services. *See Smith v. Cleveland Cty.*, No. 1:10CV112, 2011 WL 3861396, at *4 (W.D.N.C. Aug. 31, 2011) ("[Cleveland County DSS, the director of DSS, and employees] do not dispute that the director of DSS is a policymaker under state law.") ███████████████████████

████████████████████████████████

███████████████

Having established that Palmer was an official policymaker for Cherokee County in establishing DSS policy, the relevant question is whether her decisions as policymaker resulted in the use of the CVA in Hogan's case. The answer to that is "yes".

As noted, a county can be held liable for constitutional harms stemming from a policy or custom instituted by the "official actions" of municipal officials with "final policymaking authority," or those officials who "have the responsibility and authority to implement final municipal policy with respect to a particular course of action." *Riddick*, 238 F.3d at 522-23. The "official policy" of a municipality "refers to formal rules or understandings -- often but not always committed to writing -- that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

David Hughes[1] was the Child Protective Supervisor for Cherokee County DSS in November 2016 (Doc. 1-1 at 101), ████████████████████████████ ██████████████████████ Hughes testified that the CVAs were used to avoid court involvement in selected cases to permanently remove children from their parents. (Doc. 1-1 at 103) Hughes further testified that the decision to use a CVA in a given case was

---

[1] Hughes testified in an action before the Cherokee County District Court, *Matthieu v. Greenlee*, 18 CVD 46. A certified transcript of his testimony has been filed with this Court. (Doc 1-1 at 101-111).

made during the staffing of a case, which involved discussions between the social worker, a supervisor, and DSS Attorney Lindsay. (Doc. 1-1 at 103) Hughes testified that the CVAs had been used at DSS since before he came to work there in 2011. (Doc. 1-1 at 104-105) Likewise, Lindsay testified that he first began using CVAs[2] in lieu of DSS court proceedings sometime around 2007. (Doc. 1-1 at 121)

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██ ███████

Palmer[3] was the Director of Social Services for Cherokee County in November 2016. (Doc. 1-1 at 112-13) At that time, she had worked at the Cherokee County DSS for approximately 17 years. (Doc. 1-1 at 113) After becoming director, Palmer received additional training in law governing DSS. (*Id*.) Palmer is now under indictment in state court for her actions in connection with the use of the CVAs. (Ex. 1)

During her deposition, Palmer invoked her Fifth Amendment rights in response to numerous questions, and this Court should make adverse inferences as to that testimony. *Baxter v. Palmigiano*, 425 U.S. 308 (1976) ("The prevailing rule [is] that

---

[2] ████████████████████████████████████████
████████████

[3] Palmer testified during the *Matthieu* case and a certified transcript of her testimony has been filed with the Court. *See* Doc. 1-1 at 111-120.

- 17 -

the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment does not preclude the inference where the privilege is claimed by a party to a civil cause."); *see also In re Grand Jury Subpoena*, 836 F.2d 1468, 1472 (4th Cir. 1988); *Cascade Capital, LLC v. DRS Processing LLC*, No. 3:17-cv-00470-RJC-DSC, 2019 U.S. Dist. LEXIS 183816, at *11 (W.D.N.C. Oct. 23, 2019); *Evans v. Capps*, No. 7:15-CV-252-BO, 2018 WL 5291864, at *5 (E.D.N.C. Aug. 3, 2018), *report and recommendation adopted*, No. 7:15-CV-252-BO, 2018 WL 4635025 (E.D.N.C. Sept. 27, 2018*), aff'd*, 765 Fed. Appx. 44 (4th Cir. 2019) (holding that in the civil context, a party's invocation of the Fifth Amendment privilege may be used against him, "even if that silence is an exercise of his constitutional privilege against self-incrimination," striking declaration, and granting summary judgment). Palmer's invocation of her Fifth Amendment privilege establishes the following undisputed facts derived from the adverse inferences properly drawn under applicable precedent:





Palmer was statutorily and structurally responsible for establishing and maintaining social services policies for the County in November 2016. During her tenure, the illegal use of CVAs to remove children from their parents, which violates

the constitutional rights of parents and children, was a policy of Cherokee County. This unconstitutional policy culminated in the use of a CVA to remove H.H. from Hogan's custody in violation of North Carolina law and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

### 2. The County Failed to Exercise Its Oversight Authority.

*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (noting municipal liability may attach where policymaker acquiesces in longstanding practice that constitutes "standard operating procedure" of local government); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *Spell v. McDaniel*, 824 F.2d at 1387; *see also Riddick*, 238 F.3d at 523.

