IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO.: 1:18-CV-96

| | | |
|---|---|---|
| BRIAN HOGAN, et al, | ) | REDACTED |
| | ) | **PLAINTIFFS' OPPOSITION TO** |
| Plaintiffs, | ) | **DEFENDANT SCOTT** |
| | ) | **LINDSAY'S MOTION FOR** |
| v. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| CHEROKEE COUNTY, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiffs Brian Hogan and Joy McIver, as guardian *ad litem* for and next friend

of H.H., pursuant to L.CvR. 7.1(c), respectfully submit this Memorandum of Law in

Opposition to Motion for Summary Judgment filed by Scott Lindsay in his individual

capacity (Docs. 62, 63).

## INTRODUCTION

Defendant Scott Lindsay was the architect of every CVA that was used in

Cherokee County since the inception of the CVA policy dating back to at least 2007 if

not earlier. He brought the CVA form to DSS, he prepared initial drafts and templates

for the social workers to use, and he approved each CVA before parents signed them.

Now Lindsay claims he cannot be held liable because he is not a policymaker and was

not directly involved with the Hogan CVA. Not so. Lindsay's actions in creating the

- 1 -

CVAs and directing their use make him liable to the Plaintiffs.[1] (Doc. 61.) When asked

about Hogan's CVA, Lindsay asserted his Fifth Amendment privilege. (Lindsay Dep.

pp. 96-97)

## **ARGUMENT**

I.     **LINDSAY CANNOT DEFEAT LIABILITY BY ASSERTING THAT HE HAD NO PERSONAL INVOLVEMENT IN THE HOGAN CVA.**

Lindsay contends that the claims against him should be dismissed because

he had no personal involvement in the Hogan CVA. Lindsay is wrong. ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

---

[1] While this response is primarily geared toward explaining why Lindsay is not entitled to summary judgment, Plaintiffs have already filed a motion for partial summary judgment ruling finding that all Defendants, including Lindsay, are liable under 42 U.S.C. § 1983. (Docs. 60, 61.) Plaintiffs incorporate that briefing by reference.

Indeed, Lindsay has been a licensed attorney in North Carolina for decades and knows the laws of North Carolina. DSS social workers relied on him to instruct them on when to use CVAs and to provide drafts for them to fill out with the information about each family. After the social workers did so, Lindsay reviewed the CVA and approved it for the social workers to take to the parents for signature. There is no doubt that the due process rights codified in Chapter 7B[2] and applicable NC DHHS plans,

---

[2] The same due process rights are guaranteed under the Fourteenth Amendment and Chapter 50 of the North Carolina General Statutes, all of which the Defendants clearly sought to circumvent and actually and proximately caused the Constitutional deprivation. North Carolina Courts have long recognized the constitutional right of a parent to protect the fundamental right of parenting. Accordingly, in order for a grandparent to obtain a custody placement, a proper process through the courts must be followed, and the grandparent must show the custodial parent to be unfit. *Eakett v. Eakett*, 157 N.C. App. 550, 553, 579 S.E.2d 486, 489 (2003). As the *Eakett* court clearly ruled:

> The requirement to show unfitness if a grandparent initiates a custody dispute is consistent with a parent's constitutionally protected right to the care, custody and control of the child. *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054 (2000); *Price v. Howard,* 346 N.C. 68, 484 S.E.2d 528 (1997) and *Petersen v. Rogers,* 337 N.C. 397, 445 S.E.2d 901 (1994).

*Eakett*, 157 N.C. App. at 553, 579 S.E.2d at 489. *See, accord, Wellons v. White,* 229 N.C. App. 164, 174, 748 S.E.2d 709, 717 (2013)( "The requirement to show unfitness if a grandparent initiates a custody dispute is consistent with a parent's constitutionally protected right to the care, custody and control of the child.")(internal quotation marks and citation omitted).

Under clearly established law, no exception exists for a DSS to ignore this right. *See generally, Oxendine v. Catawba County Dept. of Social Services,* 303 N.C. 699, 706, 281 S.E.2d 370, 374 (1981)( "the Legislature clearly sought to eliminate conflicting and inconsistent custody statutes and to replace them with a comprehensive act governing all custody disputes."). Governmental actors, therefore, cannot be a part of an unlawful effort to avoid the rule that a grandparent's right to seek custody or visitation only "arises either in the context of an ongoing custody proceeding or where the minor child is in the custody of a stepparent or a relative." *McIntyre v. McIntyre*, 341 N.C. 629, 634, 461 S.E.2d 745, 749 (1995).

