UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

No. 1:18-cv-96

| | |
|---|---|
| BRIAN HOGAN, et al. | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS BASED ON SPOLIATION OF EVIDENCE AND EXPEDITED BRIEFING SCHEDULE** |
| Plaintiffs, | |
| v. | |
| CHEROKEE COUNTY, et al., | |
| Defendants. | |

NOW COME Plaintiffs, pursuant to LCvR 7.1 and offer this memorandum of law in support of their Motion for Sanctions Based on Defendant Cherokee County's Spoliation of Evidence ("Motion"). For the reasons contained herein, Plaintiffs respectfully request that their Motion be GRANTED and that Defendant Cherokee County be SANCTIONED for its destruction of evidence relevant to this matter.

## STATEMENT OF THE CASE

Plaintiffs filed this action in March of 2018 as a putative class action for damages, *inter alai*, resulting from Defendants use of a document that has been described as a CVA to take H.H. from the custody of her father Brian Hogan. (Doc. 1-1) Included in this Complaint was a claim for Obstruction of Justice against Defendant Cherokee County, seeking damages for, *inter alia,* destroying documents that are relevant to this litigation. (Id.)

- 1 -

All parties filed motions for summary judgment on some of the claims and issues involved in this lawsuit. [Docs. 59-80] No ruling on any party's summary judgment motion has issued, and the matter is scheduled for trial at the March 8, 2021 session of court. The final pretrial conference is scheduled for February 26, 2021.

## STATEMENT OF THE FACTS

The facts that are relevant to this Motion are straightforward. When Plaintiffs' counsel first learned that a CVA was used to remove H.H. from the custody of her father, Brian Hogan, the undersigned counsel David Wijewickrama and Melissa Jackson sent letters to Defendants Cherokee County and Cindy Palmer directing them to preserve all information relevant to this action. (Dec. of Atty. Wijewickrama, ¶ 5) This letter, sent via electronic mail on December 21, 2017 was received by the County. (See Wiggins Dep. Ex. 16)

A second letter followed on January 4, 2018. This letter, which was sent to counsel Sean Perrin as well as Defendants Palmer and Cherokee County, again instructed them to preserve all information relevant to the plaintiffs. (See Wiggins Dep. Ex. 19) In addition to these letters, North Carolina District Court Judge Tessa Sellers entered a preservation order on February 26, 2018, requiring the Defendants to preserve all documents relevant to this action. (See Wiggins Dep. Ex. 20)

In August of 2020, while conducting discovery in this case, counsel attempted to obtain educational records pertaining to H.H. from the Cherokee County Public Schools ("CCPS"). (Wijewickrama Dec. ¶ 7; Boone Aff. ¶¶ 4-5) Plaintiffs sought this third-party discovery because Defendants asserted that they were unable to directly produce those educational records and insisted that Plaintiffs' counsel had to obtain them directly from CCPS. Defendants consented to the issuance of an administrative subpoena by North Carolina Chief District Court Judge Rick Walker, directing the CCPS to produce the educational records of H.H. to Plaintiffs' counsel. (Wijewickrama Dec. ¶ 8)

Plaintiffs' counsel did not receive all documents requested from CCPS until January 22, 2021. (Boone Aff. ¶¶ 6-25) CCPS's document production [1] included a Safety Assessment conducted on H.H. by DSS employees of Cherokee County on May 12, 2016. (Ex. A) Plaintiffs had never seen this safety assessment before,

---

[1] In addition to this assessment, Plaintiffs also received other information regarding H.H.'s mental health and physiological conditions. In total, CCPS's production is 1027 pages. This information will have to be reviewed by Plaintiffs' expert witnesses so that they can to offer fully considered opinions. Plaintiffs' expert witnesses are unable to review the voluminous data provided by CCPS prior to trial. While Plaintiffs seek spoliation sanctions of striking Defendant Cherokee County's answer and affirmative defenses, Plaintiffs are also aware that the Court has the inherent authority to order any remedial sanction it deems appropriate. In the event that the Court determines that a lesser sanction is appropriate, Plaintiffs are compelled to request that the Court consider continuance of the trial as one of the sanctions, given CCPS's late compliance with the subpoena. Plaintiffs further note that CCPS is a constituent part of Defendant Cherokee County, and that CCPS's delay has apparently worked to the benefit of Defendant Cherokee County and to the detriment of Plaintiffs.

