UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:18-cv-96

| | |
|---|---|
| BRIAN HOGAN, both on his own behalf and as representative of all unnamed class members who are similarly situated; BRIAN HOGAN, as parent and next friend of H.H., both her own behalf and as representative of all unnamed class members who are similarly situated,<br>    Plaintiffs,<br> vs.<br>CHEROKEE COUNTY; CHEROKEE COUNTY DEPARTMENT OF SOCIAL SERVICES; SCOTT LINDSAY both in his individual capacity and official capacity as attorney for Cherokee County Department of Social Services; CINDY PALMER, in both her individual capacity and her official capacity as Director of Cherokee County Department of Social Services; DSS SUPERVISOR DOE #1, et al.,<br>    Defendants. | **DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR A NEW TRIAL NISI REMITTITUR** |

The Defendants' motion for new trial nisi remittitur did not argue, as Plaintiffs suggest, that Plaintiffs deserve no damages for "H.H.'s humiliation and terror at having no parents during puberty", or that the Plaintiffs did not suffer

emotional injuries as a result of the CVA, or that the Plaintiffs did not suffer "the irreparable harm of a broken family." [Document 161, pp. 9, 12, 13]. The Defendants' motion argued that damages awards of 3.1 million to H.H., and 1.5 million to Brian Hogan, for an approximately thirteen and half month separation caused by Brian's admitted inability to take care of H.H., was excessive.

I. **THE JURY'S VERDICT WAS EXCESSIVE**

The "purpose of compensatory damages is to make the injured plaintiff whole for losses actually suffered." *King v. McMillan*, 594 F.3d 301, 314 (4th Cir.2010) (citation omitted). Plaintiffs contend that in addition to the "mental distress endured by the Plaintiffs," the jury's verdict "was based on compensation for the time the Plaintiffs were separated" and the loss of the "opportunity to provide care, love, and affection" to H.H. [Document 161, pp. 3-4]. In support of this argument, Plaintiffs cite an excerpt from their closing argument. *Id*. at p. 3. Closing arguments, however, are not evidence. (T 1034: 8-14).[1] There was little evidence at trial demonstrating the effects on Brian due to his separation from H.H, and little evidence concerning damages for either H.H. or Brian resulting from the loss of the opportunity to provide for one another.

---

[1] "T" refers to the transcript of this trial, followed by reference to page and line numbers, true copies of which are attached to the Declaration of Sean F. Perrin, Exhibit 1 to this Reply.

2

Case 1:18-cv-00096-MR-WCM    Document 162    Filed 08/09/21    Page 2 of 9

In fact, a review of Brian Hogan's testimony shows that there was very little testimony about damages resulting from the time Brian and H.H. spent apart. The transcript of Brian's first day of testimony was twenty-one pages. (T 576: 20- 597: 21). During this first day of testimony, Brian testified very briefly about H.H.'s birth, and what he and H.H. did when she was growing up. (T 587: 10- 588: 8). In contrast, four times as much time was spent discussing Brian's time at the hospital with his wife. (T 593: 15- 597: 21). While certainly tragic, Brian's emotional distress and pain concerning his wife's health issues are not compensable damages.

The transcript of Brian's direct testimony during his second day of testimony was twenty-six pages. (T 612: 16- 638: 24). He again talked about his wife's illness (T 612: 18- 614: 7), and interactions with DSS. (T 614: 8- 618: 2). His testimony concerning damages for the "opportunity to provide" for H.H. was very minimal. Brian testified that he called H.H. every day (T 618: 3-25), but only visited with her infrequently due to Warren not allowing him to visit. (T 621: 7- 622: 5; 629: 18-20). Brian was asked one question about the sorrow he felt at not being able to be with H.H. (T 634: 16-25). He then talked for two pages about the emotional affects he felt when H.H. was not with him, as well as his current emotional state. (T 636: 8-25; 637: 1-25; 638: 1-24). In comparing the factual record and the verdict to determine their compatibility. *Atlas Food Sys. & Servs.,*

3

*Inc*, 99 F.3d at 594 (4th Cir. 1996), it is clear that while Brian suffered damages, 1.5 million dollars was excessive.

Plaintiffs contend that H.H. suffered 3.1 million dollars of damages because during the twenty month separation, Brian was unable to talk with her every day, Warren Hogan kept money earmarked for H.H., and her parents would cry when they saw her, which made her feel sad. [Document 161, p. 13]. These claims are misplaced for two reasons.

First, H.H. and Brian were not separated for twenty months due to the Defendants' conduct. At most, H.H. and Brian were separated for less than fourteen months. The CVA was signed on either October or November 21, 2016 (T 881: 14-25; 882: 1-2), and H.H. was returned to Brian's custody on December 13, 2017. [Document 1-1, p. 15, ¶¶ 69-77]. The Defendants did not cause the separation which occurred when Brian left H.H. with the Gillelands on April 28, 2016, in order to stay with his wife at the hospital. (T 593: 15-21; 594: 22-24; 596: 6-10).

