# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:18-cv-00096-MR-WCM

| | | |
|---|---|---|
| BRIAN HOGAN, both on his own behalf and as representative of all unnamed class members who are similarly situated; BRIAN HOGAN, as parent and next friend of H.H., both on her own behalf and as representative of all unnamed class members who are similarly situated, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **MEMORANDUM OF DECISION AND ORDER** |
| CHEROKEE COUNTY; CHEROKEE COUNTY DEPARTMENT OF SOCIAL SERVICES; SCOTT LINDSAY, both in his individual capacity and official capacity as attorney for Cherokee County Department of Social Services; CINDY PALMER, in both her individual capacity and her official capacity as Director of Cherokee County Department of Social Services; DSS SUPERVISOR DOE #1; and DSS SOCIAL WORKER DOE #1, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**THIS MATTER** is before the Court on the Plaintiffs' Application for Attorneys' Fees [Doc. 148].

# I.    BACKGROUND

This action arises out of the Defendants' use of an extra-judicial custody agreement that resulted in the wrongful removal of Plaintiff H.H. from the custody of her father, Plaintiff Brian Hogan.  The Plaintiffs filed a putative class action complaint, asserting claims pursuant to 42 U.S.C. § 1983 for the deprivation of their procedural and substantive due process rights, as well as various state law claims.  [Doc. 1].  The Plaintiffs subsequently withdrew their request for class certification.  [Doc. 58].  At the summary judgment stage, the Court dismissed a number of the Plaintiffs' state law claims.  [Doc. 91].  The case then proceeded to trial.  Following a four-day trial, a jury determined that the Defendants Scott Lindsay (the attorney for Cherokee County and the Cherokee County Department of Social Services) and Cindy Palmer (the Director of the Cherokee County Department of Social Services) violated the Plaintiffs' substantive and procedural due process rights through the employment of an unlawful Custody and Visitation Agreement (CVA); that an official policy, practice, or custom of Cherokee County was the moving force behind these violations; and that Cherokee County failed to adequately train its employees, which resulted in the violation of the Plaintiffs' constitutional rights.  [See Doc. 140].  The jury further found in favor of the Plaintiffs on their state law claims against Defendants Lindsay and Palmer,

finding that these Defendants acted in a grossly negligent manner, thereby causing the Plaintiffs' injury, and that these Defendants obstructed justice with respect to both Plaintiffs. [Id.]. The jury awarded Brian Hogan $1.5 million and H.H. $3.1 million in compensatory damages. [Id.]. Based on the jury's factual findings, the Court entered a Judgment in favor of the Plaintiffs on June 21, 2021. [Doc. 147].

The Plaintiffs now move the Court to award them $3,882,654.61 in attorneys' fees and expenses as "prevailing parties" pursuant to 42 U.S.C. § 1988.[1] [Doc. 148]. The Defendants concede that the Plaintiff are the prevailing parties in this matter and are entitled to an award of fees and expenses, but they ask the Court to use its discretion and significantly reduce the requested award. [Doc. 156].

## II. DISCUSSION

### A. Attorneys' Fees

Title 42 of the United States Code, Section 1988 provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). A plaintiff constitutes a

---

[1] The Plaintiffs indicate in their motion that they intend to seek a separate award of costs pursuant to 28 U.S.C. § 1920. [Doc. 148 at 2 n.1].

3

"prevailing party" if he "succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). It is undisputed that the Plaintiffs here are "prevailing parties" and thus entitled to an award of attorneys' fees under § 1988.

"The starting point for establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). The burden is on the fee applicant to justify the reasonableness of the requested fee. See Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

In exercising its discretion in the application of this lodestar method, the Court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

4

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)). "Although the Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable." Firehouse Restaurant Group, Inc. v. Scurmont LLC, No. 4:09-cv-00618-RBH, 2011 WL 4943889, at *12 (D.S.C. Oct. 17, 2011) (citing EEOC v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990)).

### 1. Time and Labor Expended

The Court begins its lodestar analysis with considering the time and labor expended by the Plaintiffs' attorneys. "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" Doe v. Kidd, 656 F. App'x 643, 656 (4th Cir. 2016) (quoting in part Hensley, 461 U.S. at 434).

The Plaintiffs were represented by four attorneys in this action: David A. Wijewickrama of Waynesville, North Carolina; Melissa A. Jackson of Waynesville, North Carolina; Ronald L. Moore of Asheville, North Carolina; and D. Brandon Christian of Monroe, North Carolina. According to the Declarations and timesheets submitted by the Plaintiffs [Docs. 148-2, 148-

5

3, 148-4, 148-5], their attorneys expended the following number of hours in the course of prosecuting this action:

|  | Wijewickrama | Jackson | Moore | Christian |
|---|---|---|---|---|
| 2017-2018 | 817.15 | 982.65 | 329.78 | 120.90 |
| 2019 | 467.65 | 495.60 | 228.85 | 151.35 |
| 2020 | 1,119.65 | 643.05 | 246.80 | 212.80 |
| 2021 | 762.25 | 486.65 | 366.80 | 344.50 |
| Total Hours: | 3,166.70 | 2,607.95 | 1,172.23 | 829.55 |

Additionally, the Plaintiffs' attorneys utilized the services of Kelly Boone, who provided both "paralegal services and subject matter expertise" on behalf of the Plaintiffs. [Doc. 148 at 4-5]. According to her timesheets, Ms. Boone expended 1,877.25 hours in connection with this action. [Doc. 148-6].[2]

### a. Related Cases

The Plaintiffs seek an award of fees for at least 877.10 hours spent by their attorneys investigating, researching, drafting complaints, and meeting with clients in related matters that were filed in this Court, including: Allen v.

---

[2] In their request for attorneys' fees, the Plaintiffs also seek an award for the fees of attorney Susan H. Boyles in the amount of $243,266.32. [Doc. 148 at 5]. These fees are also claimed by the Plaintiffs as reimbursable expenses. [Doc. 148-2 at 62-64]. Ms. Boyles' fees are addressed in the section addressing the Plaintiffs' request for expenses, infra.