That is the case here. Despite having the authority to hire and fire the Director of Social Services and carry out its oversight authority, the DSS Board for Cherokee County did nothing to oversee DSS or to prevent the unconstitutional use of the CVA process. Karen Kephart, a member of the DSS Board from 2013 through 2018, testified that the Board did not have regular contact with any DSS Director (including Palmer), except at the monthly board meetings. (Kephart Dep. 12:3-11) The Board never even emailed the Director seeking information on DSS operations. (Id. at 12:18-24)

Case 1:18-cv-00095-MR-WCM Document 63-3 Filed 11/06/20 Page 21 of 26

Kephart herself, despite serving as Chair of the Board at one point, spent only about an hour and a half in any given month on DSS Board business. (*Id*. at 13:2-3) Cherokee County was utterly without interest in the activities of its Department of Social Services.

Further, the DSS Board hired Palmer, despite knowing that she was not qualified to hold that position. Kephart admitted that she was "aware" that Palmer was not qualified; however, the Board did not even bother to learn about the nature of Palmer's deficiencies and decided to hire her anyway. (Id. at 31:12-21) The DSS Board did not care whether Palmer was qualified, what Palmer did as Director, or whether the constitutional rights of its citizens were being violated. The Board, which could at the least have sought to replace Palmer, instead took no interest in how DSS operated and acquiesced to the practice of using CVAs in violation of the rights of the people of Cherokee County.

### 3. The use of CVAs was a widespread and persistent practice so as to constitute a custom or usage with the force of law.

A county is liable under a condonation theory "if municipal policymakers fail 'to put a stop to[,] or correct[,] a widespread pattern of unconstitutional conduct.'" *Owens*, 767 F.3d at 402 (quoting *Spell*, 824 F.2d at 1389). To establish *Monell* liability by condonation, a plaintiff must show "a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their

- 21 -

deliberate indifference." *Id.* at 402-03.

Hughes had worked for Cherokee County DSS since 2011 and had seen CVAs used going back to at least 2013. (Doc. 1-1 at 101-02) Palmer testified that many of the CVAs produced at the *Matthieu* hearing predated her tenure as director. (Doc. 1-1 at 117) These statements alone make abundantly clear that the use of CVAs was a widespread and persistent practice of DSS employees.

To establish *Monell* liability, the evidence must establish that the condoned policy or custom has an affirmative causal link to their particular constitutional violation. *E.g., Spell*, 824 F.2d at 1391. This causal link is satisfied "if occurrence of the specific violation [alleged] was made reasonably probable by permitted continuation of the custom," such that the specific violation was "almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Id.* (internal quotations omitted). Hughes testified that CVAs going back to 2008 had been located in his examination of DSS files. (Doc. 1-1 at 104-05). Hughes also testified that there could be other CVAs that had not been located at the time of his testimony, but that files were missing from the DSS records room. (Doc. 1-1 at 109). Defendant Lindsey testified that he started using CVAs in 2007 "or even earlier." ████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████

Axiomatically, because the CVA process had been used for at least 10 years

preceding Hogan's CVA and was so commonplace by 2016 that it had been used to remove 39 children from their parents' custody in 2016 and 2017 (not including H.H.) without due process, then the widespread and persistent use of the CVA process would inevitably end up being used in Hogan's case and in placing H.H. in what these officials viewed as in a better placement. *See Troxel v. Granville*, 530 U.S. 57, 73–74, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state [official]… believes a 'better' decision could be made."). Accordingly, the specific violation of Hogan's rights was ineluctably bound to happen as a result of Cherokee County permitting its employees to use the CVA process in violation of North Carolina law and the constitutional rights of parents[4] and children like Hogan and H.H.