As the North Carolina Courts have settled it:

> [P]arents have a "paramount right ... to custody, care and nurture of their children," *id.* at 402, 445 S.E.2d at 903, and that that right includes the right to determine with whom their

protocols and procedures ever permitted the use of a CVA.  In fact, Lindsay spent many hours preparing petitions and representing DSS in court hearings in which parents and children were given their rights to due process under Chapter 7B.  Lindsay knew that using a CVA with Plaintiffs was a due process violation, and he should be held liable. *Compare*, *Kentucky v. Graham,* 473 U.S. 159, 105 S. Ct. 3099  (1985)(On the merits, to establish personal liability of a public official in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right) *with Filarsky v. Delia*, 566 U.S. 377, 383, 132 S. Ct. 1657, 1661 (2012)("Section 1983 provides a cause of action against *any person* who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983.  Anyone whose conduct is "fairly attributable to the State" can be sued as a state actor under §

---

children shall associate, *id.* at 403, 445 S.E.2d at 904-05. *See Moore v. Moore,* 89 N.C.App. 351, 353, 365 S.E.2d 662, 663 (1988) (holding that N.C.G.S. § 50-13.2(b1) authorizes the court to provide for visitation rights of grandparents when custody of minor children is at issue in ongoing proceeding but does not allow court to enter a visitation order when custody is not at issue; parents who have lawful custody of the minor children have the prerogative to determine with whom their children shall associate); *Acker v. Barnes,* 33 N.C. App. 750, 752, 236 S.E.2d 715, 716 (holding that paternal grandmother and aunt did not have right to seek visitation with  minor  children  who were  in lawful custody of  natural mother and adoptive father because parents in lawful custody of their minor children have the prerogative to determine with whom their children shall associate), *disc. rev. denied,* 293 N.C. 360, 238 S.E.2d 149 (1977). N.C.G.S. § 50-13.1(a), however, gives a trial court jurisdiction to determine custody: (1) in those situations where a parent's paramount right to custody may be overcome-for example, when the parent is unfit, has abandoned or neglected the child, or has died, *see Oxendine,* 303 N.C. at 706, 281 S.E.2d at 374 (holding that N.C.G.S. § 50-13.1 is not "restricted to custody disputes involved in separation or divorce"); and (2) when, by reason of separation or divorce, custody is at issue between the parents.

*McIntyre,* 341 N.C. at 631–32, 461 S.E.2d at 748.

1983. *See Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).")(emphasis added).

Although, Defendant attempts disingenuously to conflate supervisory liability with his own *actus reus* effected by means of his subordinate or client's employee who effectively operated as his human instrumentality, Plaintiffs have done what is required to not only survive a summary judgment motion, but to prevail. That is the plaintiffs have plead and proved defendant-official "through the official's own individual actions, has violated the Constitution."[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009).

A public official, such as Lindsay, who performs act clearly established to be beyond scope of his or her discretionary authority is subject to individual liability under § 1983. *In re Allen*, 106 F.3d 582 (4th Cir. 1997)( public official who performs act clearly established to be beyond scope of his or her discretionary authority is not entitled to claim qualified immunity under § 1983, and Attorney General performed act

---

[3] When, an unconstitutional decision is made by an official with "final policy making authority," then the governmental unit may be held liable for that official's decision, so long as the decision was made by "the official or officials responsible under state law for making policy in that area of the city's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Furthermore, as the Supreme Court explained in *Praprotnik*, the hallmark of municipal liability is the finality of the decision being reviewed: When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, such as Lindsay or Palmer in this case, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be actionable and chargeable to the municipality because their decision is final. *Id.* at 127, 108 S.Ct. 915.

clearly established to be beyond his authority when he established "government agency corporation," and he thus was not qualifiedly immune from § 1983 action). For purposes of Section 1983 analysis and defenses, an even private attorney retained to act for a governmental entity is subject to the same liabilities and defenses as other governmental actors which "should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis." *Filarsky v. Delia*, 566 U.S. 377, 389, 132 S. Ct. 1657, 1665 (2012).