despite having requested complete copies of H.H.'s DSS records in discovery. (Wijewickrama Dec. ¶ 11)

Upon receipt of this safety assessment, Plaintiffs' counsel undertook a complete review of all discovery received from Defendants in this action. (Wijewickrama Dec. ¶ 12) Attorney Wijewickrama conducted a visual, page-by-page review of all discovery and an electronic search of all discovery to ensure that Plaintiffs had not overlooked a prior production of the assessment. (Wijewickrama Dec. ¶ 13) This search revealed that Plaintiffs had not previously been provided with this assessment. (Wijewickrama Dec. ¶ 14)

Plaintiffs' review of discovery also included an activity log produced by Defendant Lindsay. (Ex. B) Close examination of this activity log revealed the existence of more than 30 documents that DSS created in connection with its investigation of H.H. that led to the creation of the CVA at issue in this action. None of the documents referenced in Exhibit B were produced to Plaintiffs in discovery from Defendant Cherokee County, even though these documents were created by the County and should have been maintained by the County. (For ease of reading a clarity, Plaintiffs compiled a chart of the documents referenced in Exhibit B. This chart was provided to Defendants and is attached to this Motion as Exhibit C)

In the interest of thoroughness and in an attempt to resolve these issues without court involvement, Plaintiffs sought clarification from Defendants Lindsay

and Cherokee County. Plaintiffs requested that Defendant Lindsay certify that he had no further documents from H.H.'s DSS/CPS file in his possession. (Ex. D) Plaintiffs requested that Defendant Cherokee County produce any documents in H.H's DSS/CPS file that the County had not previously produced and explain why they had not been produced. Alternatively, if the County determined that it had no additional documents, Plaintiffs asked the County to explain why those documents obtained from CCPS did not exist in the County's files. (Ex. E)

On February 2, 2021, Attorney Perrin, counsel to the County, responded to Plaintiffs' request by sending an email stating that a single PDF file obtained from Scott Lindsay's computer was determined to be corrupted and that he was requesting the County to provide that document to him. (Ex. F) Plaintiffs responded in writing, explaining that even if he could restore and produce that one document, it was unlikely to account for all the missing information from the County's DSS file on H.H. (Ex. G) Accordingly, Plaintiffs reiterated their prior request and requested a complete response by Friday, February 5, 2021. (Id.) On February 5 at 9:13 a.m., Perrin sent another email about the missing documents. (Ex. H) However, it did not resolve the issue.

Finally, Plaintiffs have reconciled billing records from Cherokee County DSS to the state for services provided in connection with their investigation into H.H. These billing records corroborate that social services employees actually did perform

the work reflected in the activity log provided by Scott Lindsay. The billing records are attached as Shook Dep. Ex. 7.

## ARGUMENTS

Trial is imminent. A party may apply *ex parte* for an order altering the briefing schedule for a given motion. Fed. R. Civ. P 6(c)(1)(C)(2). If a normal briefing schedule governs this motion, Defendants' response will be due 14 days from today, with Plaintiffs subsequent reply due seven days later. Assuming no extension, the matter will not be briefed and presented to the Court until February 26, 20201. That is that day of the scheduled final pretrial conference. Given the issues presented in this motion, Plaintiffs respectfully suggest that it needs to be addressed prior to the final pretrial motion.

Accordingly, Plaintiffs respectfully request that the court enter a briefing schedule that makes Defendants response to this Motion be due on February 12, 2021, and any reply be due by February 15, 2021. Plaintiffs' counsel consulted with opposing counsel on whether they would agree with this expedited briefing schedule. Defendants' counsel are unwilling to consent or oppose to this altered briefing schedule without seeing this motion in advance. Plaintiffs' counsel has been preparing this Motion right up until the moment it is filed and is unable to provide opposing counsel a preview.