Second, H.H. was not placed with a complete stranger. She was placed with her grandfather who she regularly visited with, and enjoyed being with, prior to being placed with him in 2016. (T 461: 15-16). H.H's testimony is also sparse with respect to the effects of the time she spent apart from Brian. While H.H. testified

4

that she missed her mom and dad, she also testified that changing schools didn't bother her, and that Warren took care of her needs, including her education needs by making her do her homework, (T 460: 17-25; 461: 1-7; 497: 5-9). While living with Warren, H.H. was also able to see her mom and dad "[e]very now and then." (T 465: 20-22.) When H.H. moved back with her parents in December 2017, she was happy. (T 474: 10-17.) Again, while a jury properly awarded H.H. damages, 3.1 million dollars based on the facts presented at trial is excessive.

## II. *AKEY V. PLACER COUNTY* IS INSTRUCTIVE IN DETERMINING WHETHER THE DAMAGES AWARDS WERE EXCESSIVE

While Plaintiffs contend that Defendants' citation to *Akey v. Placer Cty* is inapposite, they do not cite to any other cases supporting their position that the damages awards to H.H. and Brian were reasonable. [Document 161, pp. 13-15]. A challenge to an excess verdict "requires… consideration of verdicts in similar cases." *Longoria v Hunter Express, Limited*, 932 F.3d 360, 364 (5th Cir. 2019). While no two cases are identical, a careful review of the *Akey* case and this case reveals that both are extremely similar in four significant ways.

First, in both cases, the complaint arose out of an alleged violation of civil rights following the removal of a child from a home. 2019 WL 3883592 (E.D. Cal. 2019). Second, like H.H. who was placed with her grandfather, N.D. in the *Akey* case was placed in the custody of N.D's relative while social services was

investigating child abuse allegations. *Id.* Third, like Brian in this case, the adult Plaintiff in *Akey* claimed that she was coerced into agreeing to a safety plan by threats of removing her children. *Id.* Fourth, like H.H. and Brian argued, the Plaintiffs in *Akey* contended that the removal of N.D. was pursuant to a policy of removing children by safety plans. While there are some distinguishing facts in *Akey*, a review of *Akey* certainly provides a reasonable basis for concluding that the verdict in this case was excessive.

Two additional cases which also provide a basis for concluding that the verdict in this case was excessive are *Lewis v. County of San Diego*, 2017 WL 2645158 (S.D.Cal. 2017), and *Morales v. County of Mendocino*, 2018 WL 3470768 (N.D. Cal. 2018).

In *Lewis*, parents and two children sued social workers after the children were removed from their home without a warrant or exigent circumstances and placed them into protective custody based on allegations that the Plaintiff father used medical marijuana. 2017 WL 2645158. Based upon the filing of an alleged false petition by social workers, the parent Plaintiffs were apart from their children for almost a year. *Id.* The children were reunited with their parents after an appellate court reversed the juvenile court's order placing the children in foster care. *Id.* The Plaintiffs, like H.H. and Brian Hogan, brought civil rights claims for failure to

train and a policy and procedure claim under *Monell*. *Id*. The jury awarded the Plaintiffs one dollar in nominal damages.

In *Morales*, the Plaintiff grandmother, Morales, and her grandson, K.B., were separated based upon a "voluntary placement agreement." 2018 WL 3470768. K.B.'s mother wanted to get custody of her son, and allegedly convinced her intellectually disabled niece to call in a report of abuse perpetrated by Morales against K.B., manipulated K.B. into echoing the allegations, and conspired with the defendant social workers to have her son removed from Morales' home

After K.B. was removed under a 'Voluntary Placement Agreement,' Morales reportedly changed her mind and said she repeatedly requested custody of K.B., but her requests were ignored by the social workers. On the issue of whether Morales consented to the "voluntary placement agreement," the jury awarded Morales $59,000 and K.B. $29,500.

While *Lewis* and *Morales* have slightly different facts than this case, they both involve the alleged unconstitutional removal of children by social workers, and the failure of the social workers to return the children. No two cases are alike, but *Lewis* and *Morales*, along with *Akey*, provide three examples of jury verdicts in similar cases, and demonstrate why the damages awards in this case were excessive.

7

## III. THE JURY'S QUESTIONS DEMONSTRATE THAT THEIR DAMAGES AWARDS WERE BASED ON SYMPATHY

The Plaintiffs misunderstand the Defendants' argument regarding the jury's questions. [Documents 161, pp. 15-16]. The Defendants do not contend that the Court's instruction was erroneous. However, the fact that the jury indicated that it was considering allocating damages for H.H.'s college fund, and to pay for her attorneys and experts, indicates that their verdict may have been based upon sympathy, not based on actual damages from evidence at trial. Where a jury's award may be based on prejudice and passion by the jury, *Bennett v. Fairfax County, Va.* 432 F.Supp.2d. 596, 603 (E.D.Va. 2006), a court may order the damages to be reduced.

## IV. CONCLUSION

For these reasons and those set forth in Defendants' motion for new trial nisi remittitur, the Defendants request that the Court grant the Defendants' motion and reduce Plaintiffs' damages because they were excessive as a matter of law.

Respectfully submitted, this the 9th day of August, 2021.

        s/Sean F. Perrin
        *Attorney for Defendants Cherokee County, Cherokee County Department of Social Services, Scott Lindsay in his official capacity and Cindy Palmer in her official capacity*


        s/Mary Euler
        *Attorney for Defendant Cindy Palmer in her individual capacity*

        s/ Pat Flanagan
        *Attorney for Defendant Scott Lindsay in his official capacity*