6

Cherokee County, et al., No. 1:20-cv-00250-MR-WCM; Heaven Cordell v. Cherokee County, et al., No. 1:20-cv-00201-MR-WCM; Molly Cordell v. Cherokee County, et al., 1:20-cv-00199-MR-WCM; and Godbold v. Cherokee County, et al., 1:20-cv-00202-MR-WCM. While acknowledging that an attorney may recover for work performed on behalf of a party who does not eventually become a client (or, in this case, does not become a member of a putative class action), the Defendants argue that the attorney's work for that other party must still be substantially related to the prevailing party's claims. [Doc. 156 at 11 (citing Plyler v. Evatt, 902 F.2d 273, 280 (4th Cir. 1990)]. The Defendants contend that the bulk of this work for other clients was not substantially related to the Hogans' claims and is therefore not compensable in this action. [Id.].

The Plaintiffs acknowledge in their Reply that 66.4 hours of this work done with respect to other clients—specifically on drafting the complaints and responses to motions in the Allen, Molly Cordell, Heaven Cordell, and Godbold cases—are properly excluded from the compensable time claimed in this action. [Doc. 160 at 3]. The Plaintiffs contend, however, that the remainder of this work is compensable because this matter was initially filed as a class action, and although the Plaintiffs ultimately did not proceed with the litigation as class representatives, the work performed in investigating

7

and interviewing others harmed by the use of unlawful CVAs was "both useful and of a type ordinarily necessary" to advance the Hogan litigation. [Doc. 148-11 at 8 (quoting Webb v. Board of Educ., 471 U.S. 234, 243 (1985); Doc. 160 at 3-4].

Having reviewed the challenged time entries,[3] it appears that the Plaintiffs' attorneys spent more than 400 hours discussing other clients' cases among themselves and/or contacting those clients, either in person, by telephone, or through Facebook. The Court finds that the amount of time in performing these tasks is not properly compensable in this action.

While counsel originally pursued this matter as a class action, they ultimately abandoned that approach. To the extent that counsel spent time litigating the class action aspect of this case and investigating the claims of these potential class action members, such time did not inure to the benefit of the Plaintiffs in this case. Further, the Plaintiffs' attorneys ended up bringing separate § 1983 actions for the majority of these other clients. Thus, any work performed with respect to those clients would be compensable (if at all) in the event that they prevail in those actions.

---

[3] The Defendants have created a number of exhibits regrouping the disputed time entries into various categories, such as work that appears to be related to other clients of the Plaintiffs' attorneys. [See Doc. 156-3: Defendants' Ex. 1A]. The Plaintiffs have not objected to the Court's consideration of these exhibits.

Allowing the Plaintiffs' attorneys to recover in this case for the work performed for other clients would create the risk of a double recovery.

The Court notes that a number of these entries relate to an action brought by the Plaintiffs' attorney on behalf of another client in Cherokee County District Court. In that case, Mathieu v. Greenlee, the state district court declared all CVAs utilized by Cherokee County to be illegal. The Plaintiffs contend that this ruling ultimately assisted the Hogans in their case and is therefore properly included in this attorneys' fee petition. [Doc. 148-11 at 8-9]. Section 1988, however, only permits recovery for time that is "reasonably expended *on the litigation*." Webb, 471 U.S. at 235 (quoting Hensley, 461 U.S. at 433) (emphasis added in Webb). However helpful this state court litigation may have been to the Plaintiffs' attorneys in the underlying action, the Hogans were not part of the Mathieu litigation, and their claims were not litigated in that action. In fact, it appears from the timeline presented in the attorneys' billing that the district court's order in Mathieu which declared all CVAs to be invalid was entered in March 2018, months after a Cherokee Court district court judge had declared the Hogans' CVA invalid. [Doc. 156-3 at 2; Doc. 121: Joint Stipulations at ¶ 32]. The attorneys' work in the Mathieu matter is therefore not compensable in this case.

9

For all these reasons, the Court declines to award any fees in this case related to work expended on behalf of "other clients."

### b. Vague and Excessive Billing

The Defendants also object to the Plaintiffs' fee request on the grounds that the Plaintiffs' attorney engaged in block billing; that many of the billing entries are vague; that the Plaintiffs' attorneys engaged in excessive billing; and that they improperly seek compensation for clerical or administrative tasks. [Doc. 156 at 13-22].

The term "block billing" refers to the practice of grouping tasks together in time entries rather than making separating entries for each discrete task. See McAfee v. Boczar, 738 F.3d 81, 90 (4th Cir. 2013). Block billing inhibits the Court from "discern[ing] with precision how . . . hours were billed and precisely why those hours were needed." Dyer v. City of Gastonia, No. 3:15-cv-00033-MOC-DCK, 2016 WL 4443190, at *5 (W.D.N.C. Aug. 19, 2016). "Because of the obligation to maintain billing records with sufficient detail that the court may review and determine the reasonableness of individual activities, block billing entries are disfavored in attorney's fees award cases." Denton v. PennyMac Loan Servs., LLC, 252 F. Supp. 3d 504, 525 (E.D. Va. 2017). Where block billing prevents an accurate assessment of the reasonableness of the fee request, courts may

decline to award fees for hours that are not sufficiently documented, or they may reduce the overall fee award by a fixed percentage or amount. <u>Project Vote/Voting for Am., Inc. v. Long</u>, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012).

Here, the Plaintiffs' attorneys frequently engaged in block billing. For example, Mr. Wijewickrama's October 14, 2020 time entry identifies seven discrete tasks for a total of 5.8 hours. [Doc. 148-2 at 50]. Ms. Jackson's March 16, 2018 time entry has three separate tasks totaling 1.7 hours and her April 27, 2018 entry has five separate tasks totaling 1.3 hours. [Doc. 148-4 at 31]. Mr. Moore's April 16, 2019 entry has three separate tasks for "emails-subpoena, email with susan respond to judge show cause order, review and revise amended complaint, class members" for a total of 5.4 hours. [Doc. 148-4 at 31]. These type of blocked time entries make it difficult for the Court to determine the reasonableness of the hours billed.