Plaintiffs also have presented evidence that the policymaker (Palmer) had knowledge of the CVAs and failed to stop their use due to her deliberate indifference. As discussed above, *supra* II.A.1., Palmer sat in on meetings at which the CVAs were discussed and recommended the use of CVAs in particular cases. Palmer was aware that CVAs were used to remove children from parents without affording notice or an opportunity to be heard, without the right to counsel, even when court orders to the

---

[4] *See Owenby v. Young*, 357 N.C. at 144, 579 S.E.2d at 266 (The "Due Process Clause of the Fourteenth Amendment ensures that the government does not impermissibly infringe upon a natural parent's paramount right to custody solely to obtain a better result for the child"). These rights constitute fundamental liberty interests which warrant due process protection. *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)).

contrary were already in place. She admitted that she failed to protect the constitutional rights of children and parents and that she acted with deliberate indifference.

Plaintiffs have satisfied all of the requirements to impose liability on the County for the deprivations caused by the use of the CVAs, and Plaintiffs are entitled to summary judgment.

## **CONCLUSION**

For all these reasons, Plaintiffs respectfully submit that this Court should grant Plaintiffs' Motion for Partial Summary Judgment on the issue of liability against all Defendants on Plaintiffs' claim for violation of 42 U.S.C. § 1983.

Respectfully submitted, this the 15th day of October, 2020.

/s/David A. Wijewickrama
David A. Wijewickrama
N.C. State Bar No.: 30694
Law Office of David A. Wijewickrama, PLLC
95 Depot Street
Waynesville, NC 28786
Phone: 828-452-5801
Fax:   828-454-1990
*Attorney for Brian Hogan*

/s/ Ronald L. Moore
Ronald L. Moore
N.C. Bar No.: 9619
P.O. Box 18402
Asheville, NC 28814
Phone: (828) 777-1812
Fax: (828) 253-2717

*Attorney for H.H.*

/s/ Melissa Jackson
Melissa Jackson
N.C. State Bar No.: 34013
95 Depot Street
Waynesville, NC 28786
Phone: 828-452-5801
*Attorney for Brian Hogan*

/s/ D. Brandon Christian
D. Brandon Christian
N.C. State Bar No.: 39579
P.O. Box 2917
Fayetteville, NC 28302
Phone :(910) 750-2265
*Attorney for H.H.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 15, 2020, a copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using CM/ECF system, which will send notification to all counsel having made appearances in the case as follows:

Patrick Houghton Flanagan
Cranfill, Sumner & Hartzog, L.L.P.
2907 Providence Road
Suite 200
P.O. Box 30787
Charlotte, NC 28230
704-940-3419
704-332-9994 (fax)
phf@cshlaw.com
*Attorney for Defendant Scott Lindsey*
*in his individual capacity*

John L. Kubis, Jr
Teague Campbell Dennis & Gorham, LLP
22 South Pack Square, Suite 800
Asheville, NC 28801
828-254-4515
828-254-4516 (fax)
jkubis@teaguecampbell.com

*Attorney for Defendant Cindy Palmer*
*in her individual capacity*

Sean F. Perrin
Womble Bond Dickinson (US) LLP
301 South College St., Suite 3500
Charlotte, NC 28202
704 331-4992
704 338-7814 (fax)
sean.perrin@wbd-us.com

*Attorney for Defendants Cherokee County,*
*Cherokee County DSS, Scott Lindsey in his*
*official capacity, and Cindy Palmer in her*
*official capacity*

/s/ D. Brandon Christian
D. Brandon Christian
N.C. Bar. No. 39579
Post Office Box 2917
Fayetteville, NC 28302
Telephone: (910) 750-2265
Email: brandon.christian@ncleag.com

- 25 -