Further, there is evidence that Lindsay **personally participated in the Hogan CVA**. When social workers needed a CVA, they obtained them from Lindsay. Former social worker Laurel Smith testified: ███████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████ *See Snell v. Tunnell*, 920 F.2d 673 (10th Cir.

---

[4] Ms. Smith used the term custody order to describe what the parties have described as a CVA throughout this litigation.

- 6 -

1990)(Social workers and agency attorney who allegedly provided false and misleading information to judge, for purpose of securing warrant to enter private home being operated as emergency shelter and remove children could be held individually liable and were not entitled to qualified immunity in homeowners' subsequent § 1983 action). *See generally, Barrett v. United States*, 798 F.2d 565, 567 (2d Cir. 1986).[5]

Palmer and Lindsay have been indicted for their actions in connection with the use of the CVAs. When Plaintiffs' counsel attempted to depose him, Lindsay invoked his Fifth Amendment rights in response to numerous questions[6]. (Doc. 61-10.)

---

[5] In *Barrett,* four defendants who were at the relevant times federal attorneys appealed from an order of the Southern District of New York, Chief Judge Constance Baker Motley, denying their motion to dismiss on grounds of absolute and qualified immunity an action against them by Elizabeth Barrett, Administratrix of the estate of Harold Blauer, deceased. Blauer died as the result of injections administered to him by a New York State hospital of a synthetic mescaline compound furnished by the United States Army Chemical Corps as part of an experimental program. His estate sought damages in the present action on the ground that following Blauer's death appellants and another defendant who then was Assistant Attorney General of the State of New York, actively concealed the federal government's participation in causing the death and conspired to violate the estate's rights in a New York Court of Claims action which the estate brought. Court of Appeals for the Second Circuit affirmed.

[6] This Court should make adverse inferences as to her testimony and that of Lindsay when they asserted the 5th Amendment. *Baxter v. Palmigiano*, 425 U.S. 308, 96 S. Ct. 1551 (1976) ("The prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment does not preclude the inference where the privilege is claimed by a party to a civil cause."); *see also In re Grand Jury Subpoena*, 836 F.2d 1468, 1472 (4th Cir. 1988) *Cascade Capital, LLC v. DRS Processing LLC*, No. 3:17-cv-00470-RJC-DSC, 2019 U.S. Dist. LEXIS 183816, at *11 (W.D.N.C. Oct. 23, 2019); *Evans v. Capps*, No. 7:15-CV-252-BO, 2018 WL 5291864, at *5 (E.D.N.C. Aug. 3, 2018), *report and recommendation adopted*, No. 7:15-CV-252-BO, 2018 WL 4635025 (E.D.N.C. Sept. 27, 2018*), aff'd*, 765 Fed. Appx. 44 (4th Cir. 2019) (holding that in the civil context, a party's invocation of the Fifth Amendment privilege may be used against him, "even if that silence is an exercise of his constitutional privilege against self-incrimination," striking summary judgment declaration, and granting summary judgment).

Plaintiffs are entitled to an adverse inference as to that testimony. (Doc. 61-10.) In particular, those adverse inferences establish that Lindsay acted with deliberate indifference to the rights of juveniles. (Doc. 61-10) During his deposition, Lindsay invoked his Fifth Amendment rights in response to all the questions regarding each and every allegation of his Answer and his affirmative defenses. Specifically, he was asked about each and every denial in his answer, and whether each denial was now deemed admitted, at which time, he specifically reasserted his Fifth Amendment privilege. Furthermore, when questioned regarding the truthfulness or applicability of each and every affirmative defense, Lindsay repeatedly invoked his Fifth Amendment privilege. Accordingly, Lindsay has now admitted all the allegations against him via adverse inference and waived all of his affirmative defenses, including, consent. (Lindsay Dep. pp. 10-17)

Further, when asked specifically about his involvement in the Hogan CVA, Lindsay repeatedly invoked his Fifth Amendment privilege. Accordingly, Plaintiffs are entitled to an adverse inference that Lindsay was heavily involved in the creation of the Hogan CVA, the decision to use it in this case, and the injuries caused thereby. (Lindsay Dep. pp. 96-97)

## II.    USE OF THE CVA VIOLATED HOGAN'S AND H.H.'S PROCEDURAL DUE PROCESS RIGHTS

Lindsay argues that he cannot be held liable to Plaintiffs because even if he were involved in procuring the CVA, Hogan waived his due process rights by signing the