The Court has the inherent authority to sanction any party before it for destruction of relevant evidence that has been requested or ordered to be preserved. North Carolina law required that H.H.'s DSS/CPS file be preserved. To reiterate those legal duties, Plaintiffs' counsel sent multiple preservation letters to Cherokee County. A Cherokee County District Court judge also entered an Order requiring the preservation of those files. However, the events of the past two weeks make clear that H.H.'s DSS/CPS file was not preserved, which constitutes a of state law, Plaintiffs' multiple requests for preservation in anticipation of litigation, and a court order.

## I.  THE COUNTY WAS REQUIRED TO PRESERVE THE CONTENTS OF H.H.'S DSS/CPS FILE THROUGH DECEMBER 21, 2017 AND BEYOND.

According to N.C. Gen. Stat. § 121-5 and N.C. Gen. Stat. § 132-8, state and local governmental entities may only destroy public records[2] with the consent of the Department of Natural and Cultural Resources (DNCR), the Division of Archives and Records. The contents of H.H.'s DSS/CPS file are public records as defined in

---

[2] "Public record" or "public records" shall mean all documents, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material, regardless of physical form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions. Agency of North Carolina government or its subdivisions shall mean and include every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government.  N.C. Gen. Sat. §132-1(a).

N.C. Gen. Stat. § 132-1(a). They are however, protected from public disclosure as juvenile records under the provisions of Chapter 7B.

Retention schedules are the primary way that the Division of Archives and Records gives its consent to state and local governments to destroy their records, and the retention schedule for the destruction of DSS/CPS files in effect since 2016 permits destruction of DSS/CPS investigative records only after receiving permission from the N.C. Department of Health and Human Services. (Ex. I[3]) Moreover, records may not be destroyed if litigation is pending or reasonably anticipated.

The County was clearly on notice from emails sent from Attorneys Wijewickrama and Jackson to Cindy Palmer on December 21, 2017 that litigation was imminent. (*See* Wiggins Dep. Ex. 16) And this was further emphasized by the letter sent on January 4, 2018 (Wiggins Dep. Ex. 19) and the Court Order entered in February of 2018. (Wiggins Dep. Ex. 20) There is no question that the County had an obligation to preserve all records regarding H.H.

II. **THE SAFETY ASSESSMENT RECEIVED FROM CCPS AND THE DOCUMENTS DESCRIBED IN THE ACTIVITY LOG PRODUCED BY SCOTT LINDSAY CLEARLY SHOW THAT THE COUNTY HAS NOT PRODUCED DOCUMENTS THAT SHOULD BE IN H.H.'S DSS/CPS FILE.**

---

[3] A complete copy of the county social services retention schedules may be obtained online from the DNCR at https://archives.ncdcr.gov/media/780/open (last accessed February 5, 2021 at 9:00 AM)

- 8 -

The retention schedule promulgated by DNCR clearly states that "**CHILD PROTECTIVE SERVICES CASE RECORDS** [i]nclude[] intake and screening documentation, risk assessments, demographic information, annual photographs, court records, reports and evaluations, educational records, dictations, case decisions, in home services documentation, child removal documentation, documentation concerning actions taken, investigations, services provided, and other related records regarding case management activities." (Ex. I)

The safety assessment Plaintiffs received from CCPS (Ex. A) was performed by a Cherokee County social worker on May 12, 2016 and would have been a part of H.H.'s DSS/CPS file as defined in the previous paragraph. The document also would have existed as of December 21, 2017, when Plaintiffs' counsel sent the first preservation letter to the County. However, when the County produced what was supposed to be H.H.'s entire DSS file in discovery, this document was not there. Prior to January 22, 2021, Plaintiffs had never seen this document.