More importantly, counsel's billing records also include numerous time entries that are associated with both the Hogan case and other cases. [<u>See e.g.</u>, Doc. 156-4: Defendants' Exhibit 1B]. Because these tasks and clients are grouped together, the Court cannot ascertain what is properly billable to the present case, and what is not. [<u>See e.g.</u>, Doc. 148-2 at 43 (time entry

11

for Mr. Wijewickrama for 8 hours on 5/24/20 "worked with mj on [S]picola[4] Reviewed cc discovery";) Doc. 148-3 at 27 (time entry for Ms. Jackson on 12/15/18 for four hours describing "Wije mtg- compare CVA's";) Doc. 148-4 at 30 (Mr. Moore's entry on 4/1/19 for six hours for "RM DW and MJ to Murphy to see clients."). The prolific use of block billing in the Plaintiffs' time entries warrants consideration of an overall reduction of the requested fee.

Further complicating the Court's analysis is the fact that many of the time entries in the billing records are extremely vague. The Fourth Circuit has "frequently exhorted counsel to describe specifically the tasks performed…." Rum Creek, 31 F.3d at 180. Here, counsel's time entries are replete with ambiguous descriptions of the tasks performed. [See e.g., Doc. 148-2 at 24 (time entry for Mr. Wijewickrama for .75 on 6/2/18 for "phone conference;"); Doc. 148-3 at 35 (time entries for Ms. Jackson on 6/20/19 for "rev dhhs ploicy [sic] fsa tsa" for 3 hours, and 6/22/19 for "ph call cleints [sic] contact" for 2 hours; Doc. 148-4 at 27 (Mr. Moore's entry for 1/2/19 for three hours for "re case docs.")]. The vagueness of counsel's time entries also supports an overall reduction of the requested fee.

---

[4] Spicola is a plaintiff in a related action pending before this Court. See Civil Case No. 1:21-cv-297-MR-WCM (W.D.N.C.).

Additionally, many of the requested fees are duplicative and excessive. For example, the attorneys spent a surprising amount of time reviewing documents. From April 6 to 13, 2020, Mr. Wijewickrama billed a total of 56 hours for "review[ing] discovery from cc." [Doc. 148-2 at 41]. On July 3, 2020, Ms. Jackson spent two hours for "review boyle depo," although no one named Boyle has been deposed in this case. [Doc. 148-3 at 48]. Excessive billing also resulted from many of the tasks outlined in the billing records being performed by multiple lawyers as well as a paralegal. For example, Mr. Wijewickrama, Ms. Jackson, and Mr. Moore, along with Ms. Boone, all attended the April 7 and 8, 2021 depositions of Warren Hogan, Brian Hogan, H.H., former social worker Kendric McDonald, and two school teachers, Lauren Gentry and Lauren Cariseo. [Docs. 148-2 at 58; 148-3 at 57; 148-4 at 48; 148-6 at 28]. Counsel provides no explanation for why the presence of three lawyers and one paralegal for all of these depositions was warranted. See Daly v. Hill, 790 F.2d 1071, 1076 (4th Cir. 1986) (reducing deposition time where two counsel were present and one was responsible for depositions, making time duplicative). The Plaintiffs are also seeking an award for fees for four attorneys appearing at trial. The Plaintiffs' attorneys, however, did not equally participate in trial. For example, Mr. Wijewickrama did not examine any witnesses at trial and did not even sit at counsel table.

13

As the First Circuit has stated: "As a general matter, the time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted . . . . A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." Lipsett v. Blanco, 975 F.2d. 934, 938 (1st Cir. 1992) (internal citations and quotation marks omitted). Therefore, "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." Guillemard-Ginorio v. Contreras, 603 F. Supp. 2d 301, 318 (D.P.R. 2009) (citation omitted).

In addition, the Plaintiffs seek fees for over 900 hours of numerous intra-attorney conferences [See Doc. 156-5: Defendants' Exhibit 1C (detailing a total of 939.65 hours in conferences solely between attorneys)]. The Court finds the time spent by the Plaintiffs' attorneys in conference among themselves to be excessive.

The Plaintiffs also are seeking fees for 772 hours spent by their attorneys performing research. [See Doc. 156-6: Defendants' Exhibit 1D]. Many of the time entries related to research, however, are very vague. For example, Ms. Jackson billed 5.0 hours on February 11, 2019, more than two years before trial, for "4 emails 1983 Damages- jury instructions" [Doc. 148-3 at 30], and 4.5 hours on April 5, 2021 for "rev fed rules civ proc and fed

14

rules evid" [id. at 57]. Mr. Wijewickrama billed 1.2 hours on 2/15/18 for unspecified "legal research" [Doc. 148-2 at 19], and 6.5 hours for "Spoilation research" on March 26, 2018, before the complaint was even removed to this Court [id. at 22]. Mr. Moore billed 4.25 hours on March 25 and 26, 2018 for "Class Action caselaw reading" and "TC DW; Reading – class action, Law Manuals." [Doc. 148-4 at 21]. The Court declines to compensate experienced trial lawyers for researching basic and fundamental legal concepts for such an excessive period of time. See Spell v. McDaniel, 852 F.2d 762, 767 (4th Cir. 1988) (holding that time spent reviewing simple aspects of Fourth Circuit procedure is not properly billed to the client where counsels' experience was basis for their hourly rate).

The Plaintiffs' attorney frequently reference "PRR" in their billing records, without any description of what "PRR" is. In their Reply, the Plaintiffs clarify that "PRR" refers to "public records review." [Doc. 160 at 5]. The Plaintiffs seek fees for 199.6 hours for reviewing these public records. [See Doc. 156-7: Defendants' Ex. 1E. The Plaintiffs argue that they "were forced" to use public records requests to obtain documents because discovery in this action did not open until December 2019, and that they obtained a "great deal of valuable data that took substantial time to analyze." [Doc. 160 at 5]. While obtaining these public records may have been

beneficial to the Plaintiffs' attorneys, the Court finds that spending nearly 200 hours reviewing such documents to be excessive.