- 8 -

CVA. However, as discussed in Plaintiffs' Opposition to Defendants Cherokee County, Cindy Palmer and Scott Lindsay in his Official Capacity Motion for Summary Judgment ("Plaintiffs' Opposition") , which is incorporated by reference, Lindsay's argument fails because 1) Hogan did not voluntarily sign the CVA and 2) Hogan could not waive his due process rights under Chapter 7B. (Pls.' Opp'n at 3-11). Lindsay was a state actor – a DSS attorney who knew what Chapter 7B required DSS to do if it wanted to remove a child from a parent's custody. Lindsay violated Plaintiffs' constitutional rights by drafting and approving Hogan's CVA in lieu of filing a proper petition and denying a court hearing, in violation of Chapter 7B. Defendants' contention that Lindsay did not violate Plaintiffs' constitutional rights must be rejected. The North Carolina Supreme Court has long established and continued to clearly uphold the right of a father to parent his child. *McIntyre v. McIntyre*, 341 N.C. 629, 634, 461 S.E.2d 745, 749 (1995). See discussion in footnote 2 of this Memorandum, *supra.*

In *In the Matter of E.B.*, 847 S.E.2d 666, 2020 WL 5742600 (N.C. Sept. 25, 2020), the North Carolina Supreme Court held that DSS's failure to follow the procedures set forth in Chapter 7B were a *per se* violation of the father's constitutional rights. The father did not know about his daughter, Ella until DSS contacted him, but he immediately expressed interest in being a father and entered into an out-of-home family service agreement with DSS. After paternity was established, the court held

- 9 -

multiple permanency planning and review hearings and entered various orders imposing requirements on the father before he could be reunited with Ella. The father did not comply with all of the trial court's orders, but persisted in seeking visitation with Ella, and the Court terminated his parental rights. *Id*. at 670

The father appealed, arguing that the trial court lacked subject-matter to terminate his parental rights because DSS never filed a petition seeking to have Ella declared an abused or neglected child. The Supreme Court agreed, finding that the requirements that DSS and the trial court imposed on the father were meaningless.

> DSS's failure to file such a petition deprived the trial court of the legal authority to demand that respondent demonstrate his parenting abilities to the trial court's own satisfaction prior to taking Ella into his own custody, care, and control. It also deprived the trial court of the legal authority to dictate when, where, and how frequently respondent would be permitted to interact with his child. These requirements and restrictions had no binding legal effect, but the trial court treated them as preconditions respondent needed to satisfy, and parameters he needed to comply with, in order to exercise his constitutional parental rights. … Until the trial court entered an order granting custody of Ella to DSS and taking custody away from her father on some legally cognizable ground, DSS and the trial court's desire to further Ella's best interests, however well-intentioned, provided no justification for interfering with respondent's exercise of his constitutional prerogatives as Ella's parent.

*Id*. at 671-72, The Court concluded: "DSS's and the trial court's actions repeatedly infringed upon respondent's constitutional parental rights." *Id*. at 670.

## III. LINDSAY SHOWED "DELIBERATE INDIFFERENCE" TO PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHTS.

- 10 -

It appears that the parties agree that the proper overall standard for assessing a substantive due process violation is the "shocks the conscience" standard. (Doc. 63 at 9-10.) However, the parties disagree about the level of culpability that must be shown to establish conscience-shocking conduct. Defendants erroneously contend that the appropriate standard is "intent to harm." "The intent-to-harm standard most clearly applies 'in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.'" *Dean v. McKinney*, No. 19-1383, 2020 U.S. App. LEXIS 31415, at *10 (4th Cir. Oct. 2, 2020); *see also Radecki v. Barela*, 146 F.3d 1227, 1230 (10th Cir. 1998) (intent-to-harm standard applies to "situations involving law enforcement and governmental workers deployed in emergency situations."). But H.H. was not an abused juvenile, nor was her situation immediate, imminent, exigent, fluid, or rapidly evolving. Quite the opposite -- H.H. was allegedly left with a trusted adult Hogan believed was responsible. (Doc. 59 at 12.) There is no evidence in the record that H.H.'s life was in danger or that she was subjected to conditions risking substantial injury to her. There is no evidence in the record that emergency action was needed. In fact, Hogan was given 24 hours to come back from Asheville to be presented with the CVA. (Doc. 61-9 at 6.) There was time for cool deliberation, and Defendants calculated and deliberately chose to employ the unlawful CVA.