The receipt of this new document prompted undersigned counsel to immediately undertake a comprehensive review of discovery produced by the Defendants in this action to ensure that counsel had not received a copy of Exhibit A, rather than simply overlooking it. Defendants have produced in excess of 33,000 pages of discovery in this action (*see* Ex. H); therefore, Attorney Wijewickrama utilized two methods to review the produced discovery. The first was a visual

inspection of each page received from Defendants to ensure that none of them included Exhibit A. The second was an electronic search of the discovery to see if a computerized search would reveal that a copy of Exhibit A had been previously produced. Neither method turned up a copy of Exhibit A.

Attorney Wijewickrama's search did, however, reveal the existence of another document that confirmed that the County had not produced H.H.'s entire file. Scott Lindsay produced in discovery an Activity Log (Ex. B), which detailed the investigation into H.H., Brian Hogan, and Amanda Edmonson that Cherokee County DSS conducted from April 18, 2016 and culminated in the use of a CVA to remove H.H. from Hogan's custody in November 2016. The Activity Log referred to a number of investigative activities that would have resulted in the creation of records for inclusion in H.H.'s DSS/CPS file as described in Exhibit I. A list of all documents that the Activity Log and Exhibit A show are missing was compiled by undersigned counsel into a spreadsheet. This spreadsheet is Exhibit C and is incorporated as though fully set forth herein. All told, the Activity Log and Safety Assessment show that 31 entries were or should have been made in H.H.'s DSS/CPS file between April of 2016 and November of 2016. (*See* Ex. C) The County has not produced any of these documents.

### III.   PLAINTIFFS ATTEMPTED TO RESOLVE THIS ISSUE WITHOUT COURT INVOLVEMENT.

Plaintiffs' counsel reached out to Defendants' counsel on Friday, January 29, 2021, via email to explain what was missing based upon Exhibits A, B, and C. (A copy of this correspondence is attached as Exhibits D and E.) Owing to the lateness of CCPS's response, which is what triggered the inquiry that revealed the omissions, and the fact that trial date is only five weeks away, counsel requested that Defendants respond by Friday, February 5, 2021. A clarification letter was sent on February 2, 2021. (Ex. G.)

Defendant Cherokee County's responses (Exhibits F and H) did not address Plaintiffs' concerns. Moreover, the County's February 5 response makes clear that it is not working diligently to resolve this issue.[4]

Undersigned counsel was clear that they are seeking either 1) the missing documents described in Exhibit C (and any other documents in H.H.'s DSS/CPS file that have not been produced) or 2) a certification that the entire file has been produced and that any missing documents (as evidenced by the DSS records from the CPPS file) are not in the possession of Cherokee County. (Ex. E) Plaintiffs

---

[4] This response from Cherokee County accused the undersigned of attempting to "churn up attorneys' fees" and offered a review of some documents at some non-specific time next week. (Ex. H) The email made clear that the County is not interested in resolving the omissions. Based on this response, undersigned counsel determined that further consultation with the County on these issues would not be productive. Given that the trial date is only five weeks away, Plaintiffs' counsel concluded that they needed to bring these issues to the Court's attention now.

Finally, undersigned counsel note that they are not accusing any attorney for any party of misconduct. The misconduct alleged (*see* Exs. D, E, and G) is against Cherokee County and its employees only and not counsel of record in this case.

further requested that, if the documents are missing, that the County explain how and why they are missing.

Plaintiffs have long suspected, based on media investigations (*see* Wiggins Dep. Ex. 17) and anecdotal reports, that employees of Cherokee County destroyed documents from numerous DSS/CPS files. However, prior to the CCPS production of the safety assessment (Ex. A), Plaintiffs did not have concrete evidence of missing documents. Accordingly, while Plaintiffs have believed that the County acted in bad faith and failed to preserve documents, Plaintiffs have not raised the issue previously due to a lack of sufficient proof to support that beliefs.