Further, there are a number of billing entries which appear to be related to purely administrative or secretarial tasks, which the Court finds should not be billed at a full attorney rate. Such entries include: a March 17, 2018 entry by Mr. Wijewickrama for 5.5 hours for "Created sharedrive with team" [Doc. 148-2 at 21]; entries on April 15, and 19, 2021 by Ms. Jackson for 8 hours for "trip murphy exemplified copies" and "trip murphy certified files" [Doc. 148-3 at 57-58]; and a July 7, 2020 entry by Mr. Moore for 1.0 hour for "flow charts in color for clients." [Doc. 148-4 at 40].

Additionally, at the end of every billing year, Mr. Wijewickrama claims a total number of hours for "Emails" without identifying the subject of those emails, with whom such emails were exchanged, or when such emails were sent or received. [Doc. 148-2 at 27, 38, 52, 61]. A paying client would not be expected to pay fees based on such a vague and random description. Therefore, the Court declines to task the Defendants with paying that as well. See Hensley, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.").

16

Mr. Wijewickrama also claims that he spent 8.0 hours every day for five consecutive days "[p]repar[ing] billing for attorney's fees affidavit." [Doc. 148-2 at 60-61]. While time spent preparing a fee petition is compensable under § 1988, see Hymes v. Harnett County Bd. of Educ., 664 F.2d 410, 413 (4th Cir. 1981), the Court finds that 40.0 hours is an unreasonable amount of time to bill for such a task, especially when a paralegal was also involved in the preparation of the fee petition. See Daly, 790 F.2d at 1080 (affirming reduction of 37.9 hours spent in preparing and arguing petition for fees).

For all these reasons, the Court finds and concludes that the hours claimed by the Plaintiffs' four attorneys contain a significant number of hours that are excessive or duplicative. In addition, the shortcomings of counsels' submittals make it impossible for the Court to make precise determinations as to what hours should be cut, leaving the Court to make a general estimate. The Court in its discretion will impose an overall reduction of 40% of those hours to account for this excessive and duplicative billing.

### c. Kelly Boone

Ms. Boone purportedly served two roles in this matter. She performed paralegal services for the attorneys and also acted as a "subject matter

advisor" on the issues of children and trauma.[5]  Ms. Boone's billing entries from February 4, 2018 until March 23, 2020, appear to relate solely to her role as a subject matter advisor and not to performing any paralegal work. [Doc. 148-6 at 14-19].  Based on Ms. Boone's description of her work as a subject matter advisor as outlined in her Declaration, it appears that Ms. Boone was serving in the manner of an expert consultant in performing these tasks.  [See Doc. 148-6: Boone Decl.].   The allowance of expert fees under § 1988, however, is limited to claims brought pursuant to 42 U.S.C. § 1981 or 1981a.  See 42 U.S.C. § 1988(c) ("In awarding an attorney's fee under subsection (b) of this section in any action or proceeding *to enforce a provision of section 1981 or 1981a of this title*, the court, in its discretion, may include expert fees as part of the attorney's fee.") (emphasis added); Corral v. Montgomery County, 91 F. Supp. 3d 702, 721 (D. Md. 2015) ("the terms of Section 1988 do not permit compensation for expert witness fees" in § 1983 action).  Therefore, the Court will not award fees for tasks that Ms. Boone performed as a "subject matter advisor."

_____

[5] Ms. Boone has a master's degree in behavior and emotional disorders and a bachelor's degree in mathematics and education.  [Doc. 148-6:Boone Decl. at ¶ 1].  She assisted the litigation team by reviewing school records, IEPs, and other documents related to children.  She also assisted the team in client management and trial preparation.  [Doc. 148-2: Wijewickrama Decl. at ¶ 21].

18

As for the time billed performing paralegal tasks, the Court finds that Ms. Boone's hours are excessive. Like the Plaintiffs' attorneys, Ms. Boone performed a number of tasks that related not only to the Hogans but to other clients as well. For example, from July 2, 2020 to July 13, 2020, Ms. Boone billed more than 130 hours for creating "charts" for "families." [Doc. 148-6 at 19-20]. She also billed a total of 26.5 hours on August 5 and 6, 2020, for "SBI and CVA review" (12.5 hours) and "[S]hook interviews" (14 hours). [Id. at 20]. She billed an additional 25.8 hours from August 29 to August 31, 2020, working on flow charts. [Id. at 21]. Ms. Boone also billed a total of 102 hours for "[p]repar[ing] billing for attorney's fees affidavit," which is clearly excessive. [Id. at 30]. For these reasons, the Court finds that the hours claimed by Ms. Boone in her role as a paralegal are clearly excessive and should be reduced by 250 hours.

## 2. Novelty and Difficulty of the Questions Raised

As for the novelty and difficulty of the questions raised, the Court notes that this case presented unusual and complex issues that, until the present case was filed, had not been extensively litigated in federal court. The novelty and difficulty of the issues in this case weigh in favor of a substantial fee.

19

### 3.	Skill Required to Properly Perform the Legal Services

Cases involving violations of substantive and procedural due process rights require considerable skill. Such cases are generally more complicated than the run-of-mill § 1983 action. In this particular case, considerable skill was required to develop and analyze the evidence and to present that evidence in an orderly and efficient manner at trial. See Norwood v. Charlotte Mem'l Hosp. and Med. Ctr., 653 F. Supp. 1350, 1354 (W.D.N.C. 1987). This factor, therefore, weighs in favor of a substantial fee.

### 4.	Opportunity Costs of Litigation

Under the relevant factors, an "attorneys' opportunity costs include the higher rates they would have otherwise charged in other cases and projects." Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC, 747 F. Supp. 2d 568, 596 (W.D.N.C. 2010). Here, the Plaintiffs' attorneys do not contend that they had to forego higher compensation in other cases and projects in order to work on this action. Rather, they argue that Mr. Wijewickrama and Ms. Jackson "essentially shut down their law practices for several years to devote themselves fully to this litigation." [Doc. 148-11 at 12]. This assertion, however, is not entirely accurate. During the time that the Plaintiffs' attorneys were litigating the present action, they were also actively investigating and litigating a number of related cases involving the

20

use of CVAs in Cherokee County. Many of those cases remain pending in this Court. Accordingly, this factor weighs neither in favor of nor against the reasonableness of the requested award.