The appropriate standard for a substantive due process violation here is deliberate indifference. *See Dean*, No. 19-1383, 2020 U.S. App. LEXIS 31415, at *11-12 (citing

- 11 -

*Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) ("Liability for deliberate indifference rests upon the luxury of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. Thus, when a [government employee] is able to make unhurried judgments with time to deliberate, such as in the case of a non-emergency, deliberate indifference is the applicable culpability standard for substantive due process claims . . . .") (internal citations, brackets, and quotation marks omitted for ease of reading). Therefore, the question for the Court raised by the Defendants' Motion is whether there is sufficient evidence in the record, viewed in the light most favorable to the Plaintiffs, from which a reasonable jury could find that the Defendants were deliberately indifferent to Hogan's and H.H.'s constitutional rights. Deliberate indifference connotes more than mere negligence, but rather a reckless disregard for the rights of Hogan and H.H. that a constitutional violation was likely. *See Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994). The flagrant use of the CVA process is ample evidence in the record from which a jury will so find.

As to Lindsay specifically, the evidence shows that he was the person who brought the CVAs to Cherokee County, ███████████████████████████████ ██████████████████████ He implemented their use, beginning in 2007, and continued

- 12 -

to advise social workers to use them until a court declared them invalid in March 2018. (Doc. 1-1 at 121.) ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████ If anyone knew what was legally required to remove a child from a parent's custody, it was Lindsay. As a licensed attorney in North Carolina, he was obligated to know and follow the law. He didn't – and he ensured that others working under his direction did not follow the law, either. This is deliberate indifference, and Defendants' Motion should be denied.

## IV. EQUAL PROTECTION CLAIM

The Court has already ruled on the adequacy of Plaintiffs' equal protection claim as asserted against Cherokee County. *See* Docs. 20, 22. Plaintiffs, for preservation purposes, raise and assert their prior arguments in support of their equal protection claim. *See* Docs. 13 and 21, and maintain that "The Equal Protection Clause ... simply keeps governmental decisionmakers from treating differently persons *who are in all relevant respects alike*." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1, 12, (1992) (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989, 990 (1920)) (emphasis added). The evidence in the record is clear that the CVAs were in fact used in some cases but not others, and this caused

some families, such as Hogan and H.H., to be treated differently from those who enjoyed full due process protections. *Cf., Dobrowolska ex rel. Dobrowolska v. Wall,* 138 N.C. App. 1, 530 S.E.2d 590 (2000)(allegations that municipality treated the plaintiffs in the case arbitrarily and capriciously by asserting governmental immunity, when city had custom or policy of settling certain other claims and thus had to carry out such custom or policy in way which afforded due process to all similarly situated tort claimants with actions against city, were sufficient to trigger constitutional review, under lower tier rational basis test, to determine whether there had been violation of victims' rights to due process and equal protection).

## V.    SCOTT LINDSAY IS NOT ENTITLED TO QUALIFIED IMMUNITY

As the arguments set out in this memorandum establish, Lindsay is not entitled to qualified immunity. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Dunbar v. Lindsey*, 905 F.2d 754, 763 (4th Cir. 1990), and "gives ample room for mistaken judgments." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Regardless of whether Scott Lindsay was plainly incompetent or knowingly violated the law, there is ample evidence in the record to establish both.

In the light most favorable to the Plaintiffs, the evidence demonstrates that Lindsay is a licensed attorney who knows the laws of North Carolina. There is no doubt that the due process rights codified in Chapter 7B **never** permitted the use of a CVA. And the United States and North Carolina Supreme Courts have equally made clear that

the right to parent a child is unequivocally established. *See e.g. Troxel v. Granville,* 530 U.S. 57 (2000); *Price v. Howard,* 346 N.C. 68, 484 S.E.2d 528 (1997); *Petersen v. Rogers,* 337 N.C. 397, 445 S.E.2d 901 (1994).