Following the CCPS production and the subsequent review of the Activity Log[5], Plaintiffs now have substantial evidence that documents created by DSS and that should have been maintained by DSS in H.H.'s CPS/DSS file have not been produced by the County as part of H.H.'s file. Nor has the County explained why these records were not produced. Plaintiffs recognize that the absence of the documents does not in and of itself prove when they were removed/destroyed, how,

_____

[5] Scott Lindsay produced his activity log (Ex. B) during the discovery period. Plaintiffs' counsel did not recognize the significance of the documents noted in the Activity Log at that time. Plaintiffs' counsel first noted the existence of those documents when they re-reviewed the Activity Log following the receipt of documents from CCPS. As soon as Plaintiffs' counsel realized that additional documents should be available from the County based on entries in the Activity Log, they addressed it with Defendants' counsel through the correspondence presented to the Court. Plaintiffs' counsel take full responsibility for not recognizing earlier that additional documents should exist, based on the entries in the Activity Log.

- 12 -

and by whose authority.  The answer to these questions might have been adequate to show that the County did not engage in the unlawful destruction of records and spoliation of evidence.  Plaintiffs' counsel's letters (Exs. D, E, and G) were an attempt to permit the County to provide the answers (or if the records had been inadvertently omitted, to produce them).  Unfortunately, the County did not take the opportunity to offer any explanation in a timely manner.

## IV. IF RECORDS RELEVANT TO THIS ACTION HAVE BEEN DESTROYED BY DEFENDANT CHEROKEE COUNTY, SANCTIONS ARE APPROPRIATE.

As described above, there are documents missing from H.H.'s DSS/CPS file that should have been preserved.  At the very least, all the documents noted in Exhibit C should be in her DSS/CPS file.  They have not been produced, and Plaintiffs assert that the County cannot produce them because they have been destroyed or otherwise removed from the DSS file room.  Therefore, it is appropriate for this Court to sanction Defendant Cherokee County.

### A. Legal Standard

In *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001), the Fourth Circuit discussed spoliation of evidence.

> Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing *Black's Law Dictionary* 1401 (6th ed. 1990)). The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to

redress conduct "which abuses the judicial process." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991) (recognizing the inherent power of the courts to fashion appropriate sanctions for conduct that disrupts the judicial process); *see also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (recognizing "that when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action"); *cf.* Fed. R. Civ. P. 37(b)(2) (authorizing sanctions for violations of discovery orders).

The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth. "Because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions -- all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition." *Shaffer Equipment*, 11 F.3d at 457. The courts must protect the integrity of the judicial process because, "as soon as the process falters . . . the people are then justified in abandoning support for the system." *Id.*

Thus, while the spoliation of evidence may give rise to court imposed sanctions deriving from this inherent power, the acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses.

*Id.* at 590.

"The duty to preserve material evidence not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* at 591. Moreover, this Court has held that spoliation sanctions do not require a finding of bad faith because spoliation sanctions are administered under the Court's inherent authority, and not

pursuant to Rule 37(e)(2)[6]. *See Legacy Data Access, LLC v. MediQuant, Inc.*, No. 15-584-FDW-DSC, 2017 WL 6001637 (W.D.N.C. Dec. 4, 2017) at *9–10 & n.8. Instead, for an adverse inference against the party based on spoliation, the intent required is willful conduct resulting in the evidence's destruction. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). Willful conduct is established if the party intended "to take those actions that caused the evidence's alteration or destruction." *Nucor Corp. v. Bell*, 251 F.R.D. 191, 198 (D.S.C. 2008) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155, 156 (4th Cir. 1995)).

However, the Fourth Circuit has found that

> [S]ometimes **even the inadvertent, albeit negligent, loss of evidence will justify dismissal** because of the resulting unfairness . . . . We have prescribed the following approach for district courts considering dismissal as a sanction for a given instance of spoliation: dismissal is appropriate only if either (1) . . . the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) . . . the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.

*King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 376 (4th Cir. 2006) (citing *Silvestri,* 271 F.3d at 593) (emphasis added) (internal quotation marks removed).