### 5. Customary Fee for Similar Work

As the Fourth Circuit has recognized:

> Determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

Robinson v. Equifax Info. Svcs., LLC, 560 F.3d 235, 244 (4th Cir. 2009) (citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)). In addition to consideration of specific evidence regarding the prevailing market rate, the Court may rely upon its own knowledge and experience of the relevant market in determining a reasonable rate. See Rum Creek Coal, 31 F.3d at 179 ("[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.").

21

Here, Mr. Wijewickrama, Ms. Jackson, Mr. Moore, and Mr. Christian seek to be awarded fees based on the hourly rate of $400.00. Ms. Boone seeks an hourly rate of $150.00 for the work she performed as a paralegal.[6]

In support of their request, the Plaintiffs have submitted affidavits from attorneys John C. Cloninger and Daniel R. Taylor, Jr., both of whom are experienced in litigating complex cases in western North Carolina. Both Mr. Cloninger and Mr. Taylor opine that the hourly rates of the Plaintiffs' attorneys are consistent with those in the community for similar services offered by lawyers with comparable skills. [Doc. 148-9: Taylor Aff. at ¶¶ 11-12(a); Doc. 148-10: Cloninger Aff. at ¶ 11(a)]. Based on the Court's own experience and familiarity with the hourly rates charged in western North Carolina, the Court finds that the rate of $400.00 per hour is a reasonable rate for the work performed by an attorney with the degree of skill and experience as that of Mr. Moore. The Court finds, however, that $400.00 per hour is an unusually high rate for the work performed by attorneys with a lesser degree of experience and skill, such as Mr. Wijewickrama, Ms. Jackson, and Mr. Christian. The Court finds that a rate of $350.00 per hour

---

[6] The Plaintiffs initially sought an award of fees to Ms. Boone based on a $200.00 hourly rate, they subsequently agreed to reduce that rate to $150.00 per hour. [See Doc. 160 at 9].

for the work performed by these attorneys is more in keeping with the prevailing rates in this particular market. Accordingly, the Plaintiffs' attorneys' fees will be calculated at the rate of $400.00 per hour for the work performed by Mr. Moore and at the rate of $350.00 per hour for the work performed by Mr. Wijewickrama, Ms. Jackson, and Mr. Christian.

The Court finds Ms. Boone's claimed hourly rate of $150.00 to be in excess of the prevailing rates for paralegals in this area. Accordingly, Ms. Boone's hours will be calculated at the rate of $100.00 per hour.

### 6. Attorneys' Expectation at Outset of Litigation

At the outset of litigation, the Plaintiffs' attorneys agreed to take this case on a contingency fee basis and advance litigation expenses despite the possibility that the Plaintiffs may not be able to recover from the Defendants. In this case, the attorney engagement agreement provided for a contingency fee of 40% of the recovery if the matter proceeded to a full jury trial. The Court notes that a 40% contingency fee would result in an award of $1,840,000 to counsel. The Court finds that an award of approximately 40% of the damages award would be more than adequate to account the

attorneys' expectation at the outset of the litigation.[7]  Accordingly, this factor weighs against awarding the full amount of the fees requested.

### 7.    Time Limitations

The Plaintiffs contends that the factor of time limitations weighs in favor of their requested fee for two reasons.  First, they argue, the Defendants removed this action to this Court, and that litigating a matter in federal court typically requires substantially more time and effort than state court.  Second, the Plaintiffs argue, without explanation, that "the circumstances of the case demanded at the outset urgent devotion and attention because the Defendants had actively sought to conceal their pattern of unconstitutional conduct."  [Doc. 148-11 at 16].  The additional effort required of the Plaintiffs' attorneys by having this case removed and by the Defendants' alleged acts of concealment, however, are adequately accounted for in the time and labor expended by the attorneys.  Therefore, this factor weighs neither in favor of nor against the requested award.

---

[7] It is worth noting that the amount of damages awarded by the jury actually exceeded the amount argued for by the Plaintiffs' counsel at trial.  As such, an attorneys' fee award approximating 40% of the damages actually awarded exceeds counsel's high end expectation at the outset of the litigation.

24

### 8. Experience, Reputation, and Ability of Counsel

All of the attorneys involved in this matter are experienced lawyers with excellent reputations in the legal community. As noted previously, the Court finds that, of the four attorneys representing the Plaintiffs in this matter, Mr. Moore was by far the most skilled and experienced, and that this warrants awarding fees for the work performed by him at the rate of $400.00 per hour. As for Mr. Wijewickrama, Ms. Jackson, and Mr. Christian, their experience, reputation, and abilities weigh in favor of calculating a lodestar using the hourly rate of $350.00 for the work they performed.

### 9. Undesirability of the Case in the Legal Community

This case was not a desirable one to take on, particularly on a contingency fee basis. While the likelihood of prevailing on the legal issues was relatively high (and greatly enhanced by the state courts declaring the use of CVAs to be illegal), the Plaintiffs' ability to recover substantial damages for that wrongful conduct was very much in doubt. The Plaintiffs were indigent, with a history of family instability and involvement with DSS. The Plaintiffs' attorneys were well aware of the possibility that a jury could find that due process violations had occurred, but that a significant damages award was not warranted because—as the Defendants argued at trial—H.H. was better off being in the custody of her grandfather. As such, the prospect

of a meaningful monetary recovery was questionable. This factor, therefore, weighs in favor of a fee that is commensurate with the magnitude of the jury's award.

### 10. Relationship between the Attorneys and Clients

The Plaintiffs contend that the relationship between Brian Hogan and attorney Melissa Jackson supports the requested fee award. [Doc. 148-11 at 18-19]. It is true that Ms. Jackson has had a lengthy relationship with the Plaintiff Brian Hogan. She first served as court-appointed counsel for him in the DSS action that resulted in the 2016 order granting him full custody of H.H. After Ms. Jackson learned that Cherokee County DSS had taken H.H. away from Mr. Hogan through the use of an illegal CVA, she represented him on a *pro bono* basis and succeeded in getting an order that allowed Mr. Hogan to regain custody of H.H. The Court finds that this relationship, however, neither weighs in favor of nor against the requested fee award.