North Carolina courts have long recognized the constitutional right of a parent to protect the fundamental right of parenting. Under clearly established law, no exception exists for a DSS to ignore this right. *See Oxendine v. Catawba County Dept. of Social Services,* 303 N.C. 699, 706, 281 S.E.2d 370, 374 (1981) ("the Legislature clearly sought to eliminate conflicting and inconsistent custody statutes and to replace them with a comprehensive act governing all custody disputes."). Governmental actors, therefore, cannot be a part of an unlawful effort to avoid the rule that a grandparent's right to seek custody or visitation only "arises either in the context of an ongoing custody proceeding or where the minor child is in the custody of a stepparent or a relative." *McIntyre v. McIntyre*, 341 N.C. 629, 634, 461 S.E.2d 745, 749 (1995).

As the North Carolina Courts have long settled it:

> [P]arents have a "paramount right ... to custody, care and nurture of their children," [citation omitted]and that right includes the right to determine with whom their children shall associate [citation omitted]. *See Moore v. Moore,* 89 N.C. App. 351, 353, 365 S.E.2d 662, 663 (1988) (holding that N.C.G.S. § 50-13.2(b1) authorizes the court to provide for visitation rights of grandparents when custody of minor children is at issue in ongoing proceeding but does not allow court to enter a visitation order when custody is not at issue; parents who have lawful custody of the minor children have the prerogative to determine with whom their children shall associate); *Acker v. Barnes,* 33 N.C. App. 750, 752, 236 S.E.2d 715, 716 (holding that paternal grandmother and aunt did not have right to seek visitation with minor

- 15 -

children who were in lawful custody of natural mother and adoptive father because parents in lawful custody of their minor children have the prerogative to determine with whom their children shall associate), *disc. rev. denied,* 293 N.C. 360, 238 S.E.2d 149 (1977). N.C.G.S. § 50-13.1(a), however, gives a trial court jurisdiction to determine custody: (1) in those situations where a parent's paramount right to custody may be overcome- for example, when the parent is unfit, has abandoned or neglected the child, or has died, *see Oxendine,* 303 N.C. at 706, 281 S.E.2d at 374 (holding that N.C.G.S. § 50-13.1 is not "restricted to custody disputes involved in separation or divorce"); and (2) when, by reason of separation or divorce, custody is at issue between the parents.

*McIntyre,* 341 N.C. at 631–32, 461 S.E.2d at 748.

Having served more than 15 years as the sole attorney for DSS, Lindsay undoubtedly spent many hours preparing petitions and representing DSS in court hearings in which parents and children were given their rights to due process under Chapter 7B. Lindsay knew or should have known that using a CVA with Plaintiffs was a due process violation.

The overwhelming body of law surrounding the sanctity of the parent-child relationship and the necessity of refraining from interfering with it makes this one of the rare, obvious cases where qualified immunity simply cannot apply. *See Brosseau v. Haugen,* 543 U.S. 194, 199 (2004) (per curiam ) ("There can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.") Defendant's Motion to dismiss Plaintiffs' claims based on qualified immunity should be denied.

## VI. PLAINTIFFS DO NOT CARE TO BE HEARD REGARDING FRAUD AND CONSTRUCTIVE FRAUD AGAINST SCOTT LINDSAY

- 16 -

Plaintiffs do not care to be heard on Lindsay's motion for summary judgment as to individual claims of fraud and constructive fraud.

## VII.   <u>THERE IS EVIDENCE IN THE RECORD TO FIND LINDSAY LIABLE FOR OBSTRUCTION OF JUSTICE</u>

There is absolutely no dispute that Hogan was awarded custody of H.H. in *In re H.H.* (Cherokee County File No. 15-JA-73) pursuant to an order of the North Carolina District Court. (Brown Aff. ¶ 4, Doc. 61-2) There is also evidence in the record to show that when social workers needed a CVA they obtained them from Lindsay. Laurel Smith, the social worker who asked Hogan to sign the CVA, testified: ███████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████ Given this procedure, Lindsay must have participated in drafting and approving the Hogan CVA. Further, Lindsay knew from his prior representation of DSS when it filed a petition as to H.H. in the Cherokee County District Court and participated in hearings to determine where H.H. should be placed, that the CVA was being used to overturn a court order awarding Hogan full custody of H.H. in April 2016.