In *MB Realty Group, Inc. v. Gaston County Board of Education*, No. 3: 17-CV-427-FDW-DCK, 2019 WL 2273732, at *2 (W.D.N.C. May 28, 2019), the Court held that a sanction for spoliation of evidence should "(1) deter the parties from

---

[6] While Plaintiffs do believe that they could proceed for sanctions under Rule 37, they are proceeding for sanction under the Court's inherent authority.

engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence...." (citing *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-cv-18-D, 2017 WL 2483800, at *11-12 (E.D.N.C. June 7, 2017) and *West*¸ 167 F.3d at 779 (2nd Cir. 1999)). *See also Glob. Hookah Distributors, Inc. v. Avior, Inc.*, No. 3:19-CV-177-KDB-DCK, 2020 WL 4349841, at *11 (W.D.N.C. July 29, 2020) (same).

In sum, the Fourth Circuit has held that when imposing spoliation sanctions, "the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Vodusek*, 71 F.3d at 156. But dismissal should be avoided if a lesser sanction will perform the necessary function. "At bottom, to justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." *Silvestri*, 271 F.3d at 590–93.

### B. Cherokee County Failed To Preserve Critical Documents Related to this Litigation.

Defendant Cherokee County is charged with preserving the documents in H.H.'s DSS/CPS file. As explained, *supra*, this obligation is imposed first by state

law, second by federal law based on Plaintiffs' notice to Defendants that litigation was forthcoming, and finally (and most importantly) by a specific court order.

Documents are missing from H.H.'s DSS/CPS file. The County had the care, custody, and control of that file. One of the County's defenses in this action is that H.H. had to be removed from Brian Hogan's custody because she was abused or neglected or dependent, e.g., that this was a lawful taking or that there is no substantive due process violation because the social services employees of the county were faced with a rapid and evolving set of circumstances that warranted immediate intervention. *See* Def. Mot. Sum. Judg. Doc. 59 at 11-16, discussing substantive due process (Defendants argue that Plaintiffs must prove intent to harm rather than deliberate indifference to prove a substantive due process violation. Plaintiffs assert the proper standard is deliberate indifference because the intent to harm standard only applies in rapidly evolving, fluid, and dangerous situations where there is not the luxury of calm reflective deliberation.) *See also* Doc. 75 at 11-12 (Same).

Scott Lindsay's activity log tells a different story. The activity log paints a picture of a slowly developing investigation with multiple interviews and extensive documentation, the epitome of cool deliberation with the luxury of time. But that documentation has not been produced and may not exist today.

- 17 -

Plaintiffs further anticipate that Defendants will argue that the Plaintiffs were not damaged because H.H. was better off when she was not with Brian Hogan (e.g., she was with Warren Hogan). The safety assessments and other documents described in Scott Lindsay's activity log would bear directly on this sort of damages argument. But they have not been produced and may no longer exist.

Defendants deny that they have engaged in obstruction of justice by destroying records (Doc 1-1, Compl. ¶¶ 281-82; Doc. 23, Ans of Cherokee Co. ¶¶ 281-82 ("Defendants deny the allegations in th[ese] paragraph[s]")). Yet they cannot deny that these documents are missing. Further, when confronted with evidence that DSS-created documents are missing from the DSS files (as shown by the fact that CCPS had them) and asked to provide either the missing documents or an explanation why they are missing, the County's response is to obfuscate the issue and make allegations against opposing counsel.