### 11. Fee Awards in Similar Cases

The Plaintiffs cite a number of civil rights cases in which substantial attorneys' fees have been awarded. [See Doc. 148-11 at 19-20 (citing Spell, 824 F.2d at 1401 (affirming award of $325,303.75 in attorney fees representing 1,964.5 hours billable at rates ranging from $100–125 per hour, thereafter multiplied to compensate counsel for the initial risk of not prevailing

26

and thus not collecting a fee); Coe v. Town of Blooming Grove, 880 F. Supp. 2d 411, 416 (S.D.N.Y. 2012) (awarding fees of $42,689.00 and finding $350 per hour for attorneys and $50 per hour for paralegals to be reasonable in § 1988 claim); Alexander S. v. Boyd, No. 96-1036, 1996 WL 329529, at *1 (4th Cir. June 6, 1996) (affirming award of $1,185,108.91 in attorneys' fees and costs in challenge to conditions at juvenile detention facilities); Nat'l Black Police Ass'n v. D.C. Bd. of Elections and Ethics, 168 F.3d 525, 531 (D.C. Cir. 1999) (awarding $619,831.87 in attorneys' fees for § 1983 challenge against city ordinance establishing contribution limits to candidates, even though judgment was ultimately vacated on appeal when the ordinance was repealed))].  None of these awards, however, are remotely close to the $3.8 million sought by the attorneys here.  The Court finds that this factor weighs in favor of a reduced award.

### 12.   Amount Involved and Results Obtained

As noted by the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436).

Here, while the Plaintiffs did not prevail on all of their claims [see Doc. 91], they achieved a remarkable degree of success. This factor weighs heavily in favor of a fully compensatory fee.

After consideration of all the above factors, the Court concludes that an overall reduction of the hours claimed by the Plaintiffs' attorneys is warranted. After consideration of the duplicative and excessive billing, the Court concludes that an overall reduction in the hours expended by 40% is appropriate. Multiplying those reduced hours by the reasonable hourly rates determined by the Court results in the following lodestar amount:

|  | Hours | Rate | Amount |
|---|---|---|---|
| Wijewickrama | 1,900.0 | 350.00 | $665,000.00 |
| Jackson | 1,564.8 | 350.00 | 547,680.00 |
| Moore | 703.3 | 400.00 | 281,320.00 |
| Christian | 497.7 | 350.00 | 174,195.00 |
| **TOTAL** | **4,665.8** | | **$1,668,195.00** |

For the reasons stated herein, the Court finds and concludes that this lodestar amount constitutes a reasonable attorneys' fee in this matter.

As for the work performed by Ms. Boone, the Court will not allow fees for work performed from February 4, 2018 through March 23, 2020. For the remainder of her claimed hours (1,460.95), the Court will deduct 250 hours

from the time claimed for excessive time billed for preparing billing records in connection with the fee petition and to account for hours where Ms. Boone performed tasks on behalf of other clients. Thus, counsel will be compensated for Ms. Boone's time for 1,210.95 hours at a rate of $100.00, resulting in a total award of $121,095.00.

For all these reasons, the Court will award the Plaintiffs a total of $1,789,290.00 in attorneys' fees under § 1988.

## B. Guardian *Ad Litem* Fees

Attorney Joy McIver expended 139.1 hours in her role as the guardian *ad litem* for H.H.[8] [Doc. 148-7]. The Plaintiffs request an award of fees for this work at the hourly rate of $350.00. In addition to her hourly rate, the Plaintiffs request reimbursement of $0.55 per mile as set forth in Ms. McIver's billing records. [Doc. 148 at 4]. The Defendants do not object to any of the hours expended by Ms. McIver in this capacity.

Having carefully reviewed Ms. McIver's timesheets, the Court concludes that the claimed hours are reasonable and that she should be

---

[8] Ms. McIver was appointed guardian *ad litem* of H.H. by the Clerk of the Superior Court for Cherokee County on March 15, 2018, while this matter was still pending in state court. [See Doc. 1-2 at 7]. When a case is removed to federal court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. As such, the Superior Court's Order appointing Ms. McIver in this capacity has full force and effect here.

29

compensated for the full amount of this time, plus mileage. Accordingly, the Court hereby approves an award of $48,685.00 in fees and $39.00 in expenses to Ms. McIver.

## C. Expenses

In addition to attorneys' fees, the Plaintiffs seek an award of expenses under § 1988. [Doc. 148 at 2].

"A prevailing plaintiff in a civil rights action is entitled, under § 1988, to recover those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." Spell, 852 F.2d at 771 (citation and internal quotation marks omitted). The Fourth Circuit has held that such out-of-pocket expenses may include "supplemental secretarial costs, copying, telephone costs and necessary travel." Wheeler v. Durham Bd. of Educ., 585 F.2d 618, 623 (4th Cir. 1978) (footnote omitted); accord Sussman v. Patterson, 108 F.3d 1206, 1213 (10th Cir. 1997) (allowing items such as "photocopying, mileage, meals and postage" as compensable expenses under § 1988).

"An expense award, like an attorney's fee, must adequately compensate counsel without resulting in a windfall." Daly, 790 F.2d at 1084 n.18. "Prevailing attorneys must exercise 'billing judgment,' for expenses 'not properly billed to one's *client* also are not properly billed to one's

*adversary* pursuant to statutory authority." Id. (quoting Hensley, 461 U.S. at 434) (emphasis in original). Prevailing attorneys must submit adequate documentation to justify their legal expenses. Trimper v. City of Norfolk, 58 F.3d 68, 77 (4th Cir. 1995) ("no litigation costs should be awarded in the absence of adequate documentation"). "[M]erely listing litigation expenses in a chart is insufficient documentation for the court to determine reasonableness." Wyatt v. Owens, No. 7:14-cv-492, 2018 WL 10613184, at *16 (W.D. Va. Jan. 23, 2018).