North Carolina law is clear that "[c]ivil obstruction of justice is a common law cause of action, consisting of '"acts which obstruct, impede or hinder public or legal

---

[7] ████████████████████████████████████████
████████████████████

justice and would amount to the common law offense of obstructing public justice.'" *Grant v. High Point Reg'l Health Sys.,* 184 N.C. App. 250, 255-56, 645 S.E.2d 851, 855 (2007) (quoting *Henry v. Deen,* 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984)), *disc. review improvidently allowed,* 362 N.C. 502, 666 S.E.2d 757 (2008). "The common law offense of obstructing public justice may take a variety of forms." *Id.* at 253, 645 S.E.2d at 853 (citation and quotations omitted); *see also Earp v. Quinlan*, No. COA09-578, 2010 N.C. App. LEXIS 1473, at *17-18 (Ct. App. Aug. 3, 2010) (same).

In this case, public justice meant not interfering with Hogan's custody of H.H. If Hogan had taken actions inconsistent with retaining custody of H.H., Lindsay was free to file a petition on behalf of the DSS director, or otherwise pursue the lawful DSS process as encapsulated in Chapter 7B. Lindsay declined to do so. Instead, in the light most favorable to the Plaintiffs, the record shows that ███████████████████ ████████████████████████████████ Meanwhile, he had actually participated in the court proceeding that gave custody of H.H. to Hogan. At the time Lindsay approved the Hogan CVA, he knew – or should have known -- that he was interfering with that Court Order. As such, Lindsay can be held liable for obstruction of justice.

## VIII.  NORTH CAROLINA STATE CONSTITUTIONAL CLAIMS

The Court has already ruled on the adequacy of Plaintiffs' state constitutional claims as asserted against Cherokee County. *See* Docs. 20, 22. Plaintiffs, for

preservation purposes, raise and assert their prior arguments in support of their state constitutional claims. (Docs. 13, 21.) Plaintiffs are entitled to maintain claims brought directly under the state constitution unless and until the Court determines that **any claims asserted under state law are not barred by immunity**. Defendant Lindsay has asserted some sort of immunity defense to all of his state law claims. Accordingly, Plaintiffs' state constitutional claims cannot be dismissed unless Defendant Lindsay's immunity defenses fail.

> However, in determining the rights of citizens under the Declaration of Rights of our Constitution, it is the judiciary's responsibility to guard and protect those rights. The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights. *It would indeed be a fanciful gesture to say on the one hand that citizens have constitutional individual civil rights that are protected from encroachment actions by the State, while on the other hand saying that individuals whose constitutional rights have been violated by the State cannot sue because of the doctrine of sovereign immunity.*

*Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 339, 678 S.E.2d 351, 355 (2009) (emphasis added). Permitting a person employed by the government from escaping liability for violations of the state constitution by saying claims barred by immunity are adequate is no less a fanciful gesture that that described above.

## IX. LINDSAY IS NOT ENTITLED TO SUMMARY JUDGMENT ON NEGLIGENCE OR GROSS NEGLIGENCE CLAIMS

The parties agree that Lindsay is a public official and not a public employee because his work did include the exercise of judgment and discretion. It is settled law

in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious . . . or that he acted outside of and beyond the scope of his duties. *Farrell v. Transylvania Cty. Bd. of Educ.*, 175 N.C. App. 689, 696, 625 S.E.2d 128, 134 (2006).

Defendant Lindsay, as discussed above, violated clearly established law in providing the CVAs to the Cherokee County social workers because their use flagrantly violated the law. By crafting and utilizing the CVAs, which violated the law, he was acting beyond the scope of his duties, which included protecting the rights of parents and juvenile. *See* N.C. Gen. Stat. § 7B-100. Therefore, Lindsay cannot plead public official immunity for his negligence claims.

Gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Bullins,* 322 N.C. at 583, 369 S.E.2d at 603, *abrogated on other grounds, Parish v. Hill,* 350 N.C. 231, 513 S.E.2d 547 (1999). "'An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.'" *Yancey v. Lea,* 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001) (citation omitted). *Lunsford v. Lori Renn*, 207 N.C. App. 298, 304, 700 S.E.2d 94, 98 (2010) (same).

- 20 -

Gross negligence is not "mere negligence" therefore Lindsay is not entitled to public official immunity in relation to the gross negligence claims. Therefore, the only question is whether there is evidence in the records from which a jury could find that Lindsay, in creating, drafting, and providing the CVA for use was wanton.