If these documents have been destroyed, then Defendants should be held accountable for their actions. The destruction of the records proves Plaintiffs' obstruction of justice claims, undermines at least one of the County's asserted defenses, and most importantly, makes it impossible to evaluate the condition of H.H. before and after she was taken from Brian Hogan's custody. The recent discovery of missing DSS documents and the Defendants' inability to explain why they do not have these documents (and others relating to H.H.) has consequences for

- 18 -

Plaintiffs' case. One of Plaintiffs' claims is obstruction of justice. If documents were destroyed, the Plaintiffs are entitled to summary judgment on this claim. In addition, the failure of DSS to provide a complete copy of H.H.'s file has prevented Plaintiffs from responding fully to Defendants' affirmative defenses and has frustrated the search for the true damages that have been sustained by H.H. and Brian Hogan as a result of Defendants' conduct. Accordingly, Plaintiffs respectfully request the Court impose an appropriate sanction for this spoliation of evidence. Plaintiffs respectfully suggest that appropriate sanctions would be:

- Striking Defendant Cherokee County's answer insofar as it denied destroying documents and entering a default judgment on Plaintiffs' obstruction of justice claim.

- Strike any part of any motion, response or reply in which any Defendant has asserted that there was any exigency involved with the investigation into the alleged abuse, neglect, or dependency or H.H.

- Prohibit the Defendants from offering evidence or arguments at trial that Brian Hogan and H.H. were not damaged or harmed by the use of CVA or that H.H. was in a better place after removal.

- Tax Defendant Cherokee County with Plaintiffs' reasonable attorneys' fees associated with this Motion.

- Any further relief the Court deems appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court SANCTION the Defendants as requested herein.


This the 5th day of February, 2021.

  Law Office of David A. Wijewickrama, PLLC

BY:

<u>/s/David A. Wijewickrama</u>             <u>/s/ Ronald L. Moore</u>
David A. Wijewickrama                  Ronald L. Moore
N.C. State Bar No.: 30694              N.C. Bar No.: 9619
95 Depot Street                        P.O. Box 18402
Waynesville, NC 28786                  Asheville, NC 28814
Phone: (828) 777-1812                  Phone: 828-452-5801
Fax: (828) 253-2717                    Fax:   828-454-1990
*Attorney for Brian Hogan*             *Attorney for H.H.*


<u>/s/ Melissa Jackson</u>                   <u>/s/ D. Brandon Christian</u>
Melissa Jackson                        D. Brandon Christian
N.C. State Bar No.: 34013              N.C. State Bar No.: 39579
95 Depot Street                        3344 Presson Rod
Waynesville, NC 28786                  Monroe, NC 28112
Phone: 828-452-5801                    Phone :(910) 750-2265
*Attorney for Brian Hogan*             *Attorney for H.H.*

## CERTIFICATE OF SERVICE

     This is to certify that on February 5, 2021, a copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS BASED ON SPOLIATION OF EVIDENCE AND EXPEDITED BRIEFING SCHEDULE E** was electronically filed with the Clerk of Court using CM/ECF system, which will send notification to all counsel having made appearances in the case as follows:

Virginia Wooten
Patrick Houghton Flanagan
Cranfill, Sumner & Hartzog, L.L.P.
2907 Providence Road
Suite 200
P.O. Box 30787
Charlotte, NC 28230
704-940-3419
704-332-9994 (fax)
phf@cshlaw.com
*Attorney for Defendant Scott Lindsey*
*in his individual capacity*

John L. Kubis, Jr
Teague Campbell Dennis & Gorham, LLP
22 South Pack Square, Suite 800
Asheville, NC 28801
828-254-4515
828-254-4516 (fax)
jkubis@teaguecampbell.com

*Attorney for Defendant Cindy Palmer*
*in her individual capacity*

Sean F. Perrin
Womble Bond Dickinson (US) LLP
301 South College St., Suite 3500
Charlotte, NC 28202
704 331-4992
704 338-7814 (fax)
sean.perrin@wbd-us.com

*Attorney for Defendants Cherokee County,*
*Cherokee County DSS, Scott Lindsey in his*
*official capacity, and Cindy Palmer in her*
*official capacity*

/s/ D. Brandon Christian
D. Brandon Christian
N.C. Bar. No. 39579
3344 Presson Road
Monroe, NC 28112
Telephone: (910) 750-2265
Email: brandon.christian@ncleag.com

*Attorneys for Plaintiff H.H.*