Here, the Plaintiffs request in their motion a total of $198,504.79 in expenses under § 1988. [Id.; see also Declaration of Attorney David A. Wijewickrama, Doc. 148-2 at ¶ 60(d) ("The total amount of expenses incurred by Plaintiffs in connection with the prosecution of this action was $198,504.79.")]. However, in a chart of expenses submitted in support of Mr. Wijewickrama's Declaration, the Plaintiffs list their expenses as totaling $441,770.79, as it includes the fees paid to the law firm of Kilpatrick Townsend for the work performed by attorney Susan H. Boyles. [Doc. 148-2 at 62-64].

The Plaintiffs devote little more than a page within their brief to justifying their request for expenses under § 1988. [Doc. 148-11 at 20-21]. The Plaintiffs do not provide any meaningful explanation as to any of the

31

claimed expenses, other than to cursorily cite to the Declaration of David Wijewickrama and the Affidavit of attorney Daniel R. Taylor, Jr., who both generally attest to the reasonableness of the claimed expenses. [Doc. 148-2: Wijewickrama Decl. at ¶ 60(c) (stating that expenses "were necessary and needed for the process of this matter and were expended in good faith"); Doc. 148-9: Taylor Aff. at ¶ 12(b) (stating that the incurred expenses were "neither surprising nor in any way excessive")]. Further, the chart of expenses submitted along with Mr. Wijewickrama's Declaration only sets forth the date, amount, and a brief description of the various expenses incurred. Many of the descriptions in the expenses chart, however, fail to provide any explanation as to how the expenses are related to this action.[9] The chart is accompanied by receipts for office supplies [Doc. 148-2 at 65] and receipts for lodging expenses, food, and alcohol [id. at 67-91], but not every claimed expense has a corresponding invoice or receipt. Moreover, for the receipts that are attached, it is not clear who incurred those expenses

---

[9] For example, the Plaintiffs claim expenses of: $522.02 on 2/2/18 for "Meeting with Attorney Ed Buckley"; $178.08 on 4/4/19 for "Meet w Oliver Wood ref damages"; $103.96 on 4/4/19 for "Met w Ronnie Mitchell"; $1,500.00 on 4/20/20 for "Research assistant"; $2,000.00 on 2/1/21 for "Vince Hyatt"; a total of $4,500.00 on 5/17/21 and 5/18/21 for "Archangels Shield, LLC"; $600.00 on 5/18/21 for "Michael Parker"; $10,000.00 on 5/25/21 for "June Ray"; and $109.65 on 5/14/21 for "rental car for Hogan transport." [Document 148-2 at 62-64].

and for what purpose such expenses were incurred.[10]  [Id. at 65-91].  Despite the lack of clear documentation to support the majority of their claimed expenses, the Court will endeavor to address the Plaintiffs' request for an award of expenses.

### 1. Lodging and Food

Among the claimed expenses are numerous entries for hotel rooms and food for counsel, during both depositions and trial.  [See Doc. 148-2 at 62, 63].  It appears that counsel is claiming a total of $9,516.26 in lodging and food expenses. With the exception of Mr. Christian, however, all of the Plaintiffs' attorneys were located in Asheville or in Waynesville, which is approximately 30 miles away from Asheville.  As such, it does not appear that the cost of hotel rooms for the Plaintiffs' local counsel (and counsel's staff) during the trial was a necessary expense.  Further, while lodging may have been a necessary expense for Mr. Christian, other than entries on the chart for two stays in Waynesville immediately prior to trial (May 1, 2021 and May 9, 2021), the Court is unable to determine from the documentation submitted which of the claimed lodging expenses are applicable to him.  As

---

[10] Some of these receipts do not correspond to any of the expenses listed in the chart. For example, the Plaintiffs submit a booking confirmation for a hotel in Hiawassee, Georgia, for the evening of April 7, 2021, but there is no corresponding lodging expense listed on the chart for that date.  [See Doc. 148-2 at 83-84].

for the expenses claimed for meals during trial ($998.38), the Court finds this amount to be excessive and unreasonable, as almost half of the claimed amount was incurred in purchasing alcohol. [<u>See</u> Doc. 148-2 at 88]. For all these reasons, the Court in its discretion will award the Plaintiffs $3,000.00 for lodging and meal expenses.

### 2. Office Supplies

The Plaintiffs also claim a number of expenses for office supplies, such as binders, computer equipment, and portable printers. [Doc. 148-2 at 62-63] These materials are the type of routine overhead expenses that are normally absorbed by the attorney and not passed on to the client. <u>See</u> <u>Daly</u>, 790 F.2d at 1084 n.18 ("expenses not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority"); <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181, 1192 (11th Cir. 1983) (holding that routine office overhead is not to be included in § 1988 award). The Court, however, will award expenses in the amount of $58.12 in shipping expenses [<u>see</u> Doc. 148-2 at 62 (FedEx charges of $21.23, $18.08, and $18.81)] and $48.00 for parking during the trial [<u>see id.</u> at 63].

34

### 3. Expert Fees

A large portion of the Plaintiffs' claimed expenses appear to relate to expert fees.[11]  [See Doc. 148-2 at 62-64].  As previously discussed, the allowance of expert fees under § 1988 is limited to claims brought pursuant to 42 U.S.C. § 1981 or 1981a.  See 42 U.S.C. § 1988(c); Corral, 91 F. Supp. 3d at 721.  Accordingly, the Plaintiffs' request for a reimbursement under § 1988 for expert witness fees is denied.

### 4. Investigator Fees

The Plaintiffs also appear to seek an award of expenses related to investigator fees.  [See Doc. 148-2 at 63 (5/17/21 expense of $2,250.00 to "Archangels Shield, LLC" and 5/18/21 expense of $2,250.00 to "Archangels Shield")].[12]  While investigative services can be recoverable expenses, see Stacy v. Stroud, 845 F. Supp. 1135, 1145 (S.D. W. Va. 1993),  the Plaintiffs offer no explanation as to why these were necessary or reasonable expenses.  Further, there are no invoices or other documentation provided

---

[11] The Plaintiffs claim the following expenses related to expert witnesses: $24,054.00 for Daniel Beerman; $34,283.33 for Jesse Raley; $30,538.91 for Matthew Gaskins/Gaskins Psychiatry; $7,250.00 for Katelin Williamson; and $50,000.00 for Keith Lovin.  [Document 148-2 at 62-64].

[12] The Defendants state in their opposition that an internet search revealed a private investigation firm called "Archangel Shield" in Davidson, North Carolina.  [Doc. 156 at 3 n.1].  It is unclear whether this is the same firm hired by the Plaintiffs.

35

to explain these charges.  On this basis alone, the Court will disallow this expense.

### 5. Kelly Boone

The Plaintiffs claim expenses for reimbursement for payments made to Kelly Boone on July 16, 2020, July 19, 2020, and January 25, 2021, which total $12,870.00.  [Doc. 148-2 at 62-64].  However, the Plaintiffs have also sought an award of fees related to Boone's work.  It is unclear whether these claimed expenses are related to Boone's work as a "subject matter advisor" or paralegal, or for something different. There are no invoices or explanations provided to support these payments.  Due to the lack of documentation alone, the Court concludes that these expenses should be denied.  To the extent that these expenses related to Ms. Boone's work as a paralegal, those fees have already been addressed supra.  To the extent that these expenses are meant to compensate Ms. Boone for her work as a "subject matter advisor" or consultant in this matter, the Court will not allow the recovery of expenses for the work performed by Ms. Boone as an expert, as such expenses are not recoverable under § 1988.

### 6. Susan H. Boyles

In the course of representing the Plaintiffs, Mr. Wijewickrama engaged the services of attorney Susan H. Boyles of the firm Kilpatrick Townsend "to

assist with the complex issues of insurance, insurance coverage, insurance exceptions, and the immunities related to insurance coverage issues." [Doc. 148 at 5]. Ms. Boyles never attended a deposition or a court hearing; rather, she served as a consultant to the Plaintiffs' counsel on the issues of insurance coverage and sovereign immunity. Ms. Boyles was never counsel of record for the Plaintiffs; according to her billing records, Ms. Boyles' client was the "Law Offices of David Wijewickrama." [See Doc. 148-8 at 2]. For these services, Mr. Wijewickrama paid her fees out of his own pocket, as evidenced by the fact that the fees charged by Kilpatrick Townsend for Ms. Boyles' work are listed in the chart of expenses attached to Mr. Wijewickrama's Declaration. Under these circumstances, Ms. Boyles' engagement by the Plaintiffs' attorney to assist them on discrete legal issues is similar to that of retaining a consulting expert, the expenses for which the Plaintiffs are not entitled to recover under § 1988, for the reasons set forth above.

### 7. Witness Fees and Expenses

The Defendants have no objections to the expenses claimed that appear to be related to witness fees and expenses. The Plaintiffs' expenses

incurred on February 1, 2021 ($150.00 to Susan Prunier[13]; $150.00 to Jeryl Lynn Waddy; $150.00 to Courtney Myers; $250.00 to Brian Vogl[14]; $150.00 to Diana Garrett; $150.00 to Joyce Bernier; $150.00 to Katie Brown; $150.00 to Lauryl Smith), with the exception of the expense to Vince Hyatt,[15] shall be allowed.  The Court will also allow the February 16, 2021 expense to David Hughes ($100.00); the April 29, 2021 expenses to Katie Brown ($127.36), Jeryl Waddy ($127.36), and Courtney Myers[16] ($127.36); and the May 18, 2021 expense to Joyce Bernier ($127.36).  Thus, the Court will award the Plaintiffs expenses for witness fees and expenses in the amount of $1,909.44.

For all these reasons, the Court will award the Plaintiffs expenses in the total amount of $5,015.56.[17]

---

[13] This appears to be a reference to witness Susan Prenier.

[14] This appears to be a reference to witness Brian Vogel.

[15] The Plaintiffs claim an expense of $2,000.00 with respect to Vince Hyatt on February 1, 2021; however, it is unclear what this payment is for, as Mr. Hyatt was not called as a witness in this case.

[16] The Plaintiffs also list an expense of $127.36 for Courtney Myers on May 18, 2021. There is no explanation provided as to why this expense was paid twice.

[17] The Court expresses no opinion as to whether the Plaintiffs may claim any expenses for which they have not been compensated here as reimbursable costs under 28 U.S.C. § 1920.

38

## III.   CONCLUSION

The Plaintiffs' attorneys achieved an excellent result for their clients. These attorneys also have brought to light issues of public importance in prosecuting this case by exposing an unlawful and unconstitutional practice of removing children from their parents without judicial oversight.  The Court realizes that pursuing this case for the Plaintiffs was no small or easy task, and that it required an enormous commitment of time and resources to litigate this case to its ultimate conclusion.  The Court further realizes that the award of fees and expenses is substantially less than the award that the Plaintiffs requested.  By awarding a reduced fee, the Court in no way intends to minimize counsel's efforts.  But the Court is obligated to exercise its discretion and ensure that any fee awarded under § 1988 be reasonable. For the reasons set forth herein, the Court finds and concludes that the award of $1,789,290.00 in fees and $5,015.56 in expenses adequately compensates the Plaintiffs' attorneys for the number of hours reasonably expended in this case.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' Application for Attorneys' Fees [Doc. 148] is **GRANTED** as follows:

(1)　　The Plaintiffs are hereby awarded $1,789,290.00 in attorneys' fees and $5,015.56 in expenses pursuant to 42 U.S.C. § 1988; and

(2)　　Attorney Joy McIver is hereby awarded $48,685.00 in attorneys' fees and $39.00 in expenses pursuant to 42 U.S.C. § 1988 for her services as the guardian *ad litem* for H.H. in this matter.

**IT IS SO ORDERED.**

Signed: February 21, 2022

Martin Reidinger
Chief United States District Judge

40