A reasonable jury could find from the evidence and law that Lindsay, knowing he was responsible for acting in accordance with state and federal law, knowing that DHHS had promulgated procedures to ensure that social workers and other DSS employees did not stray and violate rights, knowing that CVAs were not permitted by state law or DHHS policy, still decided to use the CVAs as a shortcut to avoid taking cases to Court. Specifically, Lindsay cannot hide behind his assertion of his Fifth Amendment privilege, refusing to answer whether he used CVAs to avoid filing cases in Court. (Lindsay Dep. 79: 6-8) This, among others, evidences wanton conduct, done for a wicked purpose or needlessly, manifesting a reckless indifference to the rights of Hogan and H.H. Accordingly, it is evidence from which a jury could find that Lindsay acted with gross negligence in creating, drafting, and using the CVAs, including the one at issue in this action.

## X.  LINDSAY IS NOT ENTITLED TO SUMMARY JUDGMENT ON PUNITIVE DAMAGES CLAIMS

The General Assembly stated that "[p]unitive damages may be awarded … subject to the provisions of this Chapter, to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C.

Gen. Stat. § 1D-1. Punitive damages are available if the claimant proves that the defendant is liable for compensatory damages and fraud; malice; or willful or wanton conduct was related to the injury for which compensatory damages were awarded: G.S. 1D-15(a). For the same reasons discussed above, that Lindsay acted wantonly and maliciously in using the CVAs to avoid court involvement while being in reckless disregard for the rights of Hogan, H.H. and all the other victims of his CVAs, there is evidence in the record from a jury can award punitive damages. Accordingly, summary judgment should be denied.

## **CONCLUSION**

Defendant's Lindsay's motion for summary judgment should be denied.

Respectfully submitted, this the 29th day of October, 2020.

/s/David A. Wijewickrama
David A. Wijewickrama
N.C. State Bar No.: 30694
Law Office of David A. Wijewickrama, PLLC
95 Depot Street
Waynesville, NC 28786
Phone: 828-452-5801
Fax:   828-454-1990

*Attorney for Brian Hogan*

/s/ Melissa Jackson
Melissa Jackson
N.C. State Bar No.: 34013
95 Depot Street
Waynesville, NC 28786
Phone: 828-452-5801

*Attorney for Brian Hogan*

/s/ Ronald L. Moore
Ronald L. Moore
N.C. Bar No.: 9619
P.O. Box 18402
Asheville, NC 28814
Phone: (828) 777-1812
Fax: (828) 253-2717

*Attorney for H.H.*

/s/ D. Brandon Christian
D. Brandon Christian
N.C. State Bar No.: 39579
P.O. Box 2917
Fayetteville, NC 28302
Phone :(910) 750-2265

*Attorney for H.H.*

- 22 -

# CERTIFICATE OF SERVICE

This is to certify that on October 29, 2020, a copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT SCOTT LINDSAY'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using CM/ECF system, which will send notification to all counsel having made appearances in the case as follows:

Patrick Houghton Flanagan
Cranfill, Sumner & Hartzog, L.L.P.
2907 Providence Road
Suite 200
P.O. Box 30787
Charlotte, NC 28230
704-940-3419
704-332-9994 (fax)
phf@cshlaw.com
*Attorney for Defendant Scott Lindsey*
*in his individual capacity*

John L. Kubis, Jr
Teague Campbell Dennis & Gorham, LLP
22 South Pack Square, Suite 800
Asheville, NC 28801
828-254-4515
828-254-4516 (fax)
jkubis@teaguecampbell.com

*Attorney for Defendant Cindy Palmer*
*in her individual capacity*

Sean F. Perrin
Womble Bond Dickinson (US) LLP
301 South College St., Suite 3500
Charlotte, NC 28202
704 331-4992
704 338-7814 (fax)
sean.perrin@wbd-us.com

*Attorney for Defendants Cherokee County,*
*Cherokee County DSS, Scott Lindsey in his*
*official capacity, and Cindy Palmer in her*
*official capacity*

/s/ D. Brandon Christian
D. Brandon Christian
N.C. Bar. No. 39579
Post Office Box 2917
Fayetteville, NC 28302
Telephone:  (910) 750-2265
Email:  brandon.christian@ncleag.com

*Attorneys for Plaintiff H.H. and Class